# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **FEDERAL TRADE COMMISSION**, | Case No. 2:18-cv-09573-JFW (JPRx) |
| Plaintiff, | **STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT** |
| v. | |
| **APEX CAPITAL GROUP, LLC, et al.**, | |
| Defendants. | |

On November 13, 2018, Plaintiff, the Federal Trade Commission ("Commission" or "FTC"), filed its Complaint for Permanent Injunction and Other Equitable Relief in this matter, subsequently amended as First Amended Complaint for Permanent Injunction and Other Equitable Relief, (as amended, "Complaint"), pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8404, and Section 918(c) of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693o(c). The Commission and Defendants Phillip Peikos, Apex Capital Group, LLC, Capstone Capital Solutions Limited, Clik Trix Limited, Empire Partners Limited, Interzoom Capital Limited, Lead Blast Limited, Mountain Venture Solutions Limited, Nutra Global Limited, Omni Group Limited,

1

Rendezvous IT Limited, Sky Blue Media Limited, and Tactic Solutions Limited stipulate to the entry of this [Proposed] Stipulated Order for Permanent Injunction and Monetary Judgment to resolve all matters in dispute in this action between them.

THEREFORE, IT IS ORDERED as follows:

## FINDINGS

1. This Court has jurisdiction over this matter.

2. The Complaint charges that Settling Defendants participated in deceptive and unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, Section 4 of ROSCA, 15 U.S.C. § 8403, and Section 907(a) of EFTA, 15 U.S.C. § 1693e(a) and Section 1005.10(b) of Regulation E, 12 C.F.R. § 1005.10(b), in connection with the unfair and deceptive advertising, marketing, promotion, or sale of certain dietary supplements, skin creams, and other products or services through a Negative Option Feature.

3. Settling Defendants neither admit nor deny any of the allegations in the Complaint, except as specifically stated in this Order. Only for purposes of this action, Defendants admit the facts necessary to establish jurisdiction.

4. Settling Defendants waive any claim that they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agree to bear their own costs and attorney fees.

5. Settling Defendants and the Commission waive all rights to appeal or otherwise challenge or contest the validity of this Order.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

A. "**Acquirer**" means a business organization, financial institution, or an agent of a business organization or financial institution that has authority from an organization that operates or licenses a credit card system (*e.g.* Visa, MasterCard,

American Express, and Discover) to authorize Merchants to accept, transmit, or process payment by credit card through the credit card system for money, goods or services, or anything else of value.

B. "**Add-On**" means any additional good or service that is offered to the consumer for purchase immediately preceding, at the time of, or closely proximate in time after the consumer's purchase of a different good or service, where the different good or service is or was advertised, marketed, promoted, or offered for sale by the Settling Defendants, whether directly or through an intermediary, including by consulting, planning, participating, facilitating, or advising.

C. "**Affiliate**" means any person, including any third-party marketer, who participates in an Affiliate Program.

D. "**Affiliate Network**" means any person who provides another person with Affiliates for an Affiliate Program or with whom any person contracts as an Affiliate to promote any good or service.

E. "**Affiliate Program**" means any arrangement under which any Settling Defendant pays, or offers to pay, or provides, or offers to provide, any form of consideration to any third party, either directly or through an Affiliate Network (i) to provide any Settling Defendant with, or refer to any Settling Defendant, potential or actual customers; or (ii) otherwise to market, advertise, or offer for sale any good or service on behalf of any Settling Defendant.

F. "**Asset**" means any legal or equitable interest in, right to, or claim to, any property, wherever located and by whomever held.

G. "**Billing Information**" means any data that enables any person to access a customer's account, such as a credit card, checking, savings, share, or similar account, utility bill, mortgage loan account, or debit card.

H. "**Chargeback**" means a procedure whereby an issuing bank or other financial institution charges all or part of an amount of a credit or debit transaction back to the acquiring or merchant bank.

I.   **"Clear and Conspicuous"** or **"Clearly and Conspicuously"** means that a required disclosure is difficult to miss (i.e., easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

1.   In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented.  In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means;

2.   A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood;

3.   An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it;

4.   In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable;

5.   On a product label, the disclosure must be presented on the principal display panel;

6.   The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears;

7.   The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications;

8.   The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication; and

9.      When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

J.      "**Close Proximity**" means immediately adjacent to the triggering representation.  In the case of advertisements disseminated verbally or through audible means, the disclosure shall be made as soon as practicable after the triggering representation.

K.      "**Commission**" or "**FTC**" means the Federal Trade Commission.

L.      "**Corporate Defendants**" means Apex Capital Group, LLC, Capstone Capital Solutions Limited, Clik Trix Limited, Empire Partners Limited, Interzoom Capital Limited, Lead Blast Limited, Mountain Venture Solutions Limited, Nutra Global Limited, Omni Group Limited, Rendezvous IT Limited, Sky Blue Media Limited, and Tactic Solutions Limited, and each of their subsidiaries, affiliates, successors, and assigns.

M.      "**Cosmetic**" means:

1.      articles to be rubbed, poured, sprinkled, or sprayed on, introduced into, or otherwise applied to the human body or any part thereof intended for cleansing, beautifying, promoting attractiveness, or altering the appearance; and

2.      articles intended for use as a component of any such article, except that such term shall not include soap.

N.      "**Credit Card Laundering**" means:

1.      Presenting or depositing into, or causing or allowing another to present or deposit into, the credit card system for payment, a Credit Card Sales Draft generated by a transaction that is not the result of a credit card transaction between the cardholder and the Merchant;

2.      Employing, soliciting, or otherwise causing or allowing a Merchant, or an employee, representative, or agent of a Merchant, to present to or

deposit into the credit card system for payment, a Credit Card Sales Draft generated by a transaction that is not the result of a credit card transaction between the cardholder and the Merchant; or

       3.     Obtaining access to the credit card system through the use of a business relationship or an affiliation with a Merchant, when such access is not authorized by the Merchant Account agreement or the applicable credit card system.

      O.     "**Credit Card Sales Draft**" means any record or evidence of a credit card transaction.

      P.     "**Dietary Supplement**" means:

       1.     any product labeled as a dietary supplement or otherwise represented as a dietary supplement; or

       2.     any pill, tablet, capsule, powder, softgel, gelcap, liquid, or other similar form containing one or more ingredients that are a vitamin, mineral, herb or other botanical, amino acid, probiotic, or other dietary substance for use by humans to supplement the diet by increasing the total dietary intake, or a concentrate, metabolite, constituent, extract, or combination of any ingredient described above, that is intended to be ingested, and is not represented to be used as a conventional Food or as a sole item of a meal or the diet.

