1   WILLIAM I. ROTHBARD (CA Bar No. 72447)
    Law Offices of William I. Rothbard
2   2708 Wilshire Blvd., Ste. 428
    Santa Monica, CA 90403
3   Telephone: (310) 453-8713
    Email: Bill@RothbardLaw.com
4
    Attorney for Defendants SIA Transact Pro and Mark Moskvins
5

6

7                   UNITED STATES DISTRICT COURT
                    CENTRAL DISTRICT OF CALIFORNIA
8

9   FEDERAL TRADE COMMISSION,              Case No. 2:18-cv-9573-JFW(JPR)

10
                        Plaintiff,         DEFENDANTS SIA TRANSACT
11                                         PRO'S AND MARK
            v.                             MOSKVINS' NOTICE OF
12                                         MOTION AND MOTION TO
    APEX CAPITAL GROUP, LLC, et al.,       MODIFY, VACATE
13                                         OR SET ASIDE MONETARY
                                           PORTION OF STIPULATED
14                      Defendants.        PERMAMENT INJUNCTION
                                           AND MONETARY
15                                         JUDGMENT;
                                           MEMORANDUM OF POINTS
16                                         AND AUTHORITIES
17
                                           [Declaration of Mark Moskvins
18                                         filed concurrently herewith]
19
                                           Pursuant to Rule 60(b)
20
                                           Date: August 30, 2021
21                                         Time: 1:30 p.m.
                                           Ctrm: 7A
22                                         Amended Complaint Filed: May 30,
                                           2019
23                                         Trial Date: None
24

25

26

27

28

                                    1

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE NOTICE THAT on August 30, 2021, at 1:30 p.m. or as soon thereafter as counsel may be heard before the Honorable John F. Walter, Courtroom 7A of the above-entitled court, located at 350 W. 1st Street, Los Angeles, CA 90012, Defendants SIA Transact Pro and Mark Moskvins ("Transact Pro Defendants" or "Defendants") will move pursuant to Fed. R. Civ. P. 60(b)(4)-(6), and the Court's express and inherent equitable authority, to modify the Stipulated Permanent Injunction and Monetary Judgment entered against the Transact Pro Defendants on January 15, 2020 (Doc 142), to vacate or set aside the monetary judgment ordered therein in light of the Supreme Court's recent decision in *AMG Capital Management, LLC v. Federal Trade Commission*, 141 S. Ct. 1341 (April 22, 2021), holding that Section 13(b) of the Federal Trade Commission Act, 15 U.S.C. 53(b), the statute pursuant to which the FTC filed this action against Defendants and obtained the monetary judgment against them, does not authorize an award of monetary relief.  Under well-established principles of judicial retroactivity, controlling or otherwise persuasive U.S. Supreme Court and Ninth Circuit law, and considerations of equity, the monetary judgment entered against Defendants herein must be set aside and have no further force or effect of law.

This motion is based on this Notice, the attached Memorandum of Points and Authorities and accompanying Declaration of Mark Moskvins, the entire record herein, and such further briefing and argument as the Court may hear. This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on June 30, 2021, at which the parties stated and argued their positions but could not find common ground and Plaintiff Federal Trade Commission informed Defendants it would oppose the motion. A joint meet and confer statement which describes the conference and the parties' positions stated there in more detail is being prepared and will be filed forthwith.

1

2

3      Dated: July 9, 2021                    /s/ William I. Rothbard

4                                             Law Offices of William I. Rothbard
                                              2708 Wilshire Blvd., Ste. 428
5                                             Santa Monica, CA 90403
                                              (310) 453-8713
6                                             Bill@RothbardLaw.com
7

8                                             Counsel for Defendants SIA Transact Pro
                                              and Mark Moskvins
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **Table of Contents**

Table of Contents and Table of Authorities............................................................1,2,3

I. INTRODUCTION AND SUMMARY OF ARGUMENT .................................. 4

II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY ...................... 6

   A. Factual Background.................................................................................. 6

   B. Procedural History .................................................................................. 7

III. THE TRANSACT PRO JUDGMENT ............................................................ 9

IV. THE *AMG* DECISION AND ITS BEFORE AND AFTER ........................... 10

V. DECISIONAL LAW IS PRESUMPTIVELY RETROACTIVE........................ 13

VI. RULE 60(b) PROVIDES MULTIPLE EQUITABLE PATHWAYS FOR VACATING THE MONETARY JUDGMENT.................................................................... 14

   A. The Monetary Judgment is Void for Lack of Jurisdiction. .......................... 17

   B. Prospective Application Of The Monetary Judgment Would Be Inequitable............. 19

   C. Defendants Meet The "Extraordinary Circumstances" Test for Relief From the Monetary Judgment Under Rule 60(b)(6)............................................................. 21

VII. CONCLUSION ......................................................................................... 28

# Table of Authorities

**Cases**

*Adams v. Merrill Lynch, Pierce, Fenner & Smith*, 888 F.2d 696, 702 (10th Cir. 1989) ...............22
*Agnostini v. Felton*, 521 U.S. 203, 215 (1997) ........................................................................19
*AMG Capital Management, LLC v. FTC*, 141 S. Ct. 1341 (April 22, 2021)..................4, 12, 18, 20
*Batts v. Tow-Motor Forklift Co.*, 66 F.3d 743, 749 (1995) ......................................................22
*Beam Distilling Co. v. Georgia*, 501 U.S. at 541 (1991) ..........................................................14
*Bros, Inc. v. W.E. Grace Mfg. Co.*, 320 F.2d 594, 610 (5th Cir. 1963) ....................................20
*Bynoe v. Baca*, 966 F. 3d 972, 980 (9th Cir. 2020), ...............................................................15
*Cf. Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177 (1994)...................................................................................................................................8
*Combs v. Nick Garin Trucking*, 825 F.2d 437, 442 (D.C. Cir.1987).........................................18
*Credit Bureau Center*, 284 F. Supp 3d (N.D. IL2018), aff'd., 937 F.3d 764 773 (7th Cir.2019).................................................................................................................................11
*Darrin v. Bank of Am, N.A.*, 2014 U.S. Dist. LEXIS 66461**9-10 (E.D. CA 2014)....................15
*FTC v. AMG Capital, LLC*, 910 F. 3d 417 (9th Cir. 2018)..........................................................11
*Franklin v. Kramer*, No. CV 06-02774-CAS (RNB), 2013 WL 12441930 at *5 (C.D. Cal. 2013) ..............................................................................................................................................22
*Gondeck v. Pan Am. World Airways, Inc.*, 382 U.S. 25, 26-27 (1965) .....................................21
*Griffith* v. *Kentucky*, 479 U. S. 314 (1987)..............................................................................13
*Hall v. Haws*, 861 F.3d 977, 987 (9th Cir. 2017) ...................................................................15
*Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 96 (1993)........................................................14
*Henson v. Fidelity Nat'l Fin. Inc.*, 943 F.3d 434, 443 (2019) .....................21, 22, 23, 24, 25, 26, 27
*Horne v. Flores*, 557 U.S. 433, 447 (2009) ...........................................................................19
*In re Terrorist Attacks on September 11, 2001*, 741 F.3d 353, 356 (2d Cir. 2013).....................21
*Karsner v. Lothian*, 532 F.3d 876, 886 (D.C. Cir. 2008)..........................................................18
*Klapprott v. United States*, 335 U.S. 601, 615 (1949)..............................................................21
*Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 56 (2d Cir. 2004)................................................21
No. 2:12-cv-005346 (D. NV, June 16, 2021) .........................................................................13
*Phelps v. Alameida*, 569 F.3d 1120, 1133 (9th Cir. 2009) ...........................................22, 23, 27
*Plyler v. Moore*, 100 F.3d 365, 371 (4th Cir. 1996)................................................................20
*Radack v. Norwegian Am. Line Agency, Inc.*, 318 F.2d 538, 542 (2d. Cir. 1963)........................21
*Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 393 (1992).............................................16
*Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012)...................................................................21
*United States v. Estate of Donnelly*, 397 U.S. 286, 296 (1970) (Harlan, J., concurring) ...............14
*United States v. Ohio Power Co.*, 353 U.S. 98, 99 (1957). .......................................................21
*United States v. Sparks*, 685 F.2d 1128, 1130 (9th Cir. 1982) ................................................21
*United Student Aid Fund Inc. v Espinosa*, 559 U.S. 260, 271 (2010). .................................17,18

