**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES -- GENERAL**

| | |
|---|---|
| Case No.   **CV 18-9573-JFW(JPRx)** | Date: September 3, 2021 |

Title:     Federal Trade Commission -v- Apex Capital Group, et al.

**PRESENT:**
      **HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Shannon Reilly | None Present |
| Courtroom Deputy | Court Reporter |

| **ATTORNEYS PRESENT FOR PLAINTIFFS:** | **ATTORNEYS PRESENT FOR DEFENDANTS:** |
|---|---|
| None | None |

**PROCEEDINGS (IN CHAMBERS):**   ORDER DENYING DEFENDANTS SIA TRANSACT PRO'S AND MARK MOSKVINS'S MOTION TO MODIFY, VACATE, OR SET ASIDE MONETARY PORTION OF STIPULATED PERMANENT INJUNCTION AND MONETARY JUDGMENT [filed 7/9/21; Docket No. 182]

On July 9, 2021, Defendants Sia Transact Pro ("Sia") and Mark Moskvins ("Moskvins") (collectively, the "Transact Pro Defendants") filed a Motion to Modify, Vacate, or Set Aside Monetary Portion of Stipulated Permanent Injunction and Monetary Judgment ("Motion"). On August 9, 2021, Plaintiff the Federal Trade Commission (the "FTC") filed its Opposition. On August 16, 2021, Defendants filed a Reply. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument. The matter was, therefore, removed from the Court's August 30, 2021 hearing calendar and the parties were given advance notice. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.    Factual and Procedural Background**

On November 14, 2018, the FTC filed a Complaint against Apex Capital Group, LLC ("Apex"), together with its two United States based principals, Phillip Peikos ("Peikos") and David Barnett ("Barnett"), Omni Group Ltd. ("Omni"), and ten United Kingdom registered shell companies[1] (collectively, the "Apex Defendants"). Docket No. 1. On May 30, 2019, the FTC filed a

---

[1] The ten United Kingdom registered shell companies include Capstone Capital Solutions Limited, Clik Trix Limited, Empire Partners Limited, Interzoom Capital Limited, Lead Blast Limited, Mountain Venture Solutions Limited, Nutra Global Limited, Rendezvous It Limited, Sky Blue Media Limited, and Tactic Solutions Limited.

First Amended Complaint, which added the Transact Pro Defendants. Docket No. 73. In the First Amended Complaint, the FTC alleged two claims against the Transact Pro Defendants: (1) credit card laundering in violation of Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTC Act") (Count VI); and (2) chargeback manipulation in violation of Section 5 of the FTC Act (Count VII).[2] The FTC alleged that the Apex Defendants engaged in a scheme to offer phony "free trials" of personal care products and dietary supplements in order to obtain consumers' credit and debit card information and then placed recurring charges on the cards without the consumers' authorization. The FTC also alleged that the Apex Defendants and Transact Pro Defendants worked together to perpetuate this scheme through credit card laundering and chargeback manipulation. The FTC sought, amongst other remedies, equitable monetary relief under Section 13(b) of the FTC Act.

On January 15, 2020, the Court entered a Stipulated Order for Permanent Injunction and Monetary Judgment ("Stipulated Judgment") pursuant to a settlement between the FTC and the Transact Pro Defendants. *See* Docket Nos. 141 and 142. In the Stipulated Judgment, the FTC and the Transact Pro Defendants agreed that the Transact Pro Defendants would pay $3.5 million "within ten (10) days." Stipulated Judgment, 20:9-12. In addition, the Transact Pro Defendants "waive[d] all rights to appeal or otherwise challenge or contest the validity of this Order." *Id.*, at 2:17-18.

On April 22, 2021, in an unrelated action, the Supreme Court unanimously held that Section 13(b) of the FTC Act does not authorize the FTC to seek, or a court to award, equitable monetary relief. *AMG v. Capital Management, LLC v. Federal Trade Commission*, 141 S.Ct. 1341, 1344 (2021).

