**MCGUIREWOODS LLP**
DAVID C. POWELL (SBN 129781)
dpowell@mcguirewoods.com
ALICIA A. BAIARDO (SBN 254228)
abaiardo@mcguirewoods.com
Two Embarcadero Center, Suite 1300
San Francisco, CA 94111-3821
Telephone: 415.844.9944
Facsimile: 415.844.9922

**MCGUIREWOODS LLP**
KEVIN M. LALLY (SBN 226402)
klally@mcguirewoods.com
355 S. Grand Avenue, Suite 4200
Los Angeles, CA 90071
Telephone: 213.627.2268
Facsimile: 213.627.2579

Attorneys for Proposed Intervenors
Wells Fargo & Company and
Wells Fargo Bank N.A.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>APEX CAPITAL GROUP, LLC, *et al.*,<br><br>Defendants. | CASE NO. 18-cv-9573-JFW(JPRx)<br><br>Judge:Hon. John F. Walter<br>Ctrm: 7A<br><br>**PROPOSED INTERVENORS WELLS FARGO & COMPANY AND WELLS FARGO BANK N.A.'S NOTICE OF MOTION AND MOTION TO INTERVENE**<br><br>Date:  February 21, 2022<br>Time: 1:30 p.m.<br><br>Complaint Filed: November 11, 2018<br>Am. Compl. Filed: May 30, 2019 |

**TO THE HONORABLE COURT, PARTIES, AND COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on February 21, 2022, at 1:30 p.m. in

Courtroom 7A of the United States District Court for the Central District of

California, 350 West 1st Street, Los Angeles, California 90012, Proposed

Intervenors Wells Fargo & Company and Wells Fargo Bank, N.A. will, and hereby

do, seek an order granting them intervention in the above captioned matter as a matter of right, or alternatively, with permission of the Court, pursuant to Federal Rule of Civil Procedure 24(a)(2) or 24(b)(1) ("Motion").

This Motion is based upon this Notice of Motion and Motion to Intervene, the Memorandum of Points and Authorities, the Request for Judicial Notice, the pleadings and documents on file in this matter, any oral argument of counsel, and upon such other information as the Court may allow.

Pursuant to Rule 7.3, and as set forth in the separately filed Joint Statement of Meet and Confer, Wells Fargo and the parties met and conferred in advance of filing this motion.


DATED: January 18, 2022          Respectfully submitted,

                                 **MCGUIREWOODS LLP**


                                 */s/Alicia A. Baiardo*_____
                                 David C. Powell, Esq.
                                 Kevin M. Lally, Esq.
                                 Alicia A. Baiardo, Esq.

                                 *Counsel for Proposed Intervenors*
                                 *Wells Fargo & Company and Wells Fargo*
                                 *Bank, N.A.*

PROPOSED INTERVENORS WELLS FARGO & COMPANY AND WELLS FARGO BANK N.A.'S NOTICE OF MOTION AND MOTION TO INTERVENE

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................. 1

II.   FACTUAL AND PROCEDURAL BACKGROUND .................................... 2

    A.    FTC's Action Against Principal Defendants ............................. 2

        1.    Wells Fargo's Role as Third-Party Witness ................................. 4

        2.    Defendants Settle For More Than $100 Million ........................ 4

    B.    The Court Orders Allowing Suit Against Wells Fargo ........................ 5

        1.    Receiver's Litigation Against Wells Fargo ................................. 6

    C.    The Supreme Court Holds Section 13(b) Does Not Permit Recovery of Equitable Monetary Relief ..................................... 7

    D.    Wells Fargo Secures Material Under Seal Documents........................ 10

III.  ARGUMENT .................................................................................. 11

    A.    Wells Fargo Possesses Article III Standing.......................................... 11

    B.    Wells Fargo Is Entitled to Intervene as of Right ................................. 13

        1.    Wells Fargo's Motion is Timely.......................................... 14

            i.    Intervention at this Stage is Appropriate........................ 14

            ii.   Wells Fargo's Proposed Intervention Will Not Unduly Delay or Prejudice the Parties ........................... 16

            iii.  Wells Fargo Has Not Delayed in Seeking Intervention.................................................................. 17

        2.    Wells Fargo has a Significant Protectable Interest.................... 19

        3.    Failure To Allow Intervention Will Impair Wells Fargo's Ability to Protect Its Interest ..........................................20

        4.    No Other Party Can Adequately Protect Wells Fargo's Interests..........................................................................21

    C.    Wells Fargo Also Satisfies All of the Requirements of Permissive Intervention.........................................................23

        1.    Wells Fargo's Motion to Intervene is Timely .......................23

        2.    Wells Fargo Shares a Common Question of Law or Fact with this Action........................................................24

i

3.    An Independent Basis for Jurisdiction Exists in this Action .....25

IV.    CONCLUSION ................................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alaniz v. Tillie Lewis Foods*,
  572 F.2d 657 (9th Cir. 1978)..........................................................................24

*AMG Cap. Mgmt., LLC v. FTC*,
  141 S. Ct. 1341 (2021) ........................................................... 1, 7, 8, 25

*Beckman Indus. v. Int'l Ins. Co.*,
  966 F.2d 470 (9th Cir. 1992)..........................................................................24

*Cal. Dep't of Toxic Substances Control v. Com. Realty Projects, Inc.*,
  309 F.3d 1113 (9th Cir. 2002)..................................................................14, 17

*Citizens for Balanced Use v. Montana Wilderness Ass'n*,
  647 F.3d 893 (9th Cir. 2011)....................................................................13, 19

*Clapper v. Amnesty Int'l USA*,
  133 S.Ct. 1138 (2013) ..................................................................................12

*Day v. Apoliona*,
  505 F.3d 963 (9th Cir. 2007)..........................................................................17

*Defs. of Wildlife v. Johanns*,
  No. C 04-4512 PJH, 2005 U.S. Dist. LEXIS 34455 (N.D. Cal. Dec.
  1, 2005)...........................................................................................................16

*E. Bay Sanctuary Covenant v. Biden*,
  993 F.3d 640 (9th Cir. 2021)..........................................................................11

*Freedom from Religion Found., Inc. v. Geithner*,
  644 F.3d 836 (9th Cir. 2011)..........................................................................25

*FTC v. AMG Cap. Services, Inc.*,
  910 F.3d (9th Cir. 2018)........................................................................*passim*

*FTC v. AT&T Mobility Ltd. Liab. Co.*,
  883 F.3d 848 (9th Cir. 2018)..........................................................................25

*FTC v. Cardiff*,
  18-cv-2104-DMG-PLA (C.D. Cal. 2018) .....................................................10

iii

*FTC v. Cardiff,*
   No. CV 18-2104-DMG, 2021 U.S. Dist. LEXIS 155342 (C.D. Cal.,
   June 29, 2021)...........................................................................................9

*FTC v. Credit Bureau Ctr. LLC,*
   No. CV 17-194, 2021 WL 4146884 (N.D. Ill. Sept. 13, 2021)
   (appeal pending) ......................................................................................9

*FTC v. Gem Merchandising Corporation,*
   87 F.3d 466 (11th Cir. 1996)....................................................................8

*FTC v. Hoyal & Assocs., Inc.,*
   2021 WL 2399707 (9th Cir. June 11, 2021)............................................8

*FTC v. Noland,*
   Case No. CV-20-00047-PHX-DWL, 2021 U.S. Dist. LEXIS 182346
   (D. Ariz. Sep. 23, 2021) .........................................................................20

*FTC v. Publishers Bus. Servs., Inc.,*
   849 F. App'x 700 (9th Cir. 2021).............................................................8