      Q.     "**Drug**" means:

       1.     articles recognized in the official United States Pharmacopoeia, official Homeopathic Pharmacopoeia of the United States, or official National Formulary, or any supplement to any of them;

       2.     articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in humans or other animals;

       3.     articles (other than Food) intended to affect the structure or any function of the body of humans or other animals; and

4. articles intended for use as a component of any article specified in Subsection (1), (2), or (3); but does not include devices or their components, parts, or accessories.

R. "**Food**" means:

1. any article used for food or drink for humans or other animals;

2. chewing gum; and

3. any article used for components of any such article.

S. "**Including**" means including but not limited to.

T. "**Individual Defendant**" means individual defendant Phillip Peikos.

U. "**Merchant**" means any natural person, entity, corporation, partnership, or association of persons who is authorized under a written contract with an Acquirer to honor or accept credit cards, or to transmit or process for payment credit card payments, for the purchase of good or services.

V. "**Merchant Account**" means an account with an Acquirer that authorizes and allows a Merchant to honor or accept credit cards, or to transmit or process for payment credit card payments, for the purchase of goods or services or a charitable contribution.

W. "**Negative Option Feature**" means, in an offer or agreement to sell or provide any good or service, a provision under which the consumer's silence or failure to take affirmative action to reject a good or service, or to cancel the agreement, is interpreted by the seller or provider as acceptance or continuing acceptance of the offer.

X. "**Preauthorized Electronic Fund Transfer**" means an electronic fund transfer authorized in advance to recur at substantially regular intervals.

Y. "**Receiver**" means Thomas McNamara, as set forth in Section XIV of the Stipulated Preliminary Injunction with Asset Freeze, Receiver, and Other Equitable Relief Against Corporate Defendants and Defendant Phillip Peikos

("Preliminary Injunction"), and any deputy receivers that shall be named by the Receiver.

Z. **"Receivership Entities"** means the Corporate Defendants, the Wyoming Related Companies, the UK Related Companies, Albright Solutions LLC, Apex Capital International Sarl, Asus Capital Solutions LLC, Brandooza LLC, DMB Marketing LLC, Element Media Group LLC, Jaci, LLC, Jaci Holding LLC, Jaci PR LLC, NextG Payments, LLC, NextLevel Solutions LLC, Omni Holding Company, LLC, and Vortex Media Group LLC.

AA. **"Receivership Estate"** means all Assets managed, held, or maintained by the Receiver in connection with his role as Receiver in this litigation.

BB. **"Settling Defendants"** means the Individual Defendant and all of the Corporate Defendants, individually, collectively, or in any combination.

CC. **"Telemarketing"** means any plan, program, or campaign which is conducted to induce the purchase of goods or services by use of one or more telephones, and which involves a telephone call, whether or not covered by the Telemarketing Sales Rule, 16 C.F.R. Part 310.

DD. **"UK Related Companies"** means the companies identified in **Exhibit 2** to this Order and each of their subsidiaries, affiliates, successors, and assigns

EE. **"Wyoming Related Companies"** means the companies identified in **Exhibit 1** to this Order and each of their subsidiaries, affiliates, successors, and assigns.

## ORDER

## I.

## BAN ON CERTAIN NEGATIVE OPTION SALES

**IT IS ORDERED** that Settling Defendants are permanently restrained and enjoined from advertising, marketing, promoting, or offering for sale, whether directly or through an intermediary, including by consulting, planning,

participating, facilitating, or advising, any good or service with a Negative Option Feature in the following circumstances:

A.     Where the good or service is or relates to a Cosmetic, Food, Dietary Supplement, or Drug;

B.     Where the good or service is or relates to an Add-On good or service; or

C.     Where the good or service is advertised, marketed, promoted, or offered for sale as either "free," "risk free," a "trial," a "sample," a "bonus," a "gift," "no obligation," or using any other words, depictions, or illustrations that denote or imply the absence of an obligation on the part of the recipient of the offer to affirmatively act in order to avoid charges.

## II.

## PROHIBITED BUSINESS ACTIVITIES

**IT IS FURTHER ORDERED** that Settling Defendants, Settling Defendants' officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promotion, offering for sale, or sale of any good or service are permanently restrained and enjoined from:

A.     Before a consumer consents to pay for such good or service, failing to disclose, or assisting others in failing to disclose in a Clear and Conspicuous manner all material terms and conditions of any offer, including:

1.     The total cost or price of the good or service;

2.     The amount, timing, and manner of all fees, charges, or other amounts that a consumer will be charged or billed, including the date of the charge and whether it will be a credit card or checking account charge; and

3.     The mechanism for consumers to stop a charge.

B.     Before a consumer consents to pay for such product, service, or program, failing to disclose, or assisting others in failing to disclose in a Clear and Conspicuous manner all material terms and conditions of any refund or cancellation policy, including:

1.     The specific steps and means by which such requests must be submitted;

2.     The customer service telephone number or numbers that a customer must call to cancel and/or return goods or services;

3.     The email address, web address, or street address to which such requests must be directed;

4.     Any mechanism that customers must use to return any products, including any requirement for specific tracking methods or delivery confirmation for a package;

5.     If there is any policy of not making refunds or cancellations, including any requirement that a product will not be accepted for return or refund unless it is unopened and in re-sellable condition, a statement regarding this policy; and

6.     The date by which a customer is required to request a refund.

C.     Misrepresenting, or assisting others in misrepresenting, expressly or by implication, any fact material to consumers concerning any good or service, such as:

1.     That the consumer will not be charged for any good or service;

2.     That a good or service is free, risk free, a bonus, a gift, without cost, or without obligation;

3.     That the consumer can obtain a good or service for a processing, service, shipping, handling, or administrative fee with no further obligation;

4.      The purpose(s) for which the consumer's Billing Information will be used;

5.      The date by which the consumer will incur any obligation or be charged unless the consumer takes an affirmative action with respect to a Negative Option Feature that is not banned under the Section of this Order entitled "Ban on Certain Negative Option Sales";

6.      The amount that a consumer's credit or debit card will be charged and the timing of the charge(s);

7.      The total cost to purchase, receive, or use a good or service;

8.      Any material restrictions, limitations or conditions to purchase, receive, or use the good or service;

9.      That a transaction has been authorized by a consumer;

10.     That a purchase is offered with a satisfaction guarantee or with a money-back guarantee;

11.     Any material aspect of the nature or terms of a refund, cancellation, exchange, or repurchase policy for the good or service;

12.     Any material aspect of the performance, efficacy, nature, or central characteristics of a good or service;

13.     That any advertisement for a good or service sold by Settling Defendants is an objective source of information, such as an unaffiliated news report or magazine article; and