**Other Authorities**

15 U.S.C. § 45 .......................................................................................................................7
15 U.S.C. §§53(b)..................................................................................................................4
15 U.S.C. § 8404 ...................................................................................................................7
Barron & Holtzoff, Federal Practice & Procedure § 1328.......................................................20

*Restatement, Judgments § 125* ................................................................................ 20

26 HARV. J. L. & PUB. POL'Y 811, 866 (2003) ........................................................ 14

**Rules**

FRCP 12 ...................................................................................................... 7

FRCP 60(b) ............................................................................................ passim

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

In *AMG Capital Management, LLC v. FTC,* 141 S. Ct. 1341 (April 22, 2021),
the United States Supreme Court corrected a four decades long legal mistake of
profound consequence in FTC jurisprudence, including for Defendants SIA
Transact Pro and Mark Moskvin (collectively, "Transact Pro Defendants" or
"Defendants").  They bring this Motion under Fed. R. Civ. P.60(b)(4)-(6) to set
aside the monetary judgment entered against them in this matter only 17 months
ago, pursuant to the Supreme Court's historic ruling that Section 13(b) of the
Federal Trade Commission Act ("FTCA"), 15 U.S.C. 53(b), the primary
enforcement tool of the FTC, does not authorize monetary relief for violations of
the FTCA.  Over that long span of time, the FTC, having convinced district and
appellate courts nationwide that Section 13(b), an injunction statute under which
this action was brought, impliedly also authorized equitable monetary relief,
obtained billions of dollars in disgorgement and restitution from FTC defendants.
In hundreds if not thousands of cases, pursuant to this seeming authority, courts,
including this one as to the Apex Defendants, granted *ex parte* FTC requests for
temporary restraining orders that imposed asset freezes and receiverships on
companies and their principals at the outset of a case, almost always giving the FTC
an overwhelming tactical litigation and settlement advantage since defendants were
typically without the means to defend themselves.

On April 22, 2021, in *AMG*, the Supreme Court, in a unanimous 9-0 opinion,
categorically and unequivocally held that this monetary authority asserted under
Section 13(b) of the FTCA does not exist, and never existed.  Courts do not have
and never had the authority because the statute does not grant it, period, full stop. It
is and always was a legal fiction.

Defendants entered into a settlement with the FTC on January 15, 2020, under the then prevailing, but, the Supreme Court has now declared, plainly erroneous view that the FTC had the authority to obtain monetary relief against them.[1] With this mistaken understanding, they agreed to pay the FTC $3.5 million to settle. As of the date of the *AMG* decision, that money had not yet been paid, and remains ***unpaid***, with the FTC's acquiescence and consent. In light of *AMG*, Defendants bring this motion for relief from their monetary judgment under:

1.  Rule 60(b)(4), on grounds of voidness for lack of jurisdiction;

2.  Rule 60(b)(5) on the ground that prospective enforcement of the monetary judgment (since it has not been executed) would be inequitable; and

3.  Rule 60(b)(6), on the ground that the profound change in law pronounced by the high court in *AMG* creates the "extraordinary circumstance" in which the arbitrary and "manifest injustice" of enforcing a monetary judgment that has no legitimacy in law – a judgment that could not be enforced today if it were entered on April 23, 2021 rather than January 15, 2020 - overrides any otherwise usual considerations of finality interests.

Defendants seek no relief from the injunctive or other provisions of the judgment, but only from its monetary provisions. They seek only application of the fundamental principle of justice: equal treatment under the law of similarly-situated individuals. The only difference between Defendants and defendants in *AMG* or ongoing or future FTC enforcement actions brought under Section 13(b) who cannot be held monetarily liable under *AMG* is the fortuity of timing, a mere difference of fifteen months between the Judgment and the decision in *AMG*. Disparate treatment on that random, arbitrary basis alone is incompatible with

---

[1]Stipulated Permanent Injunction and Monetary Judgment entered against the Transact Pro Defendants, January 15, 2020 ("Judgment") (Doc 142)

bedrock notions of equity and the duty of a court, sitting in equity, as is this Court, to do justice.

As discussed herein, Supreme Court and directly applicable Ninth Circuit authority support and indeed compel that the requested relief be granted. More broadly, as a matter of fundamental fairness toward persons in similarly situated circumstances, and under the general principle of retroactivity of decisional law, it should be granted.

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.  Factual Background[2]

Transact Pro is a licensed financial institution and payment processor in Riga, Latvia that provides online payment acceptance and processing services for corporate merchants in Latvia and other EU member states.  It has worked with online merchants throughout the European Union and is a highly respected member of the Latvian (and EU) business community. Founded in 2004, Transact Pro was the first licensed "electronic money institution" in Latvia with the right to provide payment services and was also approved to conduct business in other EU states by their regulatory institutions. It is also a founding member of the Association of Latvian Payment Services and Electronic Money Institutions, whose mission is to promote and strengthen the interests of payment service providers and electronic money institutions in Latvia, On June 17, 2019, the State Revenue Service in Latvia named Transact Pro to the "Gold Level" of its "White List"—an accolade reserved for highly respected companies with minimal violations or tax reporting delays and strong risk monitoring.