## II.     Legal Standard

Federal Rule of Civil Procedure 60(b) provides for reconsideration of a final judgment or order where one or more of the following is shown: (1) "mistake, inadvertence, surprise or excusable neglect"; (2) "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)"; (3) "fraud . . . , misrepresentation, or misconduct by an opposing party"; (4) "the judgment is void"; (5) "the judgment has been satisfied, released, or discharged"; (6) "any other reason that justifies relief." Fed. R. Civ. P. 60(b).

In exercising its discretion in determining whether Rule 60(b) applies, courts should be mindful that there is a compelling interest in finality of judgments and final judgments should not be disturbed lightly. *See Matton Steamboat Co. v. Murphy*, 319 U.S. 412, 415 (1943) ("The purpose of statutes limiting the period for appeal is to set a definite point of time when litigation shall be at an end, unless within that time the prescribed application has been made; and if it has not, to advise prospective appellees that they are freed of the appellant's demands"); *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1144 (2d Cir. 1994) (Rule 60 "preserves a balance between serving

---

[2] On September 11, 2019, the Court entered a Stipulated Order for Permanent Injunction and Monetary Judgment as to the Apex Defendants pursuant to a settlement between the FTC and the Apex Defendants. *See* Docket Nos. 120 and 121.

the ends of justice and ensuring that litigation reached an end within a finite period of time"). Thus, "[r]econsideration for any of the reasons set forth in Rule 60(b) is an 'extraordinary remedy that works against the interest of finality and should be applied only in exceptional circumstances.'" *Audionics Sys., Inc. v. AAMP of Fla., Inc.*, 2015 WL 11201243, at *7 (C.D. Cal. Nov. 4, 2015) (citations omitted). "Motions for relief from judgment pursuant to Rule 60(b) are addressed to the sound discretion of the district court and will not be reversed absent an abuse of discretion." *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1257 (9th Cir. 2004).

### III.     Discussion

In light of the Supreme Court's holding in *AMG*, the Transact Pro Defendants now seek to set aside that portion of the Stipulated Judgment requiring the Transact Pro Defendants to pay $3.5 million in equitable monetary relief on the grounds that: (1) it is void for lack of jurisdiction pursuant to Rule 60(b)(4); (2) prospective enforcement of the equitable monetary relief portion of the Stipulated Judgment would be inequitable pursuant to Rule 60(b)(5); and (3) the profound change in law announced by the Supreme Court in *AMG* creates "extraordinary circumstances" necessitating relief pursuant to Rule 60(b)(6). The FTC argues that the Transact Pro Defendants' Motion is meritless, and that the Transact Pro Defendants settled despite knowing that the Supreme Court was reviewing the issue of whether Section 13(b) of the FTC Act authorized the FTC to seek equitable monetary relief.

#### A.     Rule 60(b)(4)

The Transact Pro Defendants argue that the Court should vacate the equitable monetary relief portion of the Stipulated Judgment pursuant to Rule 60(b)(4). Specifically, the Transact Pro Defendants argue that because Section 13(b) never permitted the FTC to recover monetary relief, that portion of the Stipulated Judgment is invalid because the Court lacked jurisdiction to enter it. The FTC argues that the Transact Pro Defendants waived their right to challenge the validity of the Stipulated Judgment. In addition, the FTC argues that specific provisions of the FTC Act are not the only source of the Court's jurisdiction over this action, and, as a result, a misinterpretation of those provisions cannot render the Stipulated Judgment void.

As the Supreme Court held in *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010), "[a] judgment is not void . . . simply because it is or may have been erroneous." "Instead, Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *Id.* at 271 (citations omitted). "Total want of jurisdiction must be distinguished from an error in the exercise of jurisdiction, and only rare instances of a clear usurpation of power will render a judgment void." *Id.* (quoting *United States v. Boch Oldsmobile, Inc.*, 909 F.2d 657, 661 (1st Cir. 1990)) (internal alterations and quotation marks omitted). "[T]he scope of what constitutes a void judgment is narrowly circumscribed, and judgments are deemed void only where the assertion of jurisdiction is truly unsupported." *Hoffmann v. Pulido*, 928 F.3d 1147, 1151 (9th Cir. 2019). For example, in *Hoffmann*, the Ninth Circuit denied the plaintiff relief under Rule 60(b)(4), holding that although the magistrate judge lacked statutory authority to dismiss his complaint, the dismissal was "[a]t worst, . . . an error regarding the contours of a magistrate judge's authority pursuant to 28 U.S.C. § 636," which "is not equivalent to acting with total want of jurisdiction and does not render the judgment a complete nullity." *Hoffman*, 928 F.3d