*FTC v. U.S. Oil & Gas,*
   748 F.2d 1431 (11th Cir. 1984)................................................................3

*FTC v. VPL Med., Inc.,*
   846 F. App'x 561 (9th Cir. 2021).............................................................8

*Garza v. Cty. of L.A.,*
   918 F.2d 763 (9th Cir. 1990)..................................................................23

*League of United Latin Am. Citizens v. Wilson,*
   131 F.3d 1297 (9th Cir. 1997)................................................................16

*Lujan v. Defenders of Wildlife,*
   112 S.Ct. 2130 (1992) ............................................................................13

*Made in the USA v. U.S.,*
   242 F.3d 1300 (11th Cir. 2001)..............................................................13

*McNamara v. Wells Fargo,*
   Case No. 3:21-cv-01245-LAB-JLB, Dkt. 1 ..............................................6

*Northwest Forest Res. Council v. Glickman,*
   82 F.3d 825 (9th Cir. 1996)....................................................................25

iv

*Officers for Justice v. Civil Serv. Comm'n,*
 934 F.2d 1092 (9th Cir. 1991) ........................................................... 15, 18

*In re Outlaw Labs., LP Litig.,*
 No. 18-cv-840-GPC-BGS, 2021 U.S. Dist. LEXIS 129429 (S.D.
 Cal. July 12, 2021) ........................................................................... 21

*Pearson v. Target Corp,*
 893 F.3d 980 (7th Cir. 2018) ........................................................... 11

*Petrol Stops Nw. v. Continental Oil Co.,*
 647 F.2d 1005 (9th Cir. 1981) ......................................................... 13

*Smith v. Los Angeles Unified Sch. Dist.,*
 830 F.3d 843 (9th Cir. 2016) ...................................................... 14, 15

*Spangler v. Pasadena City Bd. Of Ed.,*
 552 F.2d 1326 (9th Cir. 1977) ......................................................... 23

*Sw. Ctr. for Biological Diversity v. Berg,*
 268 F.3d 810 (9th Cir. 2001) .................................................. 13, 14, 20

*The Wilderness Soc'y v. U.S. Forest Serv.,*
 630 F.3d 1173 (9th Cir. 2011) ......................................................... 14

*Thomas W. McNamara v. Wells Fargo & Company, et al.,*
 Case No. 3:21-cv-01245-AJB-JLB (S.D. Cal.), Dkt. 2 ..................... 24

*Town of Chester v. Laroe Estates, Inc.,*
 137 S.Ct. 1645, 1650-51 (2017) ....................................................... 11

*TransUnion LLC v. Ramirez,*
 141 S.Ct. 2190 (2021) .................................................................... 12

*U.S. v. Alisal Water Corp.,*
 370 F.3d 915 (9th Cir. 2004) ........................................................... 14

*U.S. v. City of Los Angeles,*
 288 F.3d 391 (9th Cir. 2002) ........................................................... 21

*U.S. v. Oregon,*
 745 F.2d 550 (9th Cir. 1984) ........................................................... 15

PROPOSED INTERVENORS WELLS FARGO & COMPANY AND WELLS FARGO BANK N.A.'S NOTICE OF
MOTION AND MOTION TO INTERVENE

*U.S. v. Palomar-Santiago*,
   141 S. Ct. 1615 (2021) ........................................................................ 14

*Venegas v. Skaggs*,
   867 F.2d 527 (9th Cir. 1989*)* .......................................................... 24

*Warth v. Seldin*,
   422 U.S. 490 (1975) ........................................................................ 11

**Statutes**

15 U.S.C. § 53(b) (Section 13) .............................................................*passim*

15 U.S.C. § 57b (Section 19)...............................................3, 8, 11, 13

15 U.S.C. § 45(a) (Section 5) .................................................................... 2

All Writs Act........................................................................................... 3

Electronic Fund Transfer Act, 15 U.S.C. § 1693e(a) ............................... 2

Restore Online Confidence Act, 15 U.S.C. §§ 8401-04.......................2, 9

**Other Authorities**

Fed. R. Civ. P. 24(a) .........................................11, 13, 14, 20, 23

Fed. R. Civ. P. 24(b) .........................................11, 14, 23, 24, 25

Fed. R. Civ. P. 60................................................................8, 18

Fed. R. Civ. P. 65.................................................................... 3

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.   INTRODUCTION

Wells Fargo seeks to intervene to challenge orders issued before the Supreme Court's precedent-altering decision *AMG Cap. Mgmt., LLC v. FTC*, 141 S. Ct. 1341 (2021). These orders are no longer consistent with the law, but are still being relied upon by the Court-appointed Receiver to pursue litigation against Wells Fargo. Specifically, the *AMG Capital* Court unanimously held that the equitable authority granted under Section 13(b) of the Federal Trade Commission Act ("FTC Act") is limited to prospective injunctive relief and does not grant the FTC authority to obtain monetary relief. Based in whole on Section 13(b), or in combination with the equitably limited Section 19, this Court imposed monetary settlements exceeding $100,000,000 on the Defendants in this action, and empowered the Court-appointed Receiver with the "full powers of an equity receiver."

Propelled by what is now known to be a plainly overbroad grant of authority and relying on monetary judgments that were erroneously imposed, the Receiver, in turn, filed a lawsuit against Wells Fargo through which it is pursuing damages based upon the judgments here. If its intervention motion is granted, Wells Fargo will detail how the continuation of these erroneous orders creates a perverse outcome in which the Receiver, appointed under the limited equitable authority provided within the FTC Act, is exploiting those orders in its pursuit of Wells Fargo in a manner that circumvents core limitations to that authority recognized by the Supreme Court.

Intervention is both proper and necessary as Wells Fargo's claim satisfies the thresholds for intervention as of right or permissively. Wells Fargo's motion is timely and its ability to protect its interests will be impaired if intervention is not granted. As to permissive intervention, Wells Fargo's motion shares multiple common questions of law and fact with this action as the Receiver has acknowledged this matter is related to the Wells Fargo Litigation. Finally, Wells

Fargo's motion to intervene does not try to expand the jurisdiction of this Court.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      FTC's Action Against Principal Defendants

The Wells Fargo Litigation is a direct byproduct of this case, which is a 2018 Federal Trade Commission ("FTC") enforcement action brought under the FTC Act, which charged Apex Capital Group, LLC, its principal owners Phillip Peikos ("Peikos") and Barnett ("Barnett"), and 11 of its affiliated entities ("Corporate Defendants"; collectively, "Defendants") with a multi-tiered scheme to sell millions of dollars of goods to defrauded customers. The FTC Complaint alleged five separate violations of the FTC Act, 15 U.S.C. § 45(a), based on Apex's use of unfair and deceptive acts or practices, including: (1) misrepresentations of the price of trial offers; (2) misrepresentations as to whether the purchase was singular or recurring pursuant to a subscription plan; (3) the failure to include material terms of trial offers; (4) unfairly charging consumers without authorization; and (5) credit card money laundering, a single violation of the Restore Online Confidence Act ("ROSCA"), 15 U.S.C. §§ 8401-04, and a separate violation of the Electronic Fund Transfer Act, 15 U.S.C. § 1693e(a), based on their purported unauthorized debiting of consumer accounts. *Id*. at 32-35.[1] The Complaint sought both equitable and statutory relief including injunctions and monetary relief including disgorgement, restitution, and sale refunds under Section 13(b), 15 U.S.C. § 53(b) and consumer redress through recission of contracts and sale refunds under Section 19. *Id*. at 35-36.