14.     That an endorsement is by a bona fide user of the good or service and reflects the honest opinions, findings, beliefs, or experience of the endorser;

D.      Failing, in connection with the advertising, promotion, marketing, offering for sale, sale, or provision of any good or service through an Affiliate Program to:

1.     Require each Affiliate and/or Affiliate Network to provide to Settling Defendants the following identifying information:

a.     In the case of a natural person, the Affiliate's or Affiliate Network's first and last name, physical address, country, telephone number, email address, and complete bank account information as to where payments are to be made to that person;

b.     In the case of a business entity, the Affiliate's or Affiliate Network's name and any and all names under which it does business, state of incorporation, registered agent, and the first and last name, physical address, country, telephone number, and email address for at least one natural person who owns, manages, or controls the Affiliate or Affiliate Network, and the complete bank account information as to where payments are to be made to the Affiliate or Affiliate Network;

c.     If Settling Defendants only have access to certain Affiliates through an Affiliate Network, then Settling Defendants shall contractually require each Affiliate Network to obtain and maintain from those Affiliates the identifying information set forth in Subsections D.1.a and D.1.b of this Section prior to the Affiliate's or Affiliate Network's participation in the Settling Defendants' Affiliate Program.

2.     As a condition of doing business with any Affiliate or Affiliate Network or such Affiliate or Affiliate Network's acceptance into Settling Defendants' Affiliate Program: (a) provide each such Affiliate or Affiliate Network a copy of this Order; (b) obtain from each such Affiliate or Affiliate Network a signed and dated statement acknowledging receipt of this Order and expressly agreeing to comply with this Order; and (c) clearly and conspicuously disclose in writing that engaging in acts or practices prohibited by this Order will result in immediate termination of any Affiliate or Affiliate Network and forfeiture of all monies owed to such Affiliate or Affiliate Network; *provided, however*, that

if Settling Defendants only have access to certain Affiliates through an Affiliate Network, then Settling Defendants shall contractually require that the Affiliate Network provide the information required by this Subsection to each of those Affiliates and retain proof of the same prior to any such Affiliate being used in Settling Defendants' Affiliate Program; and if Settling Defendants should acquire any entity that has an existing program of selling through Affiliates, the entity must complete all steps in this Subsection prior to Settling Defendants' acquisition of the entity.

3.     Require that each Affiliate or Affiliate Network, prior to the public use or dissemination of any marketing materials, including websites, emails, and pop-ups used by any Affiliate or Affiliate Network to advertise, promote, market, offer for sale, or sell any products, services, or programs through Settling Defendants' Affiliate Program, provide Settling Defendants with the following information: (a) copies of all materially different marketing materials to be used by the Affiliate or Affiliate Network, including text, graphics, video, audio, and photographs; (b) each location the Affiliate or Affiliate Network maintains, or directly or indirectly controls, where the marketing materials will appear, including the URL of any website; (c) for hyperlinks contained within the marketing materials, each location to which a consumer will be transferred by clicking on the hyperlink, including the URL of any website; and (d) the range of dates that the marketing materials will be publicly used or disseminated to consumers; *provided, however,* that if Settling Defendants only have access to certain Affiliates through an Affiliate Network, then Settling Defendants shall contractually require that the Affiliate Network obtain and maintain the same information set forth above from each of those Affiliates who are part of Settling Defendants' Affiliate Program prior to the public use or dissemination of any such marketing materials, and provide proof to Settling Defendants of having obtained the same.

4.     Promptly review the marketing materials specified in Section II.D.3 above as necessary to ensure compliance with this Order.  Settling Defendants shall also promptly take steps as necessary to ensure that the marketing materials provided to Settling Defendants under Section II.D.3 above are the marketing materials publicly used or disseminated to consumers by the Affiliate or Affiliate Network. If Settling Defendants determine that the use of any marketing material does not comply with this Order, Settling Defendants shall inform the Affiliate or Affiliate Network in writing that approval is denied and shall not pay any amounts to the Affiliate or Affiliate Network for such marketing, including any payments for leads, "click-throughs," or sales resulting therefrom; *provided, however*, that if Settling Defendants only have access to certain Affiliates through an Affiliate Network, then Settling Defendants shall contractually require that the Affiliate Network comply with the procedures set forth in this Subsection as to those Affiliates.

5.     Promptly and completely investigate any complaints that Settling Defendants receive through any source to determine whether any Affiliate or Affiliate Network is engaging in acts or practices prohibited by this Order, either directly or through any Affiliate that is part of Settling Defendants' Affiliate Program.

6.     Upon determining that any Affiliate or Affiliate Network has engaged in, or is engaging in, acts or practices prohibited by this Order, either directly or through any Affiliate that is part of Settling Defendants' Affiliate Program, immediately:

a.     Disable any connection between the Settling Defendants' Affiliate Program and the marketing materials used by the Affiliate or Affiliate Network to engage in such acts or practices prohibited by this Order;

b.     Immediately halt the processing of any payments or charges generated by the Affiliate or Affiliate Network;

14

c.     Fully refund, or cause to be refunded, within five (5) business days, each consumer charged by Settling Defendants whose sale originated from the Affiliate or Affiliate Network on or after the date the Affiliate or Affiliate Network engaged in acts or practices prohibited by this Order; and

d.     Immediately terminate the Affiliate or Affiliate Network; *provided, however*, Settling Defendants shall not be in violation of this subsection if Settling Defendants fail to terminate an Affiliate Network in a case where Settling Defendants' only access to an Affiliate who has engaged in acts or practices prohibited by this Order is through an Affiliate Network and Settling Defendants receive notice that the Affiliate Network immediately terminated the Affiliate violating this Order from any Affiliate Program maintained by the Settling Defendants.