Transact Pro provides payment services only within the EU and UK. Transact Pro's former CEO, Defendant Mark Moskvins, resigned from both the board and as

---

[2] Record citations for the facts stated herein may be found in Docs 102 and 102-1.

1   CEO in February 2019 but remains the majority owner. He a citizen of the Republic
2   of Latvia.
3            Beginning in 2015, Transact Pro processed payments for some online sales
4   by UK companies associated with Defendant Apex Capital Group, the original and
5   principal defendant in this action.  No one at Transact Pro, including Moskvins, had
6   a close personal or business relationship with Defendant Philip Peikos, the then
7   CEO of Apex.
8        B. **Procedural History**
9            On November 14, 2018, the FTC filed a Complaint against the Apex
10  Defendants (collectively, Apex, Peikos, and the UK companies) pursuant to Section
11  13(b) of the FTCA, which by its express terms authorizes only temporary injunctive
12  relief to enjoin ongoing or imminent violations of FTC law, and, in "proper cases,"
13  a permanent injunction.  Nevertheless, under then-existing decisional law, at the
14  FTC's request, the Court entered an asset freeze and a receivership ancillary to the
15  issuance of a TRO against the Apex Defendants. On May 30, 2019, also pursuant to
16  Section 13(b), the FTC filed a First Amended Complaint ("FAC"), which added the
17  Transact Pro Defendants. (Doc. 73) The FAC grounds the subject matter
18  jurisdiction of this Court on, *inter alia*, Section 13(b).  *Id.* ¶ 2.
19           The FAC alleged two causes of action against the Transact Pro Defendants,
20  both on a novel theory of "unfairness": (1) "credit card laundering" in violation of
21  Section 5 of the FTCA, 15 U.S.C. § 45 (Count VI); and (2) chargeback
22  manipulation in violation of Section 5 (Count VII).  The FAC did not allege that the
23  Transact Pro Defendants engaged in any of the deceptive advertising and marketing
24  practices alleged against the Apex Defendants (and they did not), including
25  practices in violation of the Restore Online Shoppers' Confidence Act ("ROSCA"),
26  15 U.S.C. § 8404(a), but rather, and only, that they were liable for engaging in
27  "unfair" conduct in violation of Section 5 through their alleged acts of credit card
28

7

1  laundering and chargeback manipulation. Essentially, the Transact Pro Defendants

2  were accused of aiding and abetting the alleged deceptive conduct of the Apex

3  Defendants, a legal theory lacking support in the FTCA that has been specifically

4  rejected in an analogous context. [3]

5      On August 5, 2019, the Transact Pro Defendants moved to dismiss under

6  FRCP (12)(b)(6) for failure to state a cause action given the absence of aiding and

7  abetting liability under Section 5 of the FTCA (Doc. 102), and Transact Pro

8  additionally moved pursuant to FRCP 12 (b)(1) to dismiss on jurisdiction and

9  comity grounds. (Doc. 104)  On September 16, 2019, the Court denied the

10  jurisdictional motion to dismiss and, without specifically addressing the substantive

11  argument of no aiding and abetting liability under Section 5, or how so-called credit

12  card laundering or chargeback manipulation constitute unfair practices as a matter

13  of law within the meaning of Section 5, denied the Transact Pro Defendants'

14  12(b)(6) motion, concluding that the allegations in the FAC were sufficient to

15  survive a motion to dismiss and that these issues would be better resolved on a

16  motion for summary judgment.  (Doc. 123) The Transact Pro Defendants thereupon

17  answered the FAC.

18      On September 11, 2019, pursuant to settlement between the FTC and the

19  Apex Defendants, the Court entered a stipulated final order as to those defendants.

20      On January 15, 2021, following its denial of the Transact Pro Defendants'

21  motions to dismiss and their subsequent settlement discussions with the FTC, the

22  Court entered the Judgment pursuant to a complaint predicated on jurisdiction under

23

24

25

26  [3] *Cf. Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511

27  U.S. 164, 177 (1994) (noting in securities fraud context that if "Congress intended

28  to impose aiding and abetting liability . . . it would have used the words 'aid' and
'abet' in the statutory text").

8

Section 13(b), which, the Supreme Court has now ruled, does not and never did authorize an award of monetary relief.

## III.  THE TRANSACT PRO JUDGMENT

The Transact Pro Defendants' consent decree, drafted by the FTC, imposed certain requirements on Transact Pro's payment processing practices and ordered the disgorgement of $3.5 million, payable within 10 days of entry of the judgment. (Section VII.B)  Critically, the FTC included in the order an express retention of jurisdiction by the Court over this matter "for purposes of construction, modification, and enforcement of this Order." (Section XIV)  There can be no question, then, of the Court's power, explicitly as well as inherently through its equitable power and under the appropriate federal rules, to hear and grant Defendants' Motion to modify the Judgment by vacating its monetary portion.

The accompanying declaration of Mark Moskins explains the practical financial and business pressures to settle despite his strong and sincerely held belief, that he was confident would be vindicated at trial, that he and Transact Pro did not have legal liability as set forth in their motion to dismiss and that the Court lacked personal jurisdiction over Transact Pro.  Moskvins Decl., ¶¶ 4-6.

Mr. Moskvin's declaration also reveals that despite the fact that payment of the settlement sum of $3.5 million was due within 10 days of entry of the Judgment, to date, over 17 months later, ***no portion of the sum has been paid***, with the full understanding and acquiescence of the FTC.  Normally, as part of the settlement process, the FTC requires a defendant to submit a sworn financial disclosure statement and then agrees to a monetary payment based on the defendant's demonstrated ability to pay.  In this instance, however, the FTC did not require Defendants to show their ability to pay prior to settlement, but fixed the payment according to the gross fees Transact Pro received from processing transactions for the Apex Defendants, which were approximately $3.5million.

Post-settlement, Mr. Moskvins informed the FTC that he and Transact Pro did not have $3.5 million in liquid assets but that he would keep trying to sell a property he owned in Florida that, upon sale, possibly would give him the ability to pay at least a part of the settlement.  The FTC, not having done its normal "ability to pay" assessment pre-settlement, agreed to forbear and never placed a lien on the property or any other asset of Defendants. The FTC took no action to enforce the monetary judgment even after the Supreme Court granted certiorari in *AMG* on July 9, 2020, 141 S. Ct. at 194, placing the FTC on notice of a real and imminent risk to enforceability of the judgment in the event of a decision overturning its Section 13(b) monetary authority in the coming Court term. *Id.* at ¶¶ 3, 7-11.

On May 28, 2021, after almost two years of being on the market, the property sold.   The FTC has taken no overt action to claim any of the sale proceeds. *Id.* at ¶10.  As explained below, in light of the Supreme Court's very recent decision in *AMG*, holding that the FTC does not have and never had monetary authority under Section 13(b), the FTC is not entitled to this money or any other assets of Defendants to satisfy what we now know to be an *ultra vires* monetary award.  As explained below, under *AMG*, this monetary remedy is unauthorized as a matter of law.  As a consequence, and under principles of judicial retroactivity, equity and controlling precedent governing a motion for relief from judgment under Rule 60(b), it should be stricken from the Judgment and given no further legal effect.