at 1151.  The Ninth Circuit held that because there was "plainly an 'arguable basis'" for the magistrate judge's assertion of jurisdiction – namely, that magistrate judges had routinely dismissed actions in similar situations prior to a recent Ninth Circuit decision prohibiting the practice – the judgment did not "fall into the narrowly circumscribed set of void judgments" under Rule 60(b)(4).  *Id*.  Similarly, in *United States v. Philip Morris USA Inc.*, 840 F.3d 844, 850 (D.C. Cir. 2016), the D.C. Circuit held that a court's authority to fashion relief under a particular statute is "fundamentally different from a court's subject matter jurisdiction over a case and from its personal jurisdiction over the parties, both of which concern the power to proceed with a case at all."  As a result, the D.C. Circuit concluded that "Rule 60(b)(4) does not permit relief where a court has exceeded its remedial authority" because "[s]uch errors are simply not the type of fundamental defects the [Supreme] Court had in mind in *Espinosa*."  *Id*. at 276 (*citing Boch Oldsmobile, Inc.*, 909 F.2d at 662 ("Consent decrees that run afoul of the applicable statutes lead to an erroneous judgment, not to a void one")).

In this case, the Court concludes that the portion of the Stipulated Judgment granting the FTC equitable monetary relief was erroneous because it was not authorized by Section 13(b).  However, the Court also concludes that portion of the Stipulated Judgment was not void within the meaning of Rule 60(b)(4) because, as in *Hoffman*, there was plainly an "arguable basis" for the Court's exercise of jurisdiction in issuing the Stipulated Judgment, namely that the Ninth Circuit at the time construed Section 13(b) as authorizing courts to fashion equitable monetary relief.  *See, e.g., Federal Trade Commission v. Pantron I Corp.*, 33 F.3d 1088, 1102 (9th Cir. 1994).  In addition, the Court agrees with the reasoning of the D.C. Circuit in *Philip Morris* that Rule 60(b)(4) does not permit relief where a court has merely exceeded its remedial authority.  Otherwise, "[c]omplex remedial schemes in voting rights, securities fraud, affirmative action, prison conditions, and scores of other cases could all be challenged [under Rule 60(b)(4)] on the ground that the remedies imposed were, in one litigant's view, unauthorized by the statute at issue."  *Philip Morris*, 840 F.3d at 851.  Such a broad reading of Rule 60(b)(4) would contravene the Supreme Court's warning in *Espinosa* that the list of defects rendering a judgment void must be "'exceedingly short,' lest 'Rule 60(b)(4)'s exception to finality swallow the rule.'"  *Id*. (*quoting Espinosa*, 559 U.S. at 270) (internal alterations omitted).

Accordingly, the Transact Pro Defendants are not entitled to relief under Rule 60(b)(4).

### B.     Rule 60(b)(5)

The Transact Pro Defendants argue that the Court should vacate the equitable monetary relief portion of the Stipulated Judgment because Rule 60(b)(5) permits a court to vacate a judgment when "applying it prospectively is no longer equitable."  Because the Transact Pro Defendants never paid the $3.5 million in equitable monetary relief, they argue that the equitable monetary relief portion of the Stipulated Judgment is prospective.  The FTC argues that the overwhelming weight of authority establishes that monetary judgments are not "prospective" within the meaning of Rule 60(b)(5).