In conjunction with filing the Complaint, the FTC moved *ex parte* and under seal for a temporary restraining order ("TRO"), and the appointment of a temporary receiver (among other things). Dkt. 2 at 3-4. The FTC's motion and supporting

---

[1] The FTC did not pursue administrative relief in advance of filing the Complaint.

PROPOSED INTERVENORS WELLS FARGO & COMPANY AND WELLS FARGO BANK N.A.'S NOTICE OF MOTION AND MOTION TO INTERVENE

documentation largely echoed the allegations of the Complaint. Addressing the appointment of a Receiver, the FTC advised the Court that Section 13(b) provides district courts with authority to grant permanent injunctions and "any ancillary relief necessary to accomplish complete justice . . . including a non-noticed TRO, a preliminary injunction, an asset freeze and the appointment of a receiver," and cited a Section 13(b) case, *FTC v. U.S. Oil & Gas*, 748 F.2d 1431, 1432 (11th Cir. 1984), as support for the Court's equitable authority to appoint a receiver. Dkt. 5 at 26-27, 44. The FTC separately cited to Section 19 as providing district courts with more limited authority of granting  asset freezes and preliminary injunctions to preserve resources for eventual consumer redress. *Id*. at 26-27.

In a sealed order, this Court granted the TRO pursuant to Sections 13(b) and 19 of the FTC Act, Federal Rule of Civil Procedure 65 (addressing non-noticed TROs), and the All Writs Act, without tying specific aspects of the order to any specific statutory authority. Dkt. 16 at 4-5. The TRO set forth the scope, duties and authority of the Receiver–terms that have since remained substantively unchanged. *Id*. at 19-31; Dkt. 40 at 18-30, Dkt. 41 at 18-30. The Court explained it had "exclusive jurisdiction" over the assets of the Receivership and the Receiver would serve "solely" as "the agent of this Court" as it operated "with the full powers of an equity receiver." *Id*. at 18-19, 26. This Court further empowered the Receiver to pursue monetary relief by "su[ing] for, collect[ing], and receiv[ing] all Assets of the Receivership Entities . . ." and by "institute[ing . . .] or otherwise becom[ing] party to any legal action . . . to preserve or recover the Assets of the Receivership Entities, or to carry[ing] out the Receiver's mandate under this Order, including but not limited to, actions challenging fraudulent or voidable transfers." *Id*. at 19, 21.

In December 2018, Peikos, Barnett and the Corporate Defendants stipulated to entry of a preliminary injunction including the appointment of a receiver and other equitable relief. Dkt. 37, 39. These proposed orders contained language mirroring the TRO and extended the Receivership under the same terms. Dkt. 40 at

3

18-30; Dkt. 41 at 18-30. In May 2019, the FTC charged two new defendants, SIA Transact Pro and Mark Moskvins with violations of the FTC Act.[2] Dkt. 73 at 39-40.

### 1.    Wells Fargo's Role as Third-Party Witness

Throughout the FTC proceedings, Wells Fargo was a third-party corporate witness. It responded to legal process by freezing accounts and by providing account documentation and other information relating to select accounts opened by Defendants. Notably, neither the Complaint nor the FAC ascribes any involvement in and knowledge of, wrongdoing by Wells Fargo or its employees.[3]

### 2.    Defendants Settle For More Than $100 Million

On September 11, 2019, this Court entered separate stipulated orders for permanent injunction and monetary judgment between the FTC and Peikos and the Corporate Defendants and the FTC and Barnett (collectively, "Stipulated Settlements"). Dkt. 120-21. The Stipulated Settlements were "no fault" agreements and included equitable monetary relief awards untethered to any specific statutory violation alleged in the Complaint. Dkt. 120 at 2, 22-25; 121 at 2, 22-28.

Specifically, the Stipulated Settlements, which relate back to the Complaint, include monetary judgments of $60,300,000, imposed joint and severally among Peikos and the Corporate Defendants, and $47,300,000 imposed independently

---

[2] The new charges were based, at least in part, on the FTC's review of more than 95,000 emails provided by the Receiver. As with the Complaint, the FAC did not ascribe any direct knowledge or involvement by anyone at Wells Fargo. In December 2019, the FTC entered a settlement with Moskvins and SIA Transact Pro ("Moskvins Settlement") that included a $3,500,000 monetary judgment.

[3] The Complaint and FAC repeatedly reference how a different major U.S. bank housed the "single, centralized account" to which all allegedly illicitly obtained funds were funneled. *See, e.g.*, Dkt. 1 at 12, 14, 28. As to Wells Fargo, the Complaint and FAC simply reference that the Defendants, on select occasions, submitted doctored Wells Fargo checks to facilitate the opening of merchant accounts with other payment processors and that Defendants, at times, used Wells Fargo accounts as one step in the multi-layered process through which they ultimately sent all of their illicit proceeds into the "single, centralized account" at the other major U.S. bank. *Id*. at 27-28.

against Barnett, that were designed to serve "as equitable monetary relief, which may include restitution." Dkt. 120 at 1, 22; Dkt. 121 at 1, 22. In both Stipulated Settlements, the FTC agreed to suspend the entirety of the monetary judgments imposed, provided the Defendants met designated conditions. Dkt. 120 at 22-24; Dkt. 121 at 22-28. Money paid to the FTC would be used for "equitable relief, including consumer redress" and "disgorgement." *Id*. There is no indication the FTC has ever sought to lift the suspended judgments as to any Defendant. *Id*. Each Stipulated Settlement provides the "Court retains jurisdiction [about] construction, modification, and enforcement of this Order." Dkt. 120 at 32; Dkt. 121 at 39.

## B.    The Court Orders Allowing Suit Against Wells Fargo

The Barnett Settlement included a provision ordering the Receiver to begin winding down its operations.[4] Dkt. 120 at 27-28. On February 4, 2020, the Receiver filed two separate motions in support of its request to extend the Receivership term by one year to March 11, 2021: (1) a continuance request; and (2) a motion to retain contingency fee counsel to file a new suit against Wells Fargo. Dkt. 143-44. This latter motion was accompanied by the Receiver's under seal declaration addressing its assessment of its investigation into Wells Fargo. Dkt. 148. On March 9, 2020, at a hearing attended only by the Receiver and his counsel, the Court entered orders that kept the case open, modified the Barnett Settlement to extend the Receivership until March 11, 2021, and authorized the Receiver to retain contingent fee counsel in its pursuit of litigation against Wells Fargo. Dkt. 151-53.

On March 5, 2021, the Receiver filed a motion to continue the Receivership an additional six months to September 11, 2021. Dkt. 167. Again, the Receiver supported its request with an under-seal declaration addressing developments in its investigation of Wells Fargo. Dkt. 171. On March 26, 2021 (15 days after the date

---

[4] While issued as part of the Barnett Settlement, the provision expressly extended orders appointing the Receiver in the entire Apex case. *Id*. at 27.

5

the receivership was to have terminated under this Court's March 9, 2020 order), this Court issued a minute order granting the Receiver's request extending the Receivership's completion date to September 11, 2021. Dkt. 172.

In July and August 2021, the Receiver sought, and the Court granted, another full year extension principally to allow it to prosecute a civil lawsuit filed against Wells Fargo in the Southern District of California. Dkt. 186, 198.

### 1.    Receiver's Litigation Against Wells Fargo

The Receiver filed his lawsuit on July 8, 2021. The retained contingency counsel also filed a putative class action on behalf of consumers the same day. Both seek punitive and exemplary damages.