## III.

## REQUIRED DISCLOSURES RELATING TO
## NEGATIVE OPTION FEATURES

**IT IS FURTHER ORDERED** that Settling Defendants, Settling Defendants' officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service with a Negative Option Feature, other than any good or service covered under the Section of this Order entitled "Ban on Certain Negative Option Sales," are permanently restrained and enjoined from:

A.     Obtaining Billing Information from a consumer for any transaction involving a good or service that includes a Negative Option Feature, without first disclosing Clearly and Conspicuously, and in Close Proximity to where a consumer provides Billing Information:

1.     The extent to which the consumer must take affirmative action(s) to avoid any charges on a recurring basis;

2. The total cost (or range of costs) the consumer will be charged, the date the initial charge will be submitted for payment, and the frequency of such charges unless the consumer timely takes affirmative steps to prevent or stop such charges;

3. The deadline(s) (by date or frequency) by which the consumer must affirmatively act in order to stop all recurring charges;

4. The name of the seller or provider of the good or service and, if the name of the seller or provider will not appear on billing statements, the billing descriptor that will appear on such statements;

5. A description of the good or service;

6. Any charge or cost for which the consumer is responsible in connection with the cancellation of an order or the return of a product; and

7. The simple cancellation mechanism to stop any recurring Charges, as required by Section V of this Order.

B. Failing to send the consumer:

1. Immediately after the consumer's submission of an online order, written confirmation of the transaction by email. The email must Clearly and Conspicuously disclose all the information required by Subsection III.A, and contain a subject line reading "Order Confirmation" along with the name of the good or service and no additional information; or

2. Within two (2) days after receipt of the consumer's order by mail or telephone, a written confirmation of the transaction, either by email or first class mail. The email or letter must Clearly and Conspicuously disclose all the information required by Subsection III.A. The subject line of the email must Clearly and Conspicuously state "Order Confirmation" along with the name of the good or service and nothing else. The outside of the envelope must Clearly and Conspicuously state "Order Confirmation" along with the name of the good or

service and no additional information other than the consumer's address, the seller's return address, and postage.

## IV.

## OBTAINING EXPRESS INFORMED CONSENT

**IT IS FURTHER ORDERED** that Settling Defendants, Settling Defendants' officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service with a Negative Option Feature, other than any good or service covered under the Section of this Order entitled "Ban on Certain Negative Option Sales," are permanently restrained and enjoined from using, or assisting others in using, Billing Information to obtain payment from a consumer, unless Settling Defendants first obtain the express informed consent of the consumer to do so. To obtain express informed consent, Settling Defendants must:

A.     For all written offers (including over the Internet or other web-based applications or services), obtain consent through a check box, signature, or other substantially similar method, which the consumer must affirmatively select or sign to accept the Negative Option Feature, and no other portion of the offer. Settling Defendants shall disclose Clearly and Conspicuously, and in Close Proximity to such check box, signature, or substantially similar method of affirmative consent, only the following, with no additional information:

1.     The extent to which the consumer must take affirmative action(s) to avoid any charges on a recurring basis;

2.     The total cost (or range of costs) the consumer will be charged and, if applicable, the frequency of such charges unless the consumer timely takes affirmative steps to prevent or stop such charges; and

3.     The deadline(s) (by date or frequency) by which the consumer must affirmatively act in order to stop all recurring charges.

17

B. For all oral offers, prior to obtaining any Billing Information from the consumer:

 1. Clearly and Conspicuously disclose the information contained in Subsection IV.A; and

 2. Obtain affirmative unambiguous express oral confirmation that the consumer: (a) consents to being charged for any good or service, including providing, at a minimum, the last four (4) digits of the consumer's account number to be charged, (b) understands that the transaction includes a Negative Option Feature, and (c) understands the specific affirmative steps the consumer must take to prevent or stop further charges.

C. For transactions conducted through Telemarketing, Settling Defendants shall maintain for three (3) years from the date of each transaction an unedited voice recording of the entire transaction, including the prescribed statements set out in Subsection IV.B. Each recording must be retrievable by date and by the consumer's name, telephone number, or Billing Information, and must be provided upon request to the consumer, the consumer's bank, or any law enforcement entity.

**V.**

**SIMPLE MECHANISM TO CANCEL**

**NEGATIVE OPTION FEATURE**

**IT IS FURTHER ORDERED** that Settling Defendants, Settling Defendants' officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service with a Negative Option Feature, other than any good or service covered under the Section of this Order entitled "Ban on Certain Negative Option Sales," are permanently restrained and enjoined from failing to provide a simple mechanism for the consumer to immediately stop any recurring charges. Such

mechanism must not be difficult, costly, confusing, or time consuming, and must be at least as simple as the mechanism the consumer used to initiate the charge(s). In addition:

A.     For consumers who entered into the agreement to purchase a good or service including a Negative Option Feature over the Internet or through other web-based applications or services, Settling Defendants must provide a mechanism, accessible over the Internet or through such other web-based application or service that consumers can easily use to cancel the good or service and to immediately stop all further charges.

B.     For consumers who entered into the agreement to purchase a good or service including a Negative Option Feature through an oral offer and acceptance, Settling Defendants must maintain a telephone number and a postal address that consumers can easily use to cancel the good or service and to immediately stop all further charges.  Settling Defendants must assure that all calls to this telephone number shall be answered during normal business hours and that mail to the postal address is retrieved regularly.

## VI.

## PROHIBITIONS AGAINST VIOLATION OF THE ELECTRONIC FUND TRANSFER ACT

**IT IS FURTHER ORDERED** that Settling Defendants and Settling Defendants' officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the sale of any good or service are hereby permanently restrained and enjoined from:

A.     Engaging in any recurring debiting of a consumer's account without first obtaining a valid written pre-authorization for Preauthorized Electronic Fund Transfers from the consumer's account, which pre-authorization is clear and readily understandable, identifiable as a pre-authorization, and reflects the

consumer's assent, as required by Section 907(a) of the Electronic Fund Transfer Act, 15 U.S.C. § 1693e(a), and Section 1005.10(b) of Regulation E, as more fully set out in Section 1005.10(b) of the Consumer Financial Protection Bureau's Official Staff Commentary to Regulation E ("Official Staff Commentary to Regulation E"), 12 C.F.R. § 1005.10(b), cmts. 5 and 6, Supp. I;

B.     Engaging in any recurring debiting of a consumer's account without first providing a copy of a valid written pre-authorization to the consumer for Preauthorized Electronic Fund Transfers from the consumer's account, which copy is clear and readily understandable, identifiable as a pre-authorization, and reflects the consumer's assent, as required by Section 907(a) of EFTA, 15 U.S.C. § 1693e(a), and Section 1005.10(b) of Regulation E, as more fully set out in Section 1005.10(b) of the Official Staff Commentary to Regulation E, 12 C.F.R. § 1005.10(b), cmts. 5 and 6, Supp. I; and

C.     Failing to maintain procedures reasonably adapted to avoid an unintentional failure to obtain a written authorization for Preauthorized Electronic Fund Transfers, as required in Section 1005.10(b) of the Official Staff Commentary to Regulation E, 12 C.F.R. § 1005.10(b), cmt. 7, Supp. I.