IV.   **THE *AMG* DECISION AND ITS BEFORE AND AFTER**

Section 13(b) states, in pertinent part, that whenever the Commission has reason to believe that someone:

> is violating, or is about to violate, any provision of
> law enforced by the Federal Trade Commission, and
> that the enjoining thereof…would be in the interest of
> the public—the Commission…may bring suit in a district
> court of the United States to enjoin any such act or practice

10

..[and] Upon a proper showing [obtain ] a temporary restraining order or a preliminary injunction…[and] That in proper cases the Commission may seek, and…the court may issue, a permanent injunction.

It expressly authorizes only injunctive relief and makes no mention of monetary relief.  Notwithstanding, shortly following its enactment in 1973, the FTC persuaded courts, eventually including all circuits that considered the issue, that they had implied equitable authority to "read into" Section 13(b) equitable monetary relief ancillary to the grant of injunctive relief. *See, e.g., FTC* v. *H. N. Singer, Inc.*, 668 F. 2d 1107, 1113 (9th Cir 1982).  This was the settled state of the law until the decision in *FTC v. Credit Bureau Center*, 284 F. Supp 3d (N.D. IL 2018), *aff'd.*, 937 F.3d 764 773 (7th Cir. 2019) became the first one ever to hold, based on the text, structure and history of the FTC Act, that monetary relief was ***not*** implied in or otherwise authorized by Section 13(b).  In *FTC v. AMG Capital, LLC*, 910 F. 3d 417 (9th Cir. 2018), the Ninth Circuit the year before had affirmed a district court's monetary award based on the long-standing traditional but erroneous view that monetary relief was available under Section 13(b).  *Credit Bureau Center* therefore had created a circuit split, making the issue ripe for resolution by the Supreme Court.[4]

The precise "question presented" to the Supreme Court was "whether this statutory language [Section 13b)] authorizes the Commission to seek, and a court to award, equitable monetary relief such as restitution or disgorgement." *AMG v.*

---

[4]The defendant in *AMG* petitioned for certiorari on October 18, 2019 and the FTC followed with its petition in *Credit Bureau Center* on December 19, 2019, just a couple of weeks after the Transact Pro Defendants had signed their settlement with the FTC on December 2, 2021. (Doc. 142) The cases initially were consolidated but later decoupled, 141 S. Ct. 810, after the Court had granted certiorari in *AMG*.

*FTC*, 141S. Ct. at 1344. On April 22, 2021, the Court, in a 9-0 ruling, unanimously "conclude[d[ that it does not," thus overturning a mistaken 40-year consensus among the lower courts that had held the opposite. *Id.* Employing the same textualist analysis that had led to the same conclusion in *Credit Bureau Center*, the Court stated that Section 13(b) refers only to injunctions and that an:

> 'injunction' is not the same as an award of equitable monetary relief….Taken as a whole, the provision focuses upon relief that is prospective, not retrospective….Further, the structure of the Act beyond §13(b) confirms this conclusion. Congress in [FTCA] §5(*l*) and §19 gave district courts the authority to impose limited monetary penalties and to award monetary relief in cases where the Commission has *issued cease and desist orders*…in administrative proceedings. Since in these provisions Congress explicitly provided for 'other and further equitable relief ' … and for the 'refund of money or return of property'…it likely did not intend for §13(b)'s more cabined 'permanent injunction' language to have similarly broad scope. More than that… §19 comes with certain important limitations that are absent in §13(b) ….In addition, Congress enacted these other, more limited, monetary relief provisions at the same time as, or a few years after, it enacted §13(b)….It is highly unlikely that Congress would have enacted provisions expressly authorizing *conditioned* and *limited* monetary relief if the Act, via §13(b), had already implicitly allowed the Commission to obtain that same monetary relief and more without satisfying those conditions and limitations.

*Id.* at 1347-49.  (Emphasis in original)

Effectively, then, *AMG* holds, *ab initio*, that the FTC has never had the power to obtain monetary relief under any Act of Congress, ever, without first employing administrative remedies.[5]

In the short time since the *AMG* decision, the FTC, in *Credit Bureau Center*,

---

[5] The sole exception is Section 5(m)(1)(a) of the FTCA, 15 U.S.C. §45(m)(1)(a), which authorizes monetary remedies in a direct federal court action for violation of FTC trade regulation rules.

following the 7th Circuit's mandate to the district court to implement the ruling of *AMG*, has filed a motion to modify the judgment to award monetary relief under statutory provisions other than Section 13(b), including ROSCA, which was also a count in the complaint there, No. 17-cv-194 (N.D. IL, May 6, 2021) (Doc 275). While the FAC in the instant case contains a ROSCA claim, it is alleged only against the Apex Defendants, and not the Transact Pro Defendants. (Doc. 73, Count VIII)  In *AMG*, the Ninth Circuit has issued its mandate to the district court regarding its order reversing the now-repudiated monetary judgment, No. 2:12-cv-005346 (D. NV, June 16, 2021). (Doc. 1322)

As the FTC in *Credit Bureau Center*, the Transact Pro Defendants are seeking, albeit under a different procedural rule (60(b) versus 54(c) and 59(e)), and under the Court's express retention of jurisdiction "for purposes of…modification…of this Order", vacation of its monetary judgment on the same core basis: a major, indeed, fundamental, change in controlling law that is directly and closely tied to this earlier judgment.

## V.    DECISIONAL LAW IS PRESUMPTIVELY RETROACTIVE.

On the premise that "selective application of new rules violates the principle of treating similarly situated parties the same," and that courts, unlike legislatures, only "find" the law as it has always existed and do not make it, it is well-established in modern jurisprudence that "a rule of federal law, once announced and applied ... must be given full retroactive effect by all courts adjudicating federal law," in civil as well as criminal cases. *Harper v. Va. Dep't of Taxation,* 509 U.S. 86, 96 (1993), in accord with *Griffith* v. *Kentucky,* 479 U. S. 314 (1987), and *James B. Beam Distilling Co. v. Georgia,* 501 U. S. 529 (1991).[6] While

---

[6] In announcing this rule of presumptive retroactivity, the Supreme Court "became unwilling to accept the inequity of making the applicability of a rule turn solely on

this rule of presumptive retroactivity is limited to other cases on direct review, *Harper*, 509 U.S. at 97, the point at which a "degree of finality that the rights of the parties should be considered frozen"....should be [only] when the transaction is beyond challenge either because the statute of limitations has run or the rights of the parties have been fixed by litigation and have become res judicata." *United States v. Estate of Donnelly*, 397 U.S. 286, 296 (1970) (Harlan, J., concurring). *See also Beam Distilling Co. v. Georgia*, 501 U.S. at 541 (1991).