Rule 60(b)(5) provides that a court may relieve a party from a final judgment where "the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable."  However, the portion of Rule 60(b)(5) that provides a court may relieve a party from final judgment where

"applying it prospectively is no longer equitable" only applies to prospective injunctive relief, and not the monetary judgment challenged by the Transact Pro Defendants. *See California by & though Becerra v. U.S. Environmental Protection Agency*, 978 F.3d 708, 713-17 (9th Cir. 2020) (discussing Rule 60(b)(5) as the standard for modifying an injunction "with prospective effect," in contrast to "judgments that offer a present remedy for a past wrong"). Indeed, a provision of an order only has "prospective application" under Rule 60(b)(5) if it is "executory" or involves "the supervision of changing conduct or conditions." *Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1138-39 (D.C. Cir. 1988) ("That a court's action has continuing consequences, however, does not necessarily mean that it has 'prospective application'"). Monetary judgments are not executory and do not require the supervision of changing conduct. *See, e.g., Cook v. Birmingham News*, 618 F.2d 1149, 1152 (5th Cir. 1980) (contrasting provisions "that have prospective effect . . . with those that offer a present remedy for a past wrong"); *United States v. Eyler*, 778 F. Supp. 1553, 1557 (M.D. Fla. 1991) (back pay award is "present" rather than "prospective" remedy). In addition, the fact that a monetary judgment has not yet been paid does not make it "prospective." *See, e.g., Stokors S.A. v. Morrison*, 147 F.3d 759, 762 (8th Cir. 1998) ("[W]hile the judgment against Morrison may be 'prospective' to the extent that he has failed to pay it in a timely manner, it is . . . not 'prospective' for purposes of Rule 60(b)(5)"); *see also* 12 *Federal Practice*, § 60.47[1][b] (2021) ("Even if the judgment debtor has not yet paid the judgment . . . it is not 'prospective,' since it is not executory and involves no judicial supervision of changing conduct or conditions"); *Flexiteek Americas, Inc. v. PlasTEAK, Inc.*, 2012 WL 5364263, *6 (S.D. Fla. Sept. 10, 2012) (concluding that judgment does not qualify as "prospective" under Rule 60(b)(5) even "where a money judgment is 'prospective' in the more general sense that it remains unpaid"), *modified on other grounds*, 2012 WL 5364247 (S.D. Fla. Oct. 31, 2012).

Accordingly, the Transact Pro Defendants are not entitled to relief under Rule 60(b)(5).

### C.     Rule 60(b)(6)

The Transact Pro Defendants argue that the Court should vacate the equitable monetary relief portion of the Stipulated Judgment pursuant to Rule 60(b)(6) because there was a "profound" change in the law announced by the Supreme Court in *AMG* and this "extraordinary circumstance . . . overrides any otherwise usual consideration of finality of interest." Motion, 5: 11-16. The Transact Pro Defendants also argue that it would be a "manifest injustice" if the FTC attempts to enforce the equitable monetary relief portion of the Stipulated Judgment. The FTC argue that free, calculated, and deliberate choices, such as the one the Transact Pro Defendants made in deciding to settle this action, can never form the basis for Rule 60(b)(6) relief.

Rule 60(b)(6) is a "catch-all" provision allowing for relief from a judgment or order for "any other reason that justifies relief." *Latshaw v. Trainer Wortham & Co., Inc.*, 452 F.3d 1097, 1102 (9th Cir. 2006). This rule is used to prevent "manifest injustice" where "extraordinary circumstances" are present. *Id.* However, when "a party makes a conscious and informed choice of litigation strategy, [that party] cannot seek extraordinary relief [under Rule 60(b)(6)] merely because his assessment of the consequences was incorrect." *In re Master Key Antitrust Litig.*, 76 F.R.D. 460, 464 (D. Conn. 1977), *aff'd*, 580 F.2d 1045 (2d Cir. 1978). For example, in *Ackermann v. United States*, 340 U.S. 193 (1950), the Supreme Court reviewed a motion to vacate filed by a party who declined to appeal, only to have a similarly situated co-party successfully appeal. *Id.* at 194-95. The Supreme Court declined to give the petitioner the benefit of an appeal he chose not

to take:

> His choice was a risk, but calculated and deliberate and such as follows a free choice.  Petitioner cannot be relieved of such a choice because hindsight seems to indicate to him that his decision not to appeal was probably wrong . . . There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from.