The Wells Fargo Litigation seeks to hold Wells Fargo accountable for tens of millions of dollars to backfill the portion of the monetary judgments imposed against the Defendants – the actual wrongdoers – that the FTC voluntarily elected to suspend as part of the Stipulated Settlements. Specifically, the Wells Fargo Litigation states that the Receiver seeks damages, including punitive and treble damages, in support of "the Receivership Entities' legal obligations to satisfy the FTC judgments" to "make whole the consumers who were defrauded as a result of the *Apex* and *Triangle* frauds that Wells Fargo facilitated," and to cover the FTC's costs of defending the *Triangle* and *Apex* matters (to include the costs of the Receivership in each matter). *See McNamara v. Wells Fargo*, Case No. 3:21-cv-01245-LAB-JLB, Dkt. 1 at ¶ 240, attached as Request for Judicial Notice ("RJN") Exhibit A. When the amount of the suspended judgments in this case is coupled with the approximately $160 million in suspended judgments[5] from the *Triangle* case, and accounting for the Receiver's pursuit of treble and punitive damages, the Receiver is seeking recovery of over a half billion dollars from Wells Fargo.

---

[5] The Triangle Defendants were required to pay less than $9,000,000 of the $171,000,000+ stipulated judgments.

6

### C. The Supreme Court Holds Section 13(b) Does Not Permit Recovery of Equitable Monetary Relief

Although the Receiver signaled as early as February 2020 that he intended to proceed with a lawsuit against Wells Fargo for monetary damages, he did not file the Wells Fargo Litigation until July 2021, eighteen months later. Dkts. 144, 144-1; RJN Exh. A. In the interim, the United States Supreme Court unanimously held that Section 13(b) was limited in scope to prospective injunctive relief and "did not grant the [FTC] authority to obtain equitable monetary relief." *AMG Capital,* 141 S. Ct. at 1352. In doing so, the Supreme Court acknowledged that its decision effectively invalidated the principal enforcement mechanism the FTC had used for decades, albeit without lawful authority, to recover billions of dollars in damages and disgorgement (including the $1.27 billion judgment imposed as a remedy for the deceptive payday lending practices utilized by *AMG Capital*). *Id.* at 1346-49. Central to the Supreme Court's holding was its finding that the FTC and the lower Courts[6] had profoundly misinterpreted the breadth of equitable authority that exists within this particular statute, which had been broadly construed to allow for monetary relief when, in fact, it was limited purely to prospective injunctive relief. *Id.* at 1350, 1352 ("the scope of equitable relief that a provision authorizes 'remains a question of interpretation in each case'"; "to read § 13(b) to mean what it says, as authorizing injunctive but not monetary relief. . ."). The *AMG Capital* Court, in turn, explained that the FTC Act provided district courts the authority to "impose limited monetary penalties" to redress consumer injuries—but did so under Section 19—

---

[6] The Ninth Circuit, which initially decided *AMG Capital*, explained that this Circuit had for decades consistently interpreted the scope of relief under Section 13(b) to be extremely broad, stating "[w]e have repeatedly held that § 13 'empowers district courts to grant any ancillary relief necessary to accomplish complete justice.'" *FTC v. AMG Capital*, 910 F.3d at 417, 426 (9th Cir. 2018).

which includes a series of substantive and procedural restrictions, including a three-year statute of limitations.[7] *Id*. at 1348-49; *see also* 15 U.S.C. § 57b.

Following the *AMG Capital* decision, the Ninth Circuit has vacated all FTC matters on direct appeal that included monetary awards based on Section 13(b) and remanded these matters to the district courts for further proceedings consistent with *AMG Capital*. *See, e.g., AMG Cap. Mgmt.*, 998 F.3d 897 (9th Cir. 2021) (summarily reversing district court's award of equitable monetary relief and remanding to district court for further proceedings); *FTC v. Hoyal & Assocs., Inc*., 2021 WL 2399707 (9th Cir. June 11, 2021) (vacating the district court's equitable monetary judgment in light of *AMG Capital* but affirming the permanent injunction issued pursuant to Section 13(b)); *FTC v. Publishers Bus. Servs., Inc.,* 849 F. App'x 700 (9th Cir. 2021) (same); *FTC v. VPL Med., Inc.,* 846 F. App'x 561 (9th Cir. 2021) (vacating monetary judgment under Section 13(b)).

The FTC now concedes, as it must, that Section 13(b) cannot be a basis for monetary relief in cases pending on direct review before a District or Circuit Court.[8]

---

[7] As the issue was not before it, the Supreme Court did not consider the scope of equitable authority provided by Section 19. However, the statute itself indicates that it falls well short of the broad equitable authority that incorrectly had been thought to exist in Section 13(b) (courts have "jurisdiction to grant such relief as the court finds necessary to redress injury to consumers . . .resulting from the rule violation or the unfair or deceptive practice . . . [and] such relief may include, but shall not be limited to . . .the refund of money . . .[and] the payment of damages . . .[but may not include] any exemplary or punitive damages." 15 U.S.S. § 57b(b); *see also*, *FTC v. Gem Merchandising Corporation*, 87 F.3d 466, 469 (11th Cir. 1996) (comparing Section 13(b) and Section 19 and finding that Section 19's prohibition against punitive and exemplary damages constituted "a legislative command [that] expressly limits a court's equitable jurisdiction.").

[8] In this case, the FTC acknowledged in responding to Moskvins and SIA Transact Pro's Rule 60 challenge that the Moskvins Settlement resulted from 13(b) which could not result in the recovery of a monetary judgment if brought today. Dkt. 197 at 1 ("although the Supreme Court subsequently interpreted Section 13(b) in a manner that would have left the FTC unable to recover".) Likewise, this Court found that, in light of *AMG Capital*, "that portion of the Stipulated Judgment granting the FTC equitable monetary relief was erroneous because it was not authorized by Section 13(b)). Dkt. 207 at 4. Nevertheless, this Court denied the Rule 60 motion, in part, because the defendants were aware the Seventh Circuit had

PROPOSED INTERVENORS WELLS FARGO & COMPANY AND WELLS FARGO BANK N.A.'S NOTICE OF MOTION AND MOTION TO INTERVENE

*See, e.g.*, *FTC v. AMG Cap. Services, Inc.*, 12-cv-536-GMN-VCF (D. Nev. Sept. 3, 2021) ("*AMG Services Inc.*") attached as RJN Exh. B, Dkt. 1338 at 22 ("[section] 13(b) as currently written does not grant the [FTC] authority to obtain equitable monetary relief...[a]ccordingly, the Court denies the FTC's request for equitable monetary relief under Section 13(b)."). However, in cases in which a Section 19 allegation was alleged and proved—typically fully-litigated ROSCA violations—the FTC has asked district courts to amend monetary judgments issued under Section 13(b) to allow for recovery for some or all of the prior judgment under Section 19. While there is no controlling authority on this issue, district courts generally have acknowledged the availability of monetary relief in such cases and then analyzed the specific facts and circumstances of the individual case to determine whether to impose monetary damages and the amount of damages to be imposed. *See, e.g., FTC v. Credit Bureau Ctr. LLC*, No. CV 17-194, 2021 WL 4146884 (N.D. Ill. Sept. 13, 2021) (appeal pending) (reimposing monetary damages); *cf, FTC v. Cardiff*, No. CV 18-2104-DMG (PLAx), 2021 U.S. Dist. LEXIS 155342, *5, 17-22, 25-28 (C.D. Cal., June 29, 2021) (finding monetary recovery permissible under Section 19 as ROSCA violation proved at summary judgment but precluding recovery due to FTC having provided expert damage model to support Section 13(b), not 19 damages).