## VII.

## PROHIBITIONS RELATED TO MERCHANT ACCOUNTS

**IT IS FURTHER ORDERED** that Settling Defendants, Settling Defendants' officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from:

A.     Failing to disclose to any bank, payment processor, credit card processor, independent sales organization, third party processor, payment gateway, or other financial institution any material fact relating to obtaining a Merchant Account, including, but not limited to, the identity of the owner, manager, director, or officer of an entity applying for or holding a Merchant Account, and whether

such owner, manager, director, or officer:

        1.     Has been or is placed in a Merchant Account monitoring program;

        2.     Has had a Merchant Account terminated by a bank, payment processor, or other financial institution; or

        3.     Has been fined or otherwise disciplined by a bank, payment processor, or other financial institution, in connection with a Merchant Account.

B.     Making, or assisting others in making, directly or by implication, any false or misleading statements or material omissions in order to obtain a Merchant Account or respond to a Chargeback.

C.     Engaging in tactics to avoid any fraud or risk monitoring program established by any financial institution, acquiring bank, or the operators of any payment system, including:

        1.     Using shell companies or nominees (including nominee owners, officers, or managers) to obtain Merchant Accounts;

        2.     Balancing or distributing sales transaction volume or sales transaction activity among multiple Merchant Accounts or merchant billing descriptors; or

        3.     Splitting a single transaction into multiple smaller transactions.

D.     Causing a sham sales transaction, including microtransactions (sometimes referred to as Value Added Propositions or VAP) or sales transactions by a Merchant to itself.

## VIII.

## PROHIBITION ON CREDIT CARD LAUNDERING

**IT IS FURTHER ORDERED** that Settling Defendants, Settling Defendants' officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether

acting directly or indirectly, in connection with a Merchant Account are permanently restrained and enjoined from Credit Card Laundering.

## IX.

## MONETARY JUDGMENT AND PARTIAL SUSPENSION

**IT IS FURTHER ORDERED** that:

A.      Judgment in the amount of sixty million, three hundred thousand, dollars ($60,300,000) is entered in favor of the Commission against Settling Defendants, jointly and severally, as equitable monetary relief, which may include restitution.  Upon complete payment and transfer to the Commission of all Assets listed in Subsections IX.B-D below, the remainder of the judgment is suspended, subject to Subsections IX.E-G below.

B.      In partial satisfaction of the monetary judgment set forth above, within seven (7) days after the entry of this Order, the following transfers of Assets shall be made to the Commission by electronic fund transfer in accordance with instructions provided by a representative of the Commission.  Individual Defendant Phillip Peikos relinquishes all legal and equitable right, title, control, and interest in these Assets and shall take all steps necessary to transfer possession, custody, and control of the Assets to the Commission:

1.      Banco Popular de Puerto Rico shall transfer to the Commission all Assets held in the bank accounts ending in account numbers 5794 and 5816 in the name of Phillip Peikos; and

2.      Citibank, N.A. shall transfer to the Commission all Assets held in the bank accounts ending in account numbers 9763 and 9771 in the name of Phillip Peikos.

C.      In partial satisfaction of the monetary judgment set forth above, within seven (7) days after the entry of this Order, the following transfers of Assets shall be made to the Receiver, to the extent not already transferred to the Receiver, and such Assets shall be included within the Receivership Estate.  Settling

Defendants relinquish all legal and equitable right, title, control, and interest in these Assets and shall take all steps necessary to transfer possession, custody, and control of the Assets to the Receiver:

1. Citibank, N.A. shall transfer to the Receiver all Assets held in the name of or for the benefit of any of the Receivership Entities, including the Assets held in the following bank accounts:

   a. The bank account ending in account number 9275 in the name of Apex Capital Group, LLC;

   b. The bank account ending in account number 5557 in the name of Jaci, LLC;

   c. The bank account ending in account number 5540 in the name of Jaci Holding LLC; and

   d. The bank account ending in account number 6446 in the name of NextG Payments, LLC.

2. Banco Popular de Puerto Rico shall transfer to the Receiver all Assets held in the name of or for the benefit of any of the Receivership Entities, including the Assets held in the following bank accounts:

   a. The bank account ending in account number 7665 in the name of Apex Capital Group, LLC; and

   b. The bank account ending in account number 2294 in the name of Brandooza LLC.

3. Wells Fargo Bank, N.A. shall transfer to the Receiver all Assets held in the name of or for the benefit of any of the Receivership Entities, including the Assets held in the following bank accounts:

   a. The bank account ending in account number 4941 in the name of Apres Vous Media, LLC;

   b. The bank account ending in account number 2944 in the name of Cascade Canyon LLC;

c. The bank accounts ending in account numbers 8505 and 7158 in the name of Confidential Holdings LLC;

d. The bank account ending in account number 4982 in the name of Cornice Group LLC;

e. The bank account ending in account number 8305 in the name of Horizon Media, LLC;

f. The bank account ending in account number 3074 in the name of Interzoom, LLC;

g. The bank account ending in account number 2621 in the name of Mountain Range Ventures LLC;

h. The bank account ending in account number 4966 in the name of Shadow Peak, LLC;

i. The bank accounts ending in account numbers 2434 and 1101 in the name of Singletrack Solutions LLC;

j. The bank account ending in account number 2969 in the name of Sky Media Group, LLC;

k. The bank account ending in account number 8690 in the name of Teton Pass LLC; and

l. The bank account ending in account number 2977 in the name of Wyoming Freedom Group, LLC.

4. Barclays Bank PLC shall transfer to the Receiver all Assets held in the name of or for the benefit of any of the Receivership Entities, including the bank accounts in the name of Omni Group Limited.

5. BMO Harris Bank, N.A. shall transfer to the Receiver all Assets, including reserve funds, held in the name of or for the benefit of any of the Receivership Entities.

6.     Cashflows Europe Limited shall transfer to the Receiver all Assets, including reserve funds, held in the name of or for the benefit of any of the Receivership Entities.

7.     Chase Paymentech shall transfer to the Receiver all Assets, including reserve funds, held in the name of or for the benefit of any of the Receivership Entities.

8.     Connected Payment Services, Inc. shall transfer to the Receiver all Assets, including reserve funds, held in the name of or for the benefit of any of the Receivership Entities.

9.     Decta Limited shall transfer to the Receiver all Assets, including reserve funds, held in the name of or for the benefit of any of the Receivership Entities.

10.     Deutsche Bank AG shall transfer to the Receiver all Assets, including reserve funds, held in the name of or for the benefit of any of the Receivership Entities.

11.     Elavon Inc. shall transfer to the Receiver all Assets, including reserve funds, held in the name of or for the benefit of any of the Receivership Entities.

12.     Esquire Bank shall transfer to the Receiver all Assets, including reserve funds, held in the name of or for the benefit of any of the Receivership Entities.