      The rights of the parties here have become neither.  The case settled before trial and verdict, with no res judicata effect on any issue, including the question of monetary authority under Section 13(b), and the Court expressly retained jurisdiction over the Judgment, including its modification.  Defendants should not be treated differently from the defendants in *AMG*, which announced a rule of federal law declaring that the monetary judgment entered herein lacked any legal authority, simply because the *AMG* defendants had the resources to litigate all the way to the Supreme Court and just "happened to get their first."  As discussed in the next section, equity demands that the decision in *AMG* be applied retroactively to vacate the monetary judgment here in order for the similarly-situated Trans Pro Defendants, whose Judgment was entered only 15 months before the Supreme Court's decision in *AMG*, be treated similarly.

## VI.   RULE 60(b) PROVIDES MULTIPLE EQUITABLE PATHWAYS FOR VACATING THE MONETARY JUDGMENT

      Defendants move under FRCP 60(b)(4)-(6) for relief from the monetary portion of the Judgment.  In pertinent part, these provisions mandate relief when:

which litigant happened to reach the Court first." Kay, Richard, "Retroactivity and Prospectivity of Judgments in American Law" (2014). Faculty Articles and Papers. 287. https://opencommons.uconn.edu/law_papers/287, *citing* Bradley Scott Shannon, "The Retroactive and Prospective Application of Judicial Decisions," 26 HARV. J. L. & PUB. POL'Y 811, 866 (2003).

14

- ■ the judgment is void, Rule 60(b)(4);
- ■ applying the judgment prospectively is no longer equitable, Rule 60(b)(5); or
- ■ any other reason justifies relief, Rule 60(b)(6).

Unlike subparts (1)-(3) of 60(b), there is no specific time limit on a motion brought under (4)-(6), only a requirement that it be made within a "reasonable time." "The flexibility embedded in Rule 60(b)(6)'s timing requirement preserves its purpose as a 'grand reservoir of equitable power,' available as a vehicle for 'vacat[ing] judgments whenever such action is appropriate to accomplish justice.'" *Bynoe v. Baca*, 966 F. 3d 972, 980 (9th Cir. 2020), quoting *Hall v. Haws*, 861 F.3d 977, 987 (9th Cir. 2017). "When a Rule 60(b)(6) motion is premised on a change in law, courts measure timeliness 'as of the point in time when the moving party has grounds to make [a Rule 60(b)] motion, regardless of the time that has elapsed since the entry of judgment'....[and] consider the party's ability to learn earlier of the grounds relied upon, the reason for the delay, the parties' interests in the finality of the judgment, and any prejudice caused to parties by the delay. *Id.* (citations omitted) (less than 7 months from change in law not unreasonable). *See also*, *Darrin v. Bank of Am, N.A.*, 2014 U.S. Dist. LEXIS 66461**9-10 (E.D. CA 2014) (10 months not unreasonable).

Defendants bring this motion only two and a half months after the Supreme Court ruled in *AMG*, which was the absolute earliest it could have been filed. Defendants needed much of that time to retain new counsel[7], be advised by counsel on the meaning and implications of the decision, receive an analysis from counsel of the grounds for a motion to vacate their monetary judgment pursuant to *AMG*,

---

[7] The firm that handled the underlying case was no longer suitable as the lead lawyer there for Defendants had since left to become a judge.

and await closing of the sale of Mr. Moskvin's Florida property, which occurred at the end of May, in order to be able to pay for a motion.  Upon those funds becoming available within the first half or so of June, and having been advised by counsel that grounds for a motion existed, Defendants instructed counsel to prepare the motion and to file it as soon as it was finished, which was done.  Moskvins Decl. ¶13. In the circumstances, Defendants have proceeded diligently, within a reasonable time, without any prejudice to the plaintiff, to seek the requested relief under Rule 60(b)(4)-(6).

Rule 60(b) affords relief from consent decrees, including modification of their terms, upon a showing by the movant of a significant change in facts or law warranting revision of the decree and that the proposed modification was suitably tailored to the changed circumstances. *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 393 (1992). The FTC will no doubt argue that despite the eligibility for modification of consent decrees under (60)(b) where a change in law so warrants, the terms of the settlement here cannot be altered because the Judgment provides that "Settling Defendants and the Commission waive all rights to appeal or otherwise challenge or contest the validity of this Order." (Doc. 142, Findings, No. 5 at 2).[8]  This clause is in direct conflict with the Court's express retention of jurisdiction for purposes of "modification" of the Judgment. *Id.*, Section XIV. Except where a court may have ongoing supervisory administration of an order requiring or permitting it to consider the need for modification of the order's prospective injunctive terms *sua sponte*, the court cannot act on its own but requires a motion from the party seeking modification.  Such is the case here, where there is no ongoing supervisory role for the Court over the Judgment's injunctive

---

[8] This is a standard clause in FTC consent orders which a defendant must agree to in order to settle.  Defendants effectively had no choice but to accede to this clause in order to resolve the case without expensive and time-consuming litigation.

provisions.  But if the purported waiver clause precludes a motion to modify based on the invalidity of the Judgment or any portion of it, then the retention of jurisdiction clause is meaningless, as the Court is thus rendered powerless to exercise that jurisdiction or even its inherent equitable authority to modify a consent decree to ensure that it remains equitable after a significant change in law or circumstances.

To the extent the waiver clause can be given any operative effect consistent with the retention of jurisdiction clause, it should be construed to apply only to challenges to the validity of the Judgment under the state of the law that existed at the *time of entry* of the Judgment, and not to bar challenges based on an intervening change in law, especially one, such as here, that renders the monetary portion of the Judgment legally baseless.  Such a bar, based on an adhesive term of settlement that the FTC forces on a defendant as a ***condition*** of settlement, would effectively block Defendants from coming to this Court to seek justice in this matter under ***any*** circumstances.[9]  That cannot be right.[10]

## A.    The Monetary Judgment is Void for Lack of Jurisdiction.

For purposes of Rule 60(b)(4), a judgment can be declared void either because of a lack of jurisdiction or denial of due process. *United Student Aid Fund Inc. v Espinosa*, 559 U.S. 260, 271 (2010). The monetary judgment is void because the Court, based on the rule of law declared in *AMG*, lacked jurisdiction under Section 13(b) of the FTCA to order equitable monetary relief against Defendants.

---

[9] By analogy to contract law, the waiver also should not be enforced because it was agreed to by Defendants by mistake, without consideration; had they known then that the monetary judgment was or could be illegal, they certainly would not have agreed to it, and certainly not to a waiver of any right to challenge it.

[10] The FTC's agreement to the waiver renders it no more even-handed or less unfair to Defendants.  It is virtually impossible to imagine a scenario in which the FTC would have reason to challenge the validity of the Judgment.