*Id.* at 198; *see also Schwartz v. United States*, 129 F.R.D. 117, 123 (D. Md. 1990) (refusing to vacate settlement under *Ackermann* where plaintiff chose "to forgo the risk of litigation and settle," reflecting an "exercise of free will"), *aff'd,* 976 F.2d 213 (4th Cir. 1992).  In addition, in *Master Key*, 76 F.R.D. at 462, the remote purchaser plaintiffs sued the manufacturer defendants pursuant to Section 4 of the Clayton Act.  After the parties settled, "the Supreme Court held [in an unrelated action] that remote purchasers have no cause of action against manufacturers pursuant to § 4 of the Clayton Act."  *Id.* (*citing Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977)).  However, the court denied the defendants' subsequent Rule 60(b) motion to set aside the settlement, and concluded that "[t]he holding in *Ackermann* is controlling here."  *Id.* at 464.

In this case, as in *Ackermann* and *Master Key*, the Transact Pro Defendants decided to settle this case and freely entered into the Stipulated Judgment, and, as a result, cannot be relieved of those decisions simply because those decisions now seem ill conceived.  Indeed, before deciding to settle, the Transact Pro Defendants were fully aware of the challenges to the FTC's authority to recover equitable monetary relief pursuant to Section 13(b).  Specifically, on August 21, 2019, while the FTC pursued its Section 13(b) case against the Transact Pro Defendants, the Seventh Circuit held in *Federal Trade Commission v. Credit Bureau Center, LLC*, 937 F.3d 764, 767 (7th Cir. 2019), "that section 13(b) does not authorize restitutionary relief."  The next day, Moskvins sent a copy of the *Credit Bureau* case to his attorneys, stating that "[a]ttached is [an] example of [a] recently won case that may be helpful in terms of [the] FTC['s] power to collect money."  In addition, Moskvins subsequently forwarded his attorneys an email with the subject line: "**BREAKING: FTC Loses Authority to Collect Damages?**"  Moskvins's email contained a link to a website that had posted an article entitled, "Seventh Circuit Drops Bomb on FTC," which stated "[m]ake no mistake.  The FTC's remedial authority is now in doubt."  The article also stated that "[t]he potential impact of this decision is significant and has potentially presented interesting opportunities for defendants facing FTC enforcement lawsuits."  One of the Transact Pro Defendants' attorneys responded to Moskvins and stated: "[g]reat case, Mark.  The Seventh Circuit's opinion creates a circuit split on monetary recovery, which will obviously be an important issue for us down the road."  Moreover, the Transact Pro Defendants and their attorneys relied on the Seventh Circuit decision in *Credit Bureau* during the parties' mediation and subsequent settlement discussions to negotiate a favorable settlement because of the risk that the FTC might lose its authority to seek equitable monetary relief.  Therefore, in light of the fact that the Transact Pro Defendants, and their attorneys, knew about the challenges to the FTC's authority to recover equitable monetary relief pursuant to Section 13(b) and, indeed, used those challenges to negotiated a more favorable settlement, the Transact Pro Defendants are not entitled to relief

under Rule 60(b)(6).[3]