Two district courts, including the court in *AMG Capital*,[9] have terminated receiverships/monitorships when implementing the *AMG Capital* decision in

---

broken with precedent and held that monetary relief could not be recovered under Section 13(b), used this fact to negotiate a favorable resolution, and made a strategic decision to voluntarily enter an agreement with the FTC that included the favorable monetary judgment.

[9] The Receiver in this action served as the court-appointed Monitor in *AMG Capital*. Following the issuance of the Supreme Court decision in that case, he conceded that the Monitor "no longer has the authority to pursue the [related litigation stemming from the underlying FTC action which were initiated pursuant to the duties conferred upon him by the court] in light of the Supreme Court's reversal of the monetary judgment" and that he "is of the view that he must dismiss the actions as part of the wind down process." *See AMG Services Inc.*, Case No. 2:12-cv-00536-GMN-VCF, Dkt. 1333 at 1-2, attached as RJN Exhibit C.

Section 13(b) proceedings. *AMG Services, Inc.*, Case No. 2:12-cv-00536-GMN-VCF Dkt. 1338 at 22-23, (granting summary judgment for defendants, denying re-instatement of $1.27 billion judgment as monetary relief could not be obtained through Section 13(b), and ordering termination of monitorship, which had been involved in collections, settlement negotiations, and litigation against third parties); *FTC v. Cardiff*, 18-cv-2104-DMG-PLA (C.D. Cal. 2018); Dkt. 627 at 2, 9-10, 12, attached as RJN Exh. D (ordering termination of the receivership after determining that no ROSCA-based damages would issue).

### D.    Wells Fargo Secures Material Under Seal Documents

Several material documents necessary to assess and advance Wells Fargo's substantive *AMG Capital* claim remained subject to this Court's sealing orders until recently:  namely, the TRO in which this Court first appointed McNamara as Receiver and established the scope, duties and authority of the Receivership, and McNamara's two declarations laying out the results of the Receiver's investigation and the reasons behind the delays in proceeding with its litigation against Wells Fargo, which were presented to justify the Receiver's requests to secure contingent counsel and to modify the Barnett Settlement to extend the Receiver's termination date. Dkt. 16. Wells Fargo prepared to intervene to secure these documents in October 2021 as a necessary first step towards proceeding with this intervention motion. However, through a series of meet and confer communications, the FTC and the Receiver agreed to jointly request the release of these documents. Dkt. 212. On December 10, 2021, this Court granted the request and ordered the three documents be unsealed. Dkt. 213.

Having now accessed and reviewed the necessary materials**,** Wells Fargo seeks to intervene to raise *AMG Capital*-based challenges to this Court's orders empowering the Receiver with the "full powers of an equity receiver," as they are overbroad and the prospective pursuit of erroneously issued monetary judgments as

applied from Wells Fargo. Intervention in this matter is appropriate as Wells Fargo has satisfied the requirements of both Rules 24(a) and 24(b), and this Court has maintained jurisdiction over the matter, including the Receivership "for purposes of construction, modification, and enforcement of [the Stipulated] Order[s].[10] Dkts. 120 at 32; 121 at 39.

## III.   <u>ARGUMENT</u>

### A.   Wells Fargo Possesses Article III Standing

Wells Fargo plainly has standing to intervene. *Town of Chester v. Laroe Estates, Inc.,* 137 S.Ct. 1645, 1650-51 (2017). To establish Article III standing, the proposed intervenor must establish: (1) injury in fact; (2) that is fairly traceable to the challenged conduct of the defendant; and (3) that is likely to be redressed by a favorable ruling. In doing so, the proposed intervenor need not definitively establish that a right has been infringed but rather must simply establish a colorable claim to such a right. *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 664-65 (9th Cir. 2021) ("Whether a party has sufficient statutory or otherwise legal basis for their claims is irrelevant at this threshold [analyzing standing] stage.); *Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal....").

Wells Fargo has sustained, and continues to sustain, injury as a result of the erroneous orders in this proceeding that: (1) improperly imposed monetary judgments under Section 13(b) that are now being applied prospectively against it; and (2) have provided the Receiver with powers that fall plainly beyond the permissible scope of equitable authority under Sections 13(b) and 19, which powers have been used by the Receiver to file his complaint against Wells Fargo in federal court. Wells Fargo's injury here is the Receiver's authority to pursue litigation

---

[10] *See Pearson v. Target Corp*, 893 F.3d 980, 986 (7th Cir. 2018) (order retaining jurisdiction provides district court continuing jurisdiction over parties' claims)

against Wells Fargo pursuant to an invalidated legal principle, and the resulting reputational harm and litigation costs – all of which Wells Fargo has suffered, and will continue to suffer, as the result of the Receiver's filing of the Wells Fargo Litigation. *See also TransUnion LLC v. Ramirez,* 141 S.Ct. 2190, 2200 (2021) ("Central to assessing concreteness [for Article III standing] is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms including [] reputational harm.").

It is indisputable that this injury is "fairly traceable to the challenged action." *Clapper v. Amnesty Int'l USA*, 133 S.Ct. 1138, 1147 (2013). The Court appointed this Receiver in this case to serve as its "agent" in resolving matters related to this Court's "exclusive jurisdiction" over the Receivership's assets in this matter. The Receiver claims these assets include causes of action held by the Corporate Defendants (who are deemed to be "Receivership Entities") against Wells Fargo for purportedly conspiring with, and aiding and abetting, the Defendants as they committed the conduct that gave rise to this case. Exercising the authority provided by the Court, the Receiver secured access to the documents, witnesses, and other evidence on which the Wells Fargo Litigation is based. Further, it is the erroneously issued monetary judgments in this case that serve as the foundation of the Wells Fargo Litigation. It is to this Court, in this case, that the Receiver repeatedly has returned – as it must – to give status reports and secure authorization to take significant steps forward, such as when retaining outside counsel to assist with the Wells Fargo Litigation. The Receiver also has relied on this Court's authority to recover purported Receivership assets from Wells Fargo and to extend the termination date of the Receivership so that the Receiver can continue the Wells Fargo Litigation with the goal of securing a "substantial" monetary judgment that will be provided to the FTC to serve as redress to consumers who suffered loss due to the Defendant's alleged fraud scheme in this case.

PROPOSED INTERVENORS WELLS FARGO & COMPANY AND WELLS FARGO BANK N.A.'S NOTICE OF MOTION AND MOTION TO INTERVENE

Likewise, there can be no real question that Wells Fargo's claim is likely to be redressed through a positive ruling. *Lujan v. Defenders of Wildlife*, 112 S.Ct. 2130, 2136 (1992) (redressability established when it is "likely" and not "merely speculative" that the injury will be "redressed by a favorable ruling"). Granting Wells Fargo's requests in whole, or in part, to align these orders with the *AMG Capital* ruling and the proper scope of equitable authority under Sections 13(b) and 19, would: (1) remove the financial basis that is the foundation of the Receiver's Action against it; (2) limit the amount and kinds of damages the Receiver can actively pursue ; (3) remove or reduce the reputational harm caused by the Receiver's allegations of participation in fraudulent conduct resulting in large scale consumer harm; and (4) extinguish Wells Fargo's due process concerns that are inherent to having defend itself in a lawsuit brought by this Court's representative that is built on, and continues to be propped up by, orders of this Court that are now known to be erroneous. *Made in the USA v. U.S.*, 242 F.3d 1300, 1311 (11th Cir. 2001) (partial redress sufficient to confer standing.