13.     EVO Payments International shall transfer to the Receiver all Assets, including reserve funds, held in the name of or for the benefit of any of the Receivership Entities.

14.     Global Electronic Technology, Inc. shall transfer to the Receiver all Assets, including reserve funds, held in the name of or for the benefit of any of the Receivership Entities.

15. Global Merchant Advisors, Inc. shall transfer to the Receiver all Assets, including reserve funds, held in the name of or for the benefit of any of the Receivership Entities.

16. Humboldt Merchant Services shall transfer to the Receiver all Assets, including reserve funds, held in the name of or for the benefit of any of the Receivership Entities.

17. Merrick Bank shall transfer to the Receiver all Assets, including reserve funds, held in the name of or for the benefit of any of the Receivership Entities.

18. National Merchant Services LLC shall transfer to the Receiver all Assets, including reserve funds, held in the name of or for the benefit of any of the Receivership Entities.

19. National Merchants Association shall transfer to the Receiver all Assets, including reserve funds, held in the name of or for the benefit of any of the Receivership Entities.

20. Payment World, LLC shall transfer to the Receiver all Assets, including reserve funds, held in the name of or for the benefit of any of the Receivership Entities.

21. Paysafe Group Plc shall transfer to the Receiver all Assets, including reserve funds, held in the name of or for the benefit of any of the Receivership Entities.

22. Priority Payment Systems LLC shall transfer to the Receiver all Assets, including reserve funds, held in the name of or for the benefit of any of the Receivership Entities.

23. Signapay shall transfer to the Receiver all Assets, including reserve funds, held in the name of or for the benefit of any of the Receivership Entities.

24. Signature Card Services shall transfer to the Receiver all Assets, including reserve funds, held in the name of or for the benefit of any of the Receivership Entities.

25. Synovus Financial Corp. shall transfer to the Receiver all Assets, including reserve funds, held in the name of or for the benefit of any of the Receivership Entities.

26. Transact Pro shall transfer to the Receiver all Assets, including reserve funds, held in the name of or for the benefit of any of the Receivership Entities.

27. U.S. Merchant Systems LLC shall transfer to the Receiver all Assets, including reserve funds, held in the name of or for the benefit of any of the Receivership Entities.

28. Woodforest National Bank shall transfer to the Receiver all Assets, including reserve funds, held in the name of or for the benefit of any of the Receivership Entities.

29. Worldpay, LLC shall transfer to the Receiver all Assets, including reserve funds, held in the name of or for the benefit of any of the Receivership Entities.

30. Individual Defendant Phillip Peikos shall transfer to the Receiver all of his rights and interests in Jaci and Jaci Holdings (USA), as identified in his November 30, 2018 Financial Statement, including attachments.

31. Individual Defendant Phillip Peikos shall transfer to the Receiver all of his rights and interests in Cinsay (USA), as identified in his November 30, 2018 Financial Statement, including attachments.

32. Individual Defendant Phillip Peikos shall transfer to the Receiver all of his rights and interests in Brandooza (Puerto Rico), as identified in his November 30, 2018 Financial Statement, including attachments.

33.     Individual Defendant Phillip Peikos shall transfer to the Receiver his 2016 Bentley GTC Speed, as identified in his November 30, 2018 Financial Statement, including attachments.

34.     Individual Defendant Phillip Peikos shall transfer to the Receiver his 2017 Jeep Wrangler, as identified in his November 30, 2018 Financial Statement, including attachments.

35.     Settling Defendants shall transfer to the Receiver their rights and interests in BrightGuard Inc.

36.     Settling Defendants shall transfer to the Receiver their rights and interests in Highpost Holdings Limited, including any and all rights related to the Highpost Holdings Limited Share Purchase Agreement, entered into by Apex Capital Group LLC and C.D.L. Developing Limited with an effective date of February 20, 2018.

37.     Defendant Omni Group Limited shall transfer to the Receiver its rights and interests in any loan made to Highpost Holdings Limited, including amounts loaned to Highpost Holdings Limited in October 2017, as identified in its November 30, 2018 Financial Statement, including attachments.

38.     Defendant Apex Capital Group, LLC shall transfer to the Receiver its rights and interests in any loan made to Sestito Property Management, LLC, as identified in its November 30, 2018 Financial Statement, including attachments.

D.     In partial satisfaction of the monetary judgment set forth above, the following transfer and sale of the property located at 740 Country Valley Road, Westlake Village, California 91362, including all furniture contained therein (the "Westlake Village Property" or the "Property") shall occur:

1.     Within seven (7) days of entry of this Order, Individual Defendant Phillip Peikos shall cooperate fully with the Receiver and take such steps as the Receiver may require, including executing any documents and

providing any information, to transfer to the Receiver possession and full legal and equitable title to the Westlake Village Property, unless such transfer has already taken place. Until title and possession are transferred, Individual Defendant Phillip Peikos shall maintain and take no action to diminish the value of the Westlake Village Property, including any structures, fixtures, and appurtenances thereto. Any persons currently residing at the Westlake Village Property shall vacate the Property in "broom clean condition" and deliver to the Receiver all keys and security codes, if any, along with written notice that possession is surrendered. Individual Defendant Phillip Peikos represents that no encumbrances to the Westlake Village Property have been added since the execution of his Financial Statement dated November 30, 2018 and that he will not add any encumbrances after signing this Order.

2.　The Receiver shall, within six (6) months from the date of this Order, make all good faith efforts to sell the Westlake Village Property.

3.　The Receiver and all personnel hired by the Receiver in connection with the sale of the Westlake Village Property shall be paid their reasonable and customary fees for the performance of their duties in connection with the sale of the Property and for the cost of out-of-pocket expenses incurred by them. Such compensation shall be paid from the proceeds of the sale of the Westlake Village Property.

4.　Following the transfer of title and possession to the Receiver, the Receiver shall be responsible for all mortgage payments, maintenance fees, taxes, utility, sewer and/or water use charges, homeowners association's fees or penalties, and all other expenses of any nature related to the Westlake Village Property. In addition, the Receiver shall be responsible for all costs associated with the marketing and sale of the Westlake Village Property, including transfer fees, recording fees, advertising costs, and any commissions associated with or resulting from the sale of the Westlake Village Property. All of the expenses, fees,

and costs set forth in this Paragraph shall be paid by the Receiver from the proceeds of the sale of the Westlake Village Property.

5. Within thirty (30) days of the sale of the Westlake Village Property, the Receiver shall pay to the Commission by electronic fund transfer the net proceeds from the sale ("Net Proceeds"), after the payment of the related liens, debts, fees, and expenses set forth in Paragraph D.4 of this Section. *Provided, however*, that if the Net Proceeds from the sale exceed $500,000, the Receiver shall pay seventy thousand dollars ($70,000) of the Net Proceeds to non-party Gina Manfredi and the remainder of the Net Proceeds to the Commission.