1    The "Jurisdiction and Venue" section of the FAC alleged that "This Court

2    has subject matter jurisdiction pursuant to …15 U.S.C. §§…53(b)…." (Section

3    13(b) of the FTCA) (Doc 73), and the Judgment states that the FTC filed the FAC

4    pursuant to Section 13(b). (Doc 142).  The FTC thus admits that Section 13(b) is

5    jurisdictional in nature.

6    The problem for the FTC, however, is that under the reasoning of *AMG*, the

7    FTC lacked jurisdiction to impose equitable monetary relief on Defendants pursuant

8    to Section 13(b). Construing the provision of the FTCA upon which this Court's

9    jurisdiction was expressly founded, the *AMG* opinion is one that considers both the

10   FTC's power to sue for, *and* the district court's power to adjudicate the issue of, an

11   award of monetary relief under the provision, and "conclude[s]" that both are

12   lacking. *AMG v. FTC*, 141 S. Ct. at 1344. As a result, the *AMG* opinion leaves no

13   doubt that Congress did not intend Section 13(b) to create this power, which means

14   it does not exist and never has existed. By definition, this means the Court lacked

15   subject matter jurisdiction to do so.  *Steel Co. v. Citizens for a Better Environment*,

16   523 U.S. 83, 89 (1998) (subject-matter jurisdiction is "the courts' statutory or

17   constitutional power to adjudicate the case").

18

19   A void judgment is a legal nullity, one so affected by a fundamental infirmity

20   that the infirmity may be raised even after the judgment becomes final." *United*

21   *Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010). "'[B]efore a

22   judgment may be deemed void within the meaning of the rule, it must be

23   determined that the rendering court was powerless to enter it.'" *Karsner v. Lothian*,

24   532 F.3d 876, 886 (D.C. Cir. 2008) (*quoting Combs v. Nick Garin Trucking,* 825

25   F.2d 437, 442 (D.C. Cir.1987)).  The Supreme Court so determined in *AMG*.

26   Here, the question of voidness has already been decided, in *AMG*. The

27   Supreme Court's opinion directly concerns the interpretation of Section 13(b), the

28

jurisdictional provision of the FTCA that the FTC alleged in the FAC empowered this Court to hear this case. It directly and expressly found that no congressional authorization ever existed for any suit under Section 13(b) other than one seeking prospective relief. It expressly held that the FTC was not "authorize[d] . . . to seek" monetary relief under this provision, and further that the statute does not authorize "a court to award" it either. The monetary provision of the Order is therefore the product of the FTC and the Court each doing acts they were powerless to do. But under the Constitution, only Congress can create federal district court jurisdiction, and define its boundaries, and the *AMG* opinion leaves no doubt that Congress did not intend Section 13(b) to confer jurisdiction on a district court to exercise this power. It therefore did not exist, then or now, and the monetary provision of the Judgment is void as a matter of law to that extent, for want of subject matter jurisdiction.  It must therefore be set aside or vacated.

## B. Prospective Application Of The Monetary Judgment Would Be Inequitable.

"Rule 60(b)(5)... provides a means by which a party can ask a court to modify or vacate a judgment or order if 'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest.'" *Horne v. Flores*, 557 U.S. 433, 447 (2009) (quoting *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. at 384); *see also Agnostini v. Felton*, 521 U.S. 203, 215 (1997) ("court errs when it refuses to modify an injunction or consent decree in light of such changes").

Here, the judgment was entered in equity, not at law, since jurisdiction was brought under Section 13(b) of the FTCA, which states: "the Commission…may bring suit in a district court of the United States to enjoin any such act or practice." As the Supreme Court found in *AMG*, "[t]he language and structure of § 13(b), taken as a whole, indicate that the words 'permanent injunction' have a limited

purpose – a purpose that does not extend to the grant of monetary relief." *AMG v. FTC*, 141 S. Ct. at 1348. The monetary relief provided under the Judgment therefore was expressly awarded (erroneously) under the Court's equitable injunctive powers, not legal powers. To correct this error, the Court must utilize its equitable powers to vacate the monetary portion of the Judgment for being in excess of the Court's jurisdiction and violative of Defendants' rights to equal treatment under the law, which would turn the judgment into an instrument of wrong. *See Plyler v. Moore*, 100 F.3d 365, 371 (4th Cir. 1996) ("judgment providing for injunctive relief remains…subject to…changes in the law").

The FTC may argue that money judgments are not challengeable under Rule 60(b)(5) based on a change in law. However, the FTC was not awarded money "damages", but only disgorgement of funds. As shown, however, the Court was never authorized to order that remedy. Further, as discussed in Section III, *supra*, there has been no actual disgorgement. The illegal monetary judgment remains completely ***unexecuted*** and thus prospective. Even though 60(b)(5) typically is invoked in the context of injunctions to prevent inequitable prospective application of their terms engendered by a subsequent change in law, it also has been applied to prevent the inequitable enforcement of a judgment that has not been paid. *Bros, Inc. v. W.E. Grace Mfg. Co.*, 320 F.2d 594, 610 (5th Cir. 1963) ('While this award of damages sounds in the past, rather than the future, no judgment has yet been paid, and in practical effect we are dealing with the prospective application of the judgment, not the unscrambling of the past. Relief may be available for this. Cf. *F.R.Civ.P. 60(b)(5)*; *Restatement, Judgments § 125*; 3 Barron & Holtzoff, Federal Practice & Procedure § 1328.1. (Wright ed.1958))".

Accordingly, the Court must grant the Motion pursuant to 60(b)(5) on the basis of the change in law announced in *AMG*, which makes the prospective enforcement of the unexecuted monetary portion of the Judgment inequitable.

## C.     Defendants Meet The "Extraordinary Circumstances" Test for Relief From the Monetary Judgment Under Rule 60(b)(6).