In response, the Transact Pro Defendants argue that *Ackermann* and *Master Key* do not prevent this Court from applying the seven factor test set forth in *Phelps v. Alameida*, 569 F.3d 1120 (9th Cir. 2009), and applied in *Henson v. Fidelity National Financial, Inc.*, 943 F.3d 434 (9th Cir. 2019). Applying the *Phelps* factors, the Transact Pro Defendants argue that they are entitled to relief pursuant to Rule 60(b)(6). In *Phelps*, the Ninth Circuit considered six factors in determining whether relief under Rule 60(b)(6) was warranted: (1) "the nature of the intervening change in the law"; (2) the movant's "interest in pursuing relief"; (3) the parties' "reliance interest in the finality of the case"; (4) "the delay between the judgment and the Rule 60(b) motion"; (5) "the relationship between the original judgment and the change in the law"; and (6) "concerns of comity." *Phelps*, 569 F.3d at 1135-39. However, the Ninth Circuit cautioned that its discussion of the *Phelps* factors, which arose in the *habeas corpus* context, "was not meant to impose a rigid or exhaustive checklist, because Rule 60(b)(6) is a grand reservoir of equitable power, and it affords courts the discretion and power to vacate judgments whenever such action is appropriate to accomplish justice." *Id.* at 445 (*citing Phelps*, 569 F.3d at 1135) (internal quotation marks and alterations omitted). In addition, the Ninth Circuit held that, especially when "a district court is faced with applying [the *Phelps*] factors in an entirely new context, the court should assess how that different context might alter the calculus of the factors' application, and whether those factors adequately capture all of the relevant circumstances." *Id.* at 446. In other words, the Ninth Circuit requires courts to "consider all of the relevant circumstances surrounding the specific motion before the court in order to ensure that justice be done in light of all the facts." *Id.* at 440. Moreover, the Ninth Circuit cautioned that "a change in the controlling law can – but does not always – provide a sufficient basis for granting relief." *Id.* at 444 (holding that "[t]o assess a Rule 60(b)(6) motion predicated on an intervening change in the law, a district court must evaluate the circumstances surrounding the specific motion before the court" and that this "case-by-case inquiry requires the trial court to intensively balance numerous factors, including the competing policies of the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts") (*citing Phelps*, 569 F.3d at 1132-33) (internal quotation marks and alterations omitted).

In this case, even assuming that the *Phelps* factors apply (and it is not clear that they do), those factors weigh heavily against finding that the Transact Pro Defendants have established "extraordinary circumstances" necessitating relief under Rule 60(b)(6). With respect to the first factor regarding nature of the intervening change in law, although the Transact Pro Defendants argue that the Supreme Court overturned "settled" precedent in *AMG*, it is not clear that the

---

[3] Although Moskvins submitted a declaration with his Motion stating that he "was unaware of any legal challenges to the FTC's monetary authority" when he chose to settle, Moskvins submitted a supplemental declaration with his Reply acknowledging his previous declaration was misleading and not accurate, claiming that, at the time he signed his previous declaration, he "did not have a ready recollection of legal aspects of events occurring in the case two years ago." According to Moskvins, his review of the FTC's Opposition and accompanying evidence had suddenly "refreshe[d] [his] recollection" that he had been aware of the Seventh Circuit's holding in *Credit Bureau* and that his attorneys had discussed that case in the Transact Pro Defendants' mediation brief and at the mediation.

precedent was "settled" because a circuit split existed regarding the FTC's ability to seek equitable monetary relief pursuant to Section 13(b).  Indeed, Judge O'Scannlain stated in his concurrence in *FTC v. AMG Capital Management, LLC*, 910 F.3d 417. 429 (9th Cir. 2018), that the Ninth Circuit's decision to follow earlier precedent concluding that the FTC could recover equitable monetary relief pursuant to Section 13(b) was "unfortunate" and an "impermissible exercise of judicial creativity" that "contravenes the basic separation-of-powers principle that leaves to Congress the power to authorize (or to withhold) rights and remedies."  With respect to the second factor regarding pursuing relief and the third factor regarding the parties' reliance interest in the finality of the case, the Transact Pro Defendants were fully aware that a change in the law was possible, if not probable.  Despite this awareness, the Transact Pro Defendants made an informed decision to choose the certainty and finality of a comparatively favorable settlement, rather than to incur additional expenses and risk the possibility of a far greater monetary judgment if there was no change in the law.  The fourth factor regarding the delay between the judgment and the Rule 60(b) motion favors the Transact Pro Defendants because they filed their Rule 60(b) motion within a reasonable time after the Supreme Court's decision in *AMG*.  The fifth factor, which looks at the closeness of the relationship between the decision resulting in the original judgment and the subsequent decision that represents a change in the law, does not apply in this case because the original judgment was the result of a settlement.  Similarly, the sixth factor, the need for comity between the independently sovereign state and federal judiciaries, does not apply.

Accordingly, the Transact Pro Defendants are not entitled to relief under Rule 60(b)(6).

**IV.     Conclusion**

For all the foregoing reasons, Defendants' Motion is **DENIED**.

IT IS SO ORDERED.