## B.   Wells Fargo Is Entitled to Intervene as of Right

Pursuant to Federal Rule of Civil Procedure 24(a), an applicant is entitled to intervene as a matter of right if four conditions are met: (1) the application is timely; (2) the applicant has a "significant protectable interest" in the action; (3) "the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest;" and (4) "the existing parties may not adequately represent the applicant's interest." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011). The proposed intervenor bears the burden to demonstrate that the requirements of Rule 24 have been met, *Petrol Stops Nw. v. Continental Oil Co.,* 647 F.2d 1005, 1010 (9th Cir. 1981); however, "courts are to take all well-pleaded, nonconclusory allegations in the motion to intervene . . .as true absent sham, frivolity, or other objections." *Sw. Ctr. for Biological Diversity v.*

*Berg*, 268 F.3d 810, 820 (9th Cir. 2001). The Ninth Circuit construes "Rule 24(a) liberally in favor of potential intervenors" and assesses motions for intervention "primarily by practical considerations, not technical distinctions." *Id.* at 818 (quotation and citation omitted). Such a "liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *The Wilderness Soc'y v. U.S. Forest Serv.,* 630 F.3d 1173, 1179 (9th Cir. 2011). As this Court expressly maintained jurisdiction over both the Receivership and motions relating to its prior orders and judgments in this case, the appropriate means for doing so is through a Rule 24(a) motion in this case. Dkt. 120 at 29; 121 at 39;142 at 27; *U.S. v. Palomar-Santiago*, 141 S. Ct. 1615, 1622 (2021) (collateral attack doctrine requires challenges to be made in the case where order was issued).

### 1.      Wells Fargo's Motion is Timely

Motions to intervene as of right must be timely pursued. Fed. R. Civ. P. 24(b)(1); *Cal. Dep't of Toxic Substances Control v. Com. Realty Projects, Inc.,* 309 F.3d 1113, 1119 (9th Cir. 2002). "Timeliness is a flexible concept." *U.S. v. Alisal Water Corp.,* 370 F.3d 915, 921 (9th Cir. 2004); *see also Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016) (holding motion to intervene timely even though 20 years passed, as plaintiff commenced the action several months after a change in circumstances occurred). When assessing timeliness, courts should weigh: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for, and length of, the delay. *Id.* Each of these factors weighs in favor of Wells Fargo and support a finding that Wells Fargo's Motion is timely.

#### i.      Intervention at this Stage is Appropriate

To determine whether intervention is timely at the current stage of litigation, the court must consider whether "a party's interest in a specific phase of a proceeding may support intervention." *Alisal Water*, 370 F.3d at 921. The crucial

---

14

date for assessing the timeliness of a motion to intervene is when proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties. *Officers for Justice v. Civil Serv. Comm'n,* 934 F.2d 1092, 1095 (9th Cir. 1991)*; U.S. v. Oregon,* 745 F.2d 550, 552 (9th Cir. 1984). "Where a change of circumstances occurs, and that change is the 'major reason' for the motion to intervene, the stage of proceedings factor should be analyzed by reference to the change in circumstances, and not the commencement of the litigation." *Smith,* 830 F.3d at 854.

It is only in the current stage of the proceedings that Wells Fargo could intervene as the change in circumstance that provided the substance of its claim and the standing for the claim both recently occurred. Although the FTC filed its action against Defendants in 2018, Wells Fargo was, and always has been, nothing more than a third-party witness in this case (as it is in thousands of cases annually) that willingly complied with the FTC's legal process requests for account freezes and information related to accounts utilized by the Defendants. In fact, the FTC never ascribed in any pleading, including its Stipulated Settlements with the Defendants, that either Wells Fargo or its employees knew of, or knowingly participated in, the alleged frauds committed by the Defendants. Dkt. 1, 73, 120-121. Moreover, while the Receiver, operating under a series of orders issued by this Court, has pursued its investigation against Wells Fargo from at least some point before the FTC's 2019 Stipulated Settlement with the Defendants in this action, it only has been within the past several months that changed circumstances arose such that intervention by Wells Fargo is warranted.

Specifically, it was not until this past April that the Supreme Court held in *AMG Capital* that the FTC lacked authority to obtain equitable monetary relief under Section 13(b) of the FTC Act and found in the process that the equitable authority provided by Section 13(b) was narrowly tied to preserving prospective injunctions. Approximately 25 years of Ninth Circuit precedent holding that Section

15

13(b) empowered courts with the full breadth of equitable authority – whether it be in imposing monetary relief or defining the scope of equitable authority granted when providing other ancillary relief, such as the appointment of receivers – was now cast aside. The Receiver filed the Wells Fargo Litigation in July 2021, notwithstanding *AMG Capital*. This lawsuit is the manifestation of the Receiver's use of the overbroad orders in this case allowing it to operate with "the full powers of an equity receiver" and its core purpose is the pursuit of Wells Fargo for tens-to-hundreds of millions of dollars in damages, subject to trebling and punitive damages, in reliance on the equitable monetary judgments erroneously awarded to the FTC as part of the underlying proceedings. RJN Exh. A. It was only at this time that an actionable dispute warranting intervention arose. Wells Fargo then engaged in meet and confer discussions, consistent with this Court's orders, and obtained the necessary information by December 2021 regarding the basis for the Court's appointment of the Receiver here. Given these recent material changes in circumstance, it is appropriate for Wells Fargo to file its intervention motion now.

### ii. *Wells Fargo's Proposed Intervention Will Not Unduly Delay or Prejudice the Parties*

Wells Fargo's intervention in this action will not prejudice other parties. The second factor the Ninth Circuit looks at to determine whether intervention is timely is whether there is "prejudice to the other parties." *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997). The question is not whether intervention itself will cause the "nature, duration, or disposition of the lawsuit to change," but rather, whether the existing parties will be prejudiced by the delay caused by intervention. *Defs. of Wildlife v. Johanns*, No. C 04-4512 PJH, 2005 U.S. Dist. LEXIS 34455, at *11 (N.D. Cal. Dec. 1, 2005). The clear answer here is a resounding - no - because all allegations against the Defendants charged in this action have been fully resolved. Dkts. 120-121. Wells Fargo's intervention motion does not seek to upset the existing judgments between the FTC and the settled

16

Defendants but rather seeks to challenge orders that relate to the Court-appointed Receiver and how that Receiver may use the erroneously secured judgments prospectively in litigation against Wells Fargo. In fact, it should be apparent from the record that Wells Fargo has carefully framed its pleadings precisely not to negatively impact the parties' settlements. Thus, this motion does not cause any undue delay or prejudice to the original parties. *Cal. Dep't of Toxic Substances Control*, 309 F.3d at 1120; *see also Day v. Apoliona*, 505 F.3d 963, 966 (9th Cir. 2007) (granting motion to intervene two years after action was filed, where intervention would not prejudice existing parties or delay litigation).

As to the Receiver, there also is no undue delay or prejudice. The merits of the motion require that it be brought. The collateral attack doctrine and this Court's order retaining jurisdiction over the judgments require that it be brought in this case. While the Receiver will have to address Wells Fargo's intervention motions in two separate venues, that is a problem of the Receiver's election for it is the Receiver, not Wells Fargo, who chose to blend together confidential information secured through wholly unrelated and wholly separate court appointments in wholly separate districts into a single lawsuit in a strategic attempt to develop settlement leverage against Wells Fargo. By doing so, the Receiver left open the possibility that he would have to litigate select motions in each district, which is the case here. There is no reason to expect that either this motion or the intervention motion will result in delay, much less undo delay. Again, the merits require that this issue be litigated. Moreover, because this motion is being litigated in the original case, the Wells Fargo Litigation can proceed as scheduled.