E. The Commission's agreement to the suspension of part of the judgment is expressly premised upon the truthfulness, accuracy, and completeness of Settling Defendants' sworn financial statements and related documents (collectively, "financial representations") submitted to the Commission, namely:

1. the Financial Statement of Individual Defendant Phillip Peikos signed on November 30, 2018, including the attachments;

2. the Financial Statement of Corporate Defendant Apex Capital Group, LLC, signed by Phillip Peikos, Chief Executive Officer, on November 30, 2018, including the attachments;

3. the Financial Statement of Corporate Defendant Capstone Capital Solutions Limited, signed by Raul Camacho, Manager, on December 2, 2018, including the attachments;

4. the Financial Statement of Corporate Defendant Clik Trix Limited, signed by Raul Camacho, Manager, on December 2, 2018, including the attachments;

5. the Financial Statement of Corporate Defendant Empire Partners Limited, signed by Raul Camacho, Manager, on December 2, 2018, including the attachments;

6. the Financial Statement of Corporate Defendant Interzoom Capital Limited, signed by Raul Camacho, Manager, on December 2, 2018, including the attachments;

7. the Financial Statement of Corporate Defendant Lead Blast Limited, signed by Raul Camacho, Manager, on December 2, 2018, including the attachments;

8. the Financial Statement of Corporate Defendant Mountain Venture Solutions Limited, signed by Raul Camacho, Manager, on December 2, 2018, including the attachments;

9. the Financial Statement of Corporate Defendant Nutra Global Limited, signed by Raul Camacho, Manager, on December 2, 2018, including the attachments;

10. the Financial Statement of Omni Group Limited, signed by Phillip Peikos, Director, on November 30, 2018, including the attachments;

11. the Financial Statement of Corporate Defendant Rendezvous IT Limited, signed by Raul Camacho, Manager, on December 2, 2018, including the attachments;

12. the Financial Statement of Corporate Defendant Sky Blue Media Limited, signed by Raul Camacho, Manager, on December 2, 2018, including the attachments;

13. the Financial Statement of Corporate Defendant Tactic Solutions Limited, signed by Raul Camacho, Manager, on December 2, 2018, including the attachments; and

14. the additional information submitted by email dated March 25, 2019, from William Rothbard, attorney for the Settling Defendants, confirming the amount and source of a loan made to Mr. Peikos.

F. The suspension of the judgment will be lifted as to any Settling Defendant if, upon motion by the Commission, the Court finds that Settling

Defendant failed to disclose any material Asset, materially misstated the value of any Asset, or made any other material misstatement or omission in the financial representations identified above.

G.     If the suspension of the judgment is lifted, the judgment becomes immediately due as to that Settling Defendant in the amount specified in Section IX.A. above (which the parties stipulate only for purposes of this Section represents the consumer injury alleged in the Complaint), less any payment previously made pursuant to this Section, plus interest computed from the date of entry of this Order.

## X.

## ADDITIONAL MONETARY PROVISIONS

**IT IS FURTHER ORDERED** that:

A.     Settling Defendants relinquish dominion and all legal and equitable right, title, and interest in all Assets transferred pursuant to this Order and may not seek the return of any Assets.

B.     The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

C.     The facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

D.     Settling Defendants acknowledge that their Taxpayer Identification Numbers (Social Security Numbers or Employer Identification Numbers), which Settling Defendants previously submitted to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

E.     All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund.  If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the Commission may apply any remaining money for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Settling Defendants' practices alleged in the Complaint.  Any money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement.  Settling Defendants have no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

F.     The freeze on the Assets of the Settling Defendants pursuant to Section VI of the Preliminary Injunction entered in this action on December 18, 2018 is modified to permit the payments and other transfers of Assets identified in Sections IX and X of this Order.  Upon completion of all payment and other obligations identified in Sections IX and X of this Order, the asset freezes are dissolved as to the Settling Defendants.  A financial institution shall be entitled to rely upon a letter from the Commission stating that the freeze on the Settling Defendants' Assets has been lifted.

# XI.

## CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Settling Defendants and Settling Defendants' officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby permanently restrained and enjoined from directly or indirectly:

A.     failing to provide sufficient customer information to enable the Commission to efficiently administer consumer redress.  If a representative of the Commission requests in writing any information related to redress, Settling Defendants must provide it, in the form prescribed by the Commission, within 14 days;

B.     disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that any Settling Defendant obtained prior to entry of this Order in connection with the promoting or offering for sale of any good or service with a Negative Option Feature; and

C.     failing to destroy such customer information in all forms in their possession, custody, or control within 30 days after receipt of written direction to do so from a representative of the Commission.

*Provided, however*, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

## XII.

## COOPERATION

**IT IS FURTHER ORDERED** that Settling Defendants must fully cooperate with representatives of the Commission in this case and in any investigation related to or associated with the transactions or the occurrences that are the subject of the Complaint.  Such Settling Defendants must provide truthful and complete information, evidence, and testimony.  Individual Defendant Phillip Peikos must appear and the Corporate Defendants must cause Settling Defendants' officers, employees, representatives, or agents to appear for interviews, discovery, hearings, trials, and any other proceedings that a Commission representative may reasonably request upon 5 days written notice, or other reasonable notice, at such

34

places and times as a Commission representative may designate, without the service of a subpoena.

## XIII.

## ORDER ACKNOWLEDGMENTS

**IT IS FURTHER ORDERED** that Settling Defendants obtain acknowledgments of receipt of this Order:

A.      Each Settling Defendant, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.      For 5 years after entry of this Order, Individual Defendant Phillip Peikos for any business that he, individually or collectively with any other Settling Defendant, is the majority owner or controls directly or indirectly, and each Corporate Defendant, must deliver a copy of this Order to:  (1) all principals, officers, directors, and LLC managers and members; (2) all employees having managerial responsibilities for conduct related to the subject matter of the Order and all agents and representatives who participate in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting.  Delivery must occur within 7 days of entry of this Order for current personnel.  For all others, delivery must occur before they assume their responsibilities.

C.      From each individual or entity to which a Settling Defendant delivered a copy of this Order, that Settling Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## XIV.

## COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Settling Defendants make timely submissions to the Commission:

A. One year after entry of this Order, each Settling Defendant must submit a compliance report, sworn under penalty of perjury:

1. Each Settling Defendant must: (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with Settling Defendant; (b) identify all of that Settling Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Settling Defendant (which Individual Defendant Phillip Peikos must describe if he knows or should know due to his own involvement); (d) describe in detail whether and how that Settling Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

2. Additionally, Individual Defendant Phillip Peikos must: (a) identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all business activities, including any business for which such Settling Defendant performs services whether as an employee or otherwise and any entity in which such Settling Defendant has any ownership interest; and (c) describe in detail such Settling Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B. For 15 years after entry of this Order, each Settling Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1. Each Settling Defendant must report any change in: (a) any designated point of contact; or (b) the structure of any Corporate Defendant or any entity that Settling Defendant has any ownership interest in or controls directly or

indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2.     Additionally, Individual Defendant Phillip Peikos must report any change in: (a) name, including aliases or fictitious name, or residence address, or (b) title or role in any business activity, including any business for which such Settling Defendant performs services whether as an employee or otherwise and any entity in which such Settling Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.     Each Settling Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Settling Defendant within 14 days of its filing.

D.     Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.     Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue, NW, Washington, DC 20580. The subject line must begin: *FTC v. Apex Capital Group, LLC, et al*.

**XV.**

**RECORDKEEPING**

**IT IS FURTHER ORDERED** that Settling Defendants must create certain records for 15 years after entry of the Order, and retain each such record for 5

years. Specifically, Corporate Defendants and Individual Defendant Phillip Peikos for any business that such Settling Defendant, individually or collectively with any other Settling Defendant, is a majority owner or controls directly or indirectly, must create and retain the following records:

A. accounting records showing the revenues from all goods or services sold;

B. personnel records showing, for each person providing services, whether as an employee or otherwise, that person's: name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C. records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D. all records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission; and

E. a copy of each unique advertisement or other marketing material.

## XVI.

## COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring Settling Defendants' compliance with this Order, including the financial representations upon which part of the judgment was suspended and any failure to transfer any Assets as required by this Order:

A. Within 14 days of receipt of a written request from a representative of the Commission, each Settling Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying. The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.     For matters concerning this Order, the Commission is authorized to communicate directly with each Settling Defendant.  Settling Defendants must permit representatives of the Commission to interview any employee or other person affiliated with any Settling Defendant who has agreed to such an interview. The person interviewed may have counsel present.

C.     The Commission may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Settling Defendants or any individual or entity affiliated with Settling Defendants, without the necessity of identification or prior notice.  Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D.     Upon written request from a representative of the Commission, any consumer reporting agency must furnish consumer reports concerning Individual Defendant Phillip Peikos, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1).

## XVII.

## RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**SO ORDERED this 11th day of September, 2019.**

_____
JOHN F. WALTER
UNITED STATES DISTRICT JUDGE

**For Plaintiff Federal Trade Commission:**

Dated:  9/6/19

_____/s/_____

BRIAN N. LASKY
LAURA A. ZUCKERWISE
DARREN LUBETZKY
Federal Trade Commission
One Bowling Green, Suite 318
New York, NY 10004
(212) 607-2804 (Zuckerwise)
(212) 607-2822 (Fax)
lzuckerwise@ftc.gov

FAYE CHEN BARNOUW
Federal Trade Commission
10990 Wilshire Blvd., Suite 400
Los Angeles, CA 90024
(310) 824-4300
(310) 824-4380 (Fax)

**For Defendants Phillip Peikos, Apex Capital Group, LLC, Capstone Capital Solutions Limited, Clik Trix Limited, Empire Partners Limited, Interzoom Capital Limited, Lead Blast Limited, Mountain Venture Solutions Limited, Nutra Global Limited, Omni Group Limited, Rendezvous IT Limited, Sky Blue Media Limited, and Tactic Solutions Limited**

Dated:  8/5/19

_____/s/_____

WILLIAM I. ROTHBARD
Law Offices of William I. Rothbard
2333 Canyonback Road
Los Angeles, CA 90049
(310) 453-8713
(310) 453-8715 (Fax)
Bill@RothbardLaw.com

**Defendant Phillip Peikos**

Dated:  8/4/19

_____/s/_____

PHILLIP PEIKOS
_Individually and on behalf of the Corporate Defendants_

40

**EXHIBIT 1**
# Wyoming Related Companies

| Company |
| --- |
| Alpha Group LLC |
| Apres Vous Media, LLC |
| Based Capital LLC |
| Bold Media LLC |
| Capstone Capital, LLC |
| Cascade Canyon LLC |
| Confidential Holdings, LLC |
| Cornice Group LLC |
| Crest Capital, LLC |
| Fortune Ventures LLC |
| Future Holdings LLC |
| Grand Assets, LLC |
| Horizon Media, LLC |
| Interzoom, LLC |
| Lead Blast LLC |
| Lion Capital LLC |
| Macro Group LLC |
| Mountain Range Ventures LLC |
| Mountain Solutions, LLC |
| Nutra First LLC |
| Nutra Global LLC |
| Old West Equity LLC |
| Omega Assets LLC |
| Rendezvous IT, LLC |
| Shadow Peak,  LLC |
| Singletrack Solutions LLC |
| Sky Media Group, LLC |
| Teton Pass LLC |
| Virtual Media LLC |
| Wonder Leads LLC |
| Wyoming Freedom Group LLC |
| Zoom Media LLC |

# EXHIBIT 2
## UK Related Companies

| Company |
| --- |
| Ace Media Group Ltd |
| Alpha Corporate Ventures Ltd |
| Apres Vous Media Ltd |
| Based Capital Ltd |
| Capstone Capital Solutions Ltd |
| Clik Trix Ltd |
| Crest Capital Ventures Ltd |
| Digital X Solutions Ltd |
| Exclusive Media Group Ltd |
| Empire Partners Ltd |
| Energy Tomorrow Ltd |
| Fortune Ventures Ltd |
| Future Hold Ventures Ltd |
| Future Precision Ltd |
| G Force Max Ltd |
| Grand Assets Ventures Ltd |
| Horizon Media Partners Ltd |
| Interzoom Capital Ltd |
| Lead Blast Ltd |
| Lion Capital Solutions Ltd |
| Maverick Pro Ltd |
| Mountain Venture Solutions Ltd |
| New Idea Group Ltd |
| Nutra First Ltd |
| Nutra Global Ltd |
| Omega Assets Ltd |
| Online Product Group Ltd |
| Precision Tactic Group Ltd |
| Rendezvous IT Ltd |
| Sky Blue Media Ltd |
| Snowdrift Solutions Ltd |
| Tactic Solutions Ltd |
| Top Quality Group Ltd |
| Virtual Media Solutions Ltd |
| Visitron Capital Ltd |
| Web Media Depot Ltd |
| Zoom Media Ltd |