Rule 60(b)(6) provides that a District Court 'may relieve a party or its legal representative form a final judgment, order, or proceeding' for 'any … reason that justifies relief.'  The vast scope of judicial discretion to do justice implied by this provision has been described as "a grand reservoir of equitable power, " *Radack v. Norwegian Am. Line Agency, Inc.*, 318 F.2d 538, 542 (2d. Cir. 1963), the exercise of which may be justified by an "intervening change of controlling law." *Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 56 (2d Cir. 2004); *see also In re Terrorist Attacks on September 11, 2001*, 741 F.3d 353, 356 (2d Cir. 2013) ("It is a grand reservoir of equitable power to do justice in a particular case," quoting *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012)). This clause "gives the district court power to vacate judgments 'whenever such action is appropriate to accomplish justice.'" *Henson v. Fidelity Nat'l Fin. Inc.*, 943 F.3d 434, 443 (2019), citing *United States v. Sparks,* 685 F.2d 1128, 1130 (9th Cir. 1982) (quoting *Klapprott v. United States,* 335 U.S. 601, 615 (1949). "[C]lause (6) should be liberally applied to situations not covered by the preceding five clauses so that, giving due regard to the sound interest underlying the finality of judgments, the district court, nevertheless, has power to grant relief from a judgment whenever, under all the surrounding circumstances, such action is appropriate in the furtherance of justice" *Id.* (citations omitted)

It is an "established doctrine that 'the interest in finality of litigation must yield where the parties' interests of justice would make unfair the strict application of our rules.'" *Gondeck v. Pan Am. World Airways, Inc.*, 382 U.S. 25, 26-27 (1965), quoting *United States v. Ohio Power Co.*, 353 U.S. 98, 99 (1957).  A circuit split is sufficient to set aside a judgment under Rule 60(b)(6) if "enforcement of the judgment would work an injustice." *Batts v. Tow-Motor Forklift Co.*, 66 F.3d 743,

21

749 (1995); *see also Adams v. Merrill Lynch, Pierce, Fenner & Smith*, 888 F.2d 696, 702 (10th Cir. 1989) ("a change in relevant case law by the United States Supreme Court warrants relief under Fed. R. Civ. P.60(b)(6)"); *Franklin v. Kramer*, No. CV 06-02774-CAS (RNB), 2013 WL 12441930 at *5 (C.D. Cal. 2013) (retroactive change in case law by the Supreme Court constitutes extraordinary circumstance under Rule 60(b)(6)).

In the Ninth Circuit, the liberal exercise of this Court's "grand reservoir of equitable power to do justice" in this matter under 60(b)(6) is guided by the "*Phelps* factors," which enable a court to find that the requisite "extraordinary circumstances" exist to warrant relief from a judgment based on a change in law notwithstanding finality interests. *Henson v. Fidelity Nat'l Fin. Inc.*, 943 F. 3d 434, 445-6; *Phelps v. Alameida*, 569 F.3d 1120, 1133 (9th Cir. 2009). These factors are: (1) the nature of the change in law, which requires a court to "weigh whether the specific nature of the change in the law in the case before it makes granting relief more or less justified under all of the circumstances," *Henson, supra,*, 943 F.3d at 446-47; (2) the movant's "exercise of diligence in pursuing his claim for relief," *Id.* at 449; (3) whether granting relief "would upset 'the parties' reliance interest in the finality of the case," *Id.* at 450; (4) "the 'delay between the finality of the judgment and the motion for Rule 60(b)(6) relief'," *Id.* at 451-52; (5) "the closeness of the relationship between the decision resulting in the original judgment and subsequent decision that represents a change in the law," *Id.* at 452; and (6) so-called "additional considerations" regarding the application of the purported change in law, *Id.* at 445, 453.[11] These factors are "not meant to 'impose a rigid or exhaustive checklist" because "'Rule 60(b)(6) is a grand reservoir of equitable power,' and it

---

[11] The sixth *Phelps* factor is "comity," but only in the context of *habeas* petitions. In civil cases like this one, this factor is irrelevant and should not be considered. *Henson*, 943 F.3d at 453.

affords courts the discretion and power 'to vacate judgments whenever such action is appropriate to accomplish justice.'" *Phelps v. Alameida*, 569 F.3d at 1135. Applying these factors demonstrates overwhelmingly that Defendants are entitled to relief.

           1.    <u>The Change in the Law</u>

    *AMG* overturned 40 years of settled, but erroneous, precedent.  The Supreme Court's decision amounted to an earthquake in FTC jurisprudence, sweeping away in one fell swoop its chief and most effective enforcement weapon: the power to demand and obtain money from defendants in a direct federal court action.  In analyzing the nature of the change in law in *Henson*, and holding that the district court had abused its discretion in denying plaintiffs' 60(b)(6) motion, the Ninth Circuit stated that the fact that the prior law there had been settled "cut in favor of relief because it makes Plaintiffs' reliance on that law more reasonable." *Henson* at 446.

    Similarly, Defendants' reliance on the then settled power of the FTC to seek, and a court to award, monetary relief under Section 13(b), in deciding to settle this action, was also reasonable.  Had they had the financial ability to fight the FTC in court, and lost, they understood that the Court had, and at the FTC's request almost certainly would have exercised, the power to order them to pay a judgment equal to Transact Pro's gross revenues from processing sales for the Apex Defendants. Understanding this, and lacking the means to defend, it made eminent sense for them to surrender to the FTC's demand for money as a condition of settlement.

    Like the plaintiffs in *Henson*, Defendants here had no reason to expect that the settled law on Section 13(b) would become "unsettled," or even overturned, when they decided to settle, which could have made their reliance on that law less reasonable. While the Judgment became final on January 15, 2021, Defendants actually signed the proposed order on December 2, 2019.  At that time, and

completely unknown to Mr. Moskvins, AMG had filed a petition for certiorari. Mr. Moskvins remained unaware of that development through the date of entry of the Judgment, and the AMG petition was not granted until July 2020, seven months after the settlement became final. Moskvins Decl., ¶ 12. Without timely knowledge of the filing or grant of the certiorari petition, Defendants were in effectively the same position as the plaintiffs in *Henson*, where no petition for certiorari had been filed at the time of the earlier judgment that would produce the change in law there.

In contrast, the FTC, as a party in *AMG* and *Credit Bureau Center*, and with a better understanding than not only Defendants but anyone of the prospects and ramifications of an adverse decision by the Supreme Court in either of those cases, obviously was aware at the time of the settlement with Defendants of the potential change in law that could come from a grant of the pending petitions for certiorari. It would have had to be blind not to foresee that its Section 13(b) monetary authority would be in serious jeopardy in the hands of a Supreme Court with a "textualist" philosophy.  Under the analysis of this factor in *Henson*, therefore, the FTC's reliance on Section 13(b) law as it was at the time of the settlement was not reasonable, or certainly not as reasonable as Defendants'.  It could not have been "blindsided by the change in law" and could have avoided its prejudicial effect, as it had the ability to negotiate a no money settlement with Defendants. *Id.* at 447.  The "predicament they face [this 60(b)(6) motion to do justice] is the result of their knowingly taking a calculated risk for which they should be held responsible." *Id.*

This *Phelps* factor strongly favors Defendants.

2.     Defendants' Diligence in Pursuing Relief

As noted, Defendants were unaware of the percolating change in the law on Section 13(b) during their case, including its settlement phase. Mr. Moskvins is a non-lawyer and a foreigner, and after losing the motion to dismiss and deciding he had little choice but to settle, had no reason to follow the legal journey of Section

13(b).  After settling, he concentrated on making the changes in his business processes required by the injunctive terms of the Order and then moving on with his life and livelihood.