### iii.  *Wells Fargo Has Not Delayed in Seeking Intervention*

Wells Fargo has not delayed in seeking to intervene. As discussed above, the grounds supporting intervention as of right only recently arose, in July 2021, when the Receiver filed the Wells Fargo Litigation, which ignored the bright-line legal

17

principal adopted in *AMG Capital*. RJN Exh. A. In the brief period since the action was filed, it has become apparent that none of the parties to the instant action can, or will, adequately represent Wells Fargo's interests in ensuring that the orders delegating authority to the Receiver conform with the Supreme Court's holding in *AMG Capital*. *Officers for Justice*, 934 F.2d at 1095 (the focus of the length of delay prong is on when "the person attempting to intervene should have been aware his interests would no longer be protected adequately by the parties, rather than the date the person learned of the litigation"). Wells Fargo has acted deliberately and expeditiously to protect its interests once a potentially actionable claim materialized.

As part of this process, Wells Fargo has taken its meet-and-confer responsibilities very seriously. For instance, when Moskvins and SIA Transact Pro filed an *AMG Capital*-based Rule 60 motion that sought to set aside their wholly unpaid $3,500,000 judgment, Wells Fargo discussed intervention at that time with the FTC and the Receiver. Both strongly opposed Wells Fargo's intervention, citing the perceived finality of the underlying orders and the grave harm that would be caused to consumers if the judgments were undone because of a Receiver-based lawsuit. FTC counsel separately raised a host of additional issues, including Article III standing. As the issues raised in this pending Rule 60 motion were materially different than those that would be raised by Wells Fargo[11], Wells Fargo directed its resources towards further research and analysis on the issues and concerns raised during the meet and confer process.

It concluded the research and again determined that the motion needed to be filed; however, rather than asking the Court to vacate the judgments in their entirety,

---

[11] These include: (1) Moskvins and SIA Transact Pro were not part of the Receivership and their judgment did not factor into the damage award being sought against Wells Fargo; (2) their settlement included a broad waiver that precluded attacks on the judgment; (3) they submitted a declaration with demonstrably incorrect statements that had to be withdrawn; and (4) the order they were challenging was final and therefore, their motion rested exclusively with Rule 60.

18

which would have a substantial impact on the underlying parties and the consumers'
ability to obtain redress from the FTC's negotiated settlement with the Defendants,
it tailored its request to only seek an order that the monetary judgments could not be
used prospectively against it in the ongoing litigation. To do so, however, it needed
to first secure several under seal documents, including the TRO order appointing the
Receiver and the Receiver's declarations setting forth the justification for continuing
the Receivership to allow for it to file a lawsuit against Wells Fargo. To that end, it
again met and conferred with the FTC and the Receiver the first week of November
and advised them that it intended to file a motion to intervene to secure these
documents, which would be followed by a second motion addressing the substantive
*AMG Capital* issue. Over the course of several communications, it ultimately was
agreed that the FTC and the Receiver would dispense of the need of the first motion
by requesting the relief themselves as parties to the action.

The Receiver filed a motion to unseal these documents on November 18,
2021. Dkt. 212. This Court granted the motion to unseal on December 10, 2021.
Dkt. 213. After Wells Fargo was able to adequately evaluate these additional
documents, it brought this motion. Accordingly, this final factor, like the two before
it, supports a finding in favor of the timeliness.

## 2.     Wells Fargo has a Significant Protectable Interest

It is indisputable that Wells Fargo has a significant protectable interest in this
action. *Citizens for Balanced Use*, 647 F.3d at 897 (quoting *Greene v. U.S.,* 996
F.2d 973, 976 (9th Cir. 1993)) (a significantly protectable interest exists when the
proposed intervenor can establish an interest that is protectable under some law and
that is related to the claims at issue.) As addressed at length above, both the orders
imposing monetary judgments and the orders empowering the receivership exceed
the lawful authority under which they were granted. Nevertheless, the Receiver is
relying on these orders to weaponize unfounded civil litigation against Wells Fargo,

causing it both reputational and monetary harm. At the bare minimum, Wells Fargo has the basic due process right of litigating these issues so that, if it is to be sued by a representative of this Court, it be done based on orders that are consistent with current law. Intervention is necessary so that it can fully raise these claims and address with this Court various measures that should be taken to correct these errors. *See e.g., FTC v. Noland*, Case No. CV-20-00047-PHX-DWL, 2021 U.S. Dist. LEXIS 182346, at *11-14 (D. Ariz. Sep. 23, 2021) (recognizing that post-*AMG Capital*, the scope of a receiver's duties is to prevent receivership entities from engaging in ongoing and future harm, not to pursue monetary relief).

### 3. Failure To Allow Intervention Will Impair Wells Fargo's Ability to Protect Its Interest

It is equally indisputable that Wells Fargo's ability to protect its interests will be impaired if intervention is not granted. Fed. R. Civ. P. 24(a)(2); *Sw. Ctr. for Biological Diversity*, 268 F.3d at 822. ("[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene.") Absent intervention, the status quo will remain, and the Receiver, despite being appointed and empowered based on a fundamentally overbroad application of the equitable remedies permitted under the FTC Act, will remain unchecked in its efforts to secure redress that support monetary judgments that, in whole or in part, were erroneously imposed under Section 13(b). This Court has supervision over the Receiver, issued the applicable orders setting forth the scope of the Receiverships, and retained jurisdiction over the Stipulated Settlements. It is only through intervention in this case that Wells Fargo can properly seek modifications of the existing orders to bring them into necessary alignment with current law and thereby, ensure that the action against it is not premised on unlawful or erroneous rulings.

### 4.    No Other Party Can Adequately Protect Wells Fargo's Interests

No party to this action can or will defend, much less adequately defend, Wells Fargo's interests. As a preliminary matter, the FTC and Receiver had made known their intent to contest fully the relief sought. This is unsurprising, as each has a directly competing interest that virtually ensures that, absent intervention, issues related to the appropriate scope of the Receiver's authority and actions post-*AMG Capital* will never be addressed in this case. *U.S. v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002) (Whether the movant's interests are adequately represented by the current parties depends on three factors: (1) "whether the interest of a present party is such that it will undoubtedly make all the [movant's] arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect.") (citing *Northwest Forest Res. Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996))

The FTC rightfully considers its case against the actual wrongdoers, the Defendants, to be complete. Dkt. 120, 121. Its interests, therefore, lie squarely with protecting the finality of the Stipulated Settlements, preserving the monetary relief recovered from the Defendants, and potentially adding to those settlements through a Receiver generated settlement or judgment against Wells Fargo.

The Defendants, likewise, entered into highly favorable Stipulated Settlements with the FTC, and in return, agreed to waive all challenges to the validity of the monetary judgments and to cooperate with the FTC in matters relating to their settlement. Dkt. 120 at 2; Dkt. 121 at 2; *see, e.g., In re Outlaw Labs., LP Litig.,* No. 18-cv-840-GPC-BGS, 2021 U.S. Dist. LEXIS 129429, at *11 (S.D. Cal. July 12, 2021) (holding that a settling party agreeing to restrictions in a settlement cannot adequately represent a non-party in the litigation). Moreover, these Defendants have no interest in advancing Wells Fargo's arguments, because

21

the matter is resolved as to them and any funds extracted by the Receiver would reduce the overall outstanding obligation. Dkt. 120 at 22; Dkt.121 at 22.