He was as surprised as anyone to hear, therefore, of the Supreme Court's decision in *AMG* in late April.  Naturally wondering what it might mean for him and his business, especially since the monetary judgment remained unpaid and the FTC had not made any concerted effort to enforce it even after the Supreme Court granted certiorari in *AMG* in July of last year (or even after it expressed considerable skepticism about the FTC's Section 13(b) monetary authority at the oral argument in January, 2021), he quickly consulted and retained counsel, sought and received detailed advice on the meaning of *AMG* for his unpaid monetary judgment, waited until he had the funds to pay for a motion after receiving legal advice that relief was justified, and authorized this motion, which was filed only a little more than two months after he first became aware of the change in law.

Defendants moved with dispatch to bring this Motion.  This factor overwhelmingly favors them as well.

3.   Reliance Interest In Finality

Explaining its rejection of the trial court's finding for defendant on this factor as well, the Ninth Circuit in *Henson* said the court made the mistake of considering only the defendant's "abstract interest in finality, but not, as *Phelps* instructed, whether Fidelity had any reliance interest in the finality of the judgment." Continuing, it stated that:

> In *Phelps*, we explained that courts should consider
> whether "the final judgment being challenged has
> caused one or more of the parties to change his legal
> position in reliance on that judgment" such that granting
> the motion for relief would undo the past, executed
> effects of the judgment. *Phelps*, 569 F, 3d. at 1137-38
> (citation omitted). For example, a party might have a

reliance interest in the finality of a judgment "when a judgment conveys land from one party to another and the prevailing party 'enter[s] upon the land and install[s] pipes and appurtenances....Here, however, there is no evidence that Fidelity "has relied in such a fashion on the finality of the district court's dismissal." *Id. at 1138.* As in *Phelps*, "[t]here are no 'past effects" of the judgment that would be disturbed if the case were reopened for consideration of the merits . . . . Instead, the parties would simply pick up where they left off." *Id.* Thus, as in *Phelps*, this factor should "weigh[] heavily in [Plaintiffs'] favor."

*Id*. at 450.

For the ***exact same reason***, this factor should decisively favor Defendants as well. Granting their Motion would not "undo the past, executed effects" of the monetary judgment, because, as shown, that judgment remains entirely in the present and unexecuted. Even after certiorari was granted in *AMG* – an unmistakable warning signal to the FTC that its Section 13(b) monetary authority was very possibly on life support – the FTC's ***non-enforcement*** of the judgment continued, and does so to this very day. The posture of this unexecuted judgment is thus no different than it would be if it were entered today, except that it could not be entered because it would be unlawful under the holding in *AMG*. Whatever reliance interest in finality of the monetary judgment the FTC had at the time of its entry – and even then it was questionable given its own order language preserving the Court's jurisdiction to modify it[12]– it forfeited by its own inaction since that time, in over a year and a half, to execute the judgment and receive even one penny from Defendants. To repeat, the "predicament they face is the result of their knowingly taking a calculated risk for which they should be held responsible." *Id.* at 447.

_____

[12] Similarly, the plaintiffs in *Henson* argued the defendant "had no reliance interest in the finality of the stipulation-based judgment because the stipulation explicitly contemplated the potential for subsequent litigation." *Id*. at 450.

4.    <u>Delay Between the Judgment and the Rule 60(b) Motion</u>

There was no avoidable or inexcusable delay between the Judgment and this Motion.  Until now, following *AMG*, there was no legal basis for this Motion. Defendants moved diligently to bring this Motion after the decision in *AMG*.  *See* Sections VI(C)(2), *supra*.

5.    <u>Relationship Between the Original Judgment and Change in the Law</u>

As stated in *Henson*, quoting *Phelps*, "'[this] factor directs courts to examine closely the original and intervening decisions at issue in a particular motion for [*Rule 60(b)*] relief predicated on an intervening change in the law: if there is "a close connection between the two cases, the court [will be more likely to] f[i]nd the circumstances sufficiently extraordinary to justify disturbing the finality of the [original] judgment." 569 F.3d at 1139. The Ninth Circuit agreed with the lower court that there was a "close connection between the original judgment and *Microsoft*, because the voluntary dismissal was explicitly predicated on the law that *Microsoft* changed, and that this factor therefore weighs heavily in favor of Rule 60(b)(6) relief." *Id*. at 452.

Again, and for the exact same reason, this factor heavily favors Defendants. Both the FAC seeking monetary relief and the monetary judgment are "explicitly predicated on the law that [*AMG*] changed." The FAC pled no basis for monetary relief against Defendants other than Section 13(b).[13] The connection between the original judgment and the change in law wrought by the Supreme Court could not be closer.  Defendants thus win here, too.

6.    <u>Additional Considerations</u>

---

[13] The ROSCA count in the FAC, which the FTC might argue would support a civil penalty claim, was pled only against the Apex Defendants and thus is not applicable to the Transact Pro Defendants.

The bedrock principle of American justice, that defendants in similar situations be treated similarly, is an additional consideration weighing heavily in Defendants' favor. Here, enforcement of the judgment would work a significant injustice since the defendants in *AMG* (and *Credit Bureau Center*) were sued under the same statute as Defendants, Section 13(b), not all that long before Defendants were sued, yet have now been awarded relief from their monetary judgments. Indeed, the injustice is made even worse by the fact that the defendants in those cases were found liable for engaging in serious consumer deception and even fraud while Defendants here were simply a vendor to the main actors, were not charged with deceiving consumers like the Apex Defendants were, and settled without any finding or admission of wrongdoing. Enforcing an illegal judgment against Defendants here thus would be treating two sets of defendants in similar circumstances differently.

In Henson, the Ninth Circuit said that "[W]eighing all the *Phelps* factors, correctly analyzed, it is clear that all the relevant circumstances in this case heavily tip the scale in favor of granting Rule 60(b)(6) relief." *Id.* at 455. Defendants respectfully submit that the Court should reach the same conclusion here.

**VII. CONCLUSION**

For the foregoing reasons, the Transact Pro Defendants respectfully request that the Court grant the Motion to vacate and/or set aside the monetary portion of the Judgment.

DATED: July 8, 2021             LAW OFFICES OF WILLIAM I. ROTHBARD

                                BY:  */s/ William I. Rothbard*
                                      WILLIAM I. ROTHBARD

                                Attorney for Defendants SIA Transact Pro and
                                Mark Moskvins

28

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 9, 2021, I electronically filed the foregoing Defendants SIA Transact Pro's and Mark Moskvin's Notice of Motion and Motion to Modify, Vacate or Set Aside Monetary Portion of Stipulated Permanent Injunction and supporting Points and Authorities using the CM/ECF system, and also caused a copy of the foregoing to be served via electronic mail on all parties and counsel.  All parties' and/or their counsel are or will be registered CM/ECF users and will be served by the CM/ECF system.

/s/ William I. Rothbard
William I. Rothbard, Esq