Most compellingly, the Receiver's actions throughout this case demonstrate that it intends to utilize the full scope of the overbroad grant of authority set forth in the current orders. The Receiver's pursuit of a monetary recovery from Wells Fargo has been nothing short of Quixotic. It has been marked by the pursuit of a company that the FTC never assigned any culpability to in either its charging documents or its settlement agreements. Dkts. 1, 73, 120-121. The Receiver has trudged along for years after the FTC, which initially asked for the Receiver's appointment, entered into a stipulated agreement recommending a near-immediate wind down of the Receivership. Dkt. 120 at 27; Dkt. 121 at 22. The Receiver obtained Court approval to retain contingency counsel to provide basic funding, because as the Receiver conceded, the suit against Wells Fargo would not be an effective use of Receivership assets. Dkt. 144-1 at 1-2; Dkt. 148 at ¶ 11. The Receiver persisted undeterred by either the *AMG Capital* decision (a case in which he served as the court-appointed monitor), or the Receiver's own acknowledgment in his monitor's report filed upon remand of *AMG Capital* that the Supreme Court's decision required that all Monitor-related actions be terminated and/or unwound. The Receiver strategically engineered that two lawsuits be simultaneously filed against Wells Fargo to double up on both the costs of litigation and Wells Fargo's potential exposure in its efforts to leverage a "substantial" settlement. Wells Fargo Litigation. Dkt. 1. The Receiver will continue until an interested party in this case acts to curb this overreach and to realign the scope of the Receiver's rightful duties with the current state of the law.

There is no entity other than Wells Fargo that has the particularized interest to challenge the orders authorizing the Receiver to continue forward. Likewise, there is no entity better positioned than Wells Fargo to make the necessary arguments how

22

the Receiver's current actions in that pursuit are contrary to law. Intervention by Wells Fargo, therefore, is both necessary and appropriate.

Wells Fargo has established its right to mandatory intervention under Rule 24(a). This Court should grant its motion to intervene.

## C.   Wells Fargo Also Satisfies All of the Requirements of Permissive Intervention

In the alternative, the Court may exercise its discretion to allow permissive intervention. In instances when intervention as of right is unavailable, an intervenor can obtain permissive intervention where the following three threshold requirements are met: (1) the motion is timely filed; (2) a common question of law or fact shared with the main action exists; and (3) an independent basis for the court to exercise jurisdiction over its claims is present. Fed. R. Civ. P. 24(b). In deciding whether to grant permissive intervention, a court "shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the other parties." Fed. R. Civ. P. 24(b)(2); *see also Garza v. Cty. of L.A.,* 918 F.2d 763, 777 (9th Cir. 1990). District courts have broad discretion to grant permissive intervention under Rule 24(b). *See Spangler v. Pasadena City Bd. Of Ed.,* 552 F.2d 1326, 1329 (9th Cir. 1977). As explained below, Wells Fargo also meets the test for permissive intervention.

### 1.   Wells Fargo's Motion to Intervene is Timely

Motions for permissive intervention also must be timely made. Fed. R. Civ. P. 24(b)(1). As addressed above, Wells Fargo's motion is timely, as it acted expeditiously to pursue intervention after the Receiver filed the Wells Fargo Litigation in July 2021, pursuing claims inconsistent with the letter and spirit of the Supreme Court's holding in *AMG Capital. Supra,* Section III.A.; Wells Fargo Litigation. Dkt. 1. Additionally, there is no prejudice against the parties because the adjudication of the rights of the other parties have already been determined and Wells Fargo's intervention does not seek to disrupt that order. *See* Section III.B.1.ii.,

23

*supra.* Therefore, there is ample basis for this Court to exercise its broad discretion to allow for intervention. *Alaniz v. Tillie Lewis Foods,* 572 F.2d 657, 659 (9th Cir. 1978).

### 2. Wells Fargo Shares a Common Question of Law or Fact with this Action

A potential intervenor need only show that it has a "claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B); *Beckman Indus. v. Int'l Ins. Co.,* 966 F.2d 470, 473 (9th Cir. 1992); *see Venegas v. Skaggs,* 867 F.2d 527, 530 (9th Cir. 1989*)* (district court may exercise its discretion in permitting intervention where common questions of law or fact exist). There can be no question this requirement has been met because the Receiver asserted, and thereby conceded, this very fact when he filed a notice of related case with the Complaint in the Wells Fargo Litigation. *See Thomas W. McNamara v. Wells Fargo & Company, et al.,* Case No. 3:21-cv-01245-AJB-JLB (S.D. Cal.), Dkt. 2 attached as RJN, Exh. E at 2. (Receiver "brings this action against the Defendants for conduct arising out of the same underlying facts at issue in the foregoing lawsuits, inter alia, Defendants alleged aiding and abetting of the fraudulent schemes at issue therein.")[12] Similarly, the clerk made findings citing to the commonality of facts and legal issues when assigning the Wells Fargo Litigation to Judge Burns, who accepted the assignment. Thus, this factor weighs heavily in favor of a grant of permissive intervention.

---

[12] Other common issues and facts, including but not limited to: (1) whether the Receiver's authorization permits the Receiver to rely on monetary judgments erroneously imposed under Section 13(b) as the basis for prospectively pursuing monetary damages from Wells Fargo; (2) if not, is there a basis on which to calculate a damage award under Section 19 and is such relief warranted at this time; (3) whether the Receiver can seek to recover types of damages that are expressly prohibited under the statutes relied upon as the basis for the Receiver's appointment; and (4) whether the Receiver has standing to pursue a monetary award that lies wholly in consumer redress.

24

### 3. An Independent Basis for Jurisdiction Exists in this Action

An applicant that seeks permissive intervention also must establish an independent basis for jurisdiction. *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 839 (9th Cir. 1996). This requirement is primarily concerned with avoiding the inappropriate expansion of the district court's jurisdiction. *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011). Permitting Wells Fargo to intervene in this action will not expand the Court's jurisdiction.

This Court has exclusive jurisdiction over the assets of the receivership and expressly retained jurisdiction over the Receivership and motions relating to its prior orders and judgments. Dkt. 120 at 29; 121 at 39;142 at 27. By seeking to intervene in this matter to contest the orders addressing the unlawfully overbroad scope of the Receivership post-*AMG Capital*, Wells Fargo is recognizing the independent basis for jurisdiction that exists within this case and is complying with, rather than expanding, that jurisdiction *AMG Cap. Mgmt., LLC*, 141 S. Ct. at 1348-1349; *see also, FTC v. AT&T Mobility Ltd. Liab. Co.*, 883 F.3d 848, 853 (9th Cir. 2018) (holding that district court had federal question jurisdiction because the dispute of the FTC Act arose under federal law).

As Wells Fargo's motion satisfies all of the requirements for permissive intervention, this Court should exercise its discretion and grant its Rule 24(b) motion.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, this Court should grant Wells Fargo's motion for intervention.

1   DATED: January 18, 2022                    Respectfully submitted,

2                                              **MCGUIREWOODS LLP**

3

4                                              */s/ Alicia A. Baiardo*
                                               David C. Powell, Esq.
5                                              Kevin M. Lally, Esq.
                                               Alicia A. Baiardo, Esq.
6

7                                              *Counsel for Proposed Intervenor*
                                               *Wells Fargo & Company and Wells Fargo*
8                                              *Bank, N.A.*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROPOSED INTERVENORS WELLS FARGO & COMPANY AND WELLS FARGO BANK N.A.'S NOTICE OF
MOTION AND MOTION TO INTERVENE

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 18, 2022, the foregoing document was filed electronically in the Court's Electronic Case Filing system ("ECF"); thereby upon completion the ECF system automatically generated a Notice of Electronic Filing ("NEF") as service through CM/ECF to registered e-mail addresses of parties of record in the case.

*/s/ Alicia A. Baiardo*
Alicia A. Baiardo

PROPOSED INTERVENORS WELLS FARGO & COMPANY AND WELLS FARGO BANK N.A.'S NOTICE OF MOTION AND MOTION TO INTERVENE