JONATHAN W. WARE (lead counsel), *pro hac vice*
Tel: (202) 326-2726; jware1@ftc.gov
Fax: (202) 326-3197
DC Bar No. 989414; VA Bar No. 77443
Federal Trade Commission
600 Pennsylvania Avenue NW CC-9528
Washington, DC 20580

DELILAH VINZON (local counsel)
Tel: (310) 824-4300; dvinzon@ftc.gov
Fax: (310) 824-4380
Cal. Bar No. 222681
Federal Trade Commission
10990 Wilshire Boulevard, Suite 400
Los Angeles, CA 90024

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **FEDERAL TRADE COMMISSION**, <br><br> Plaintiff, <br><br> v. <br><br> **APEX CAPITAL GROUP, LLC,** et al. <br><br> Defendants. | Case No. 2:18-cv-9573-JFW(JPR) <br><br> **PLAINTIFF FTC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO INTERVENE BY NON-PARTY WELLS FARGO** <br><br> Date: March 7, 2022 <br> Time: 1:30 PM <br> Courtroom: 7A <br> Judge: Hon. John F. Walter |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS................................................................................. i

TABLE OF AUTHORITIES .......................................................................iii

MEMORANDUM OF POINTS AND AUTHORITIES...........................1

LEGAL ARGUMENT ...............................................................................2

I.    WELLS FARGO'S LEGAL AND FACTUAL BASES FOR
      ATTACKING THE JUDGMENTS ARE WITHOUT MERIT...................2

    A.    ROSCA and Section 19 Provide an Independent Basis for the
      Monetary Relief Granted Here, Regardless of *AMG*. ..........................2

    B.    The FTC Act, the Pleadings, and the Court's Prior Rulings
      Support the Receiver's Authority and the Final Judgments. ...............4

    C.    The Court Already Held *AMG* Provides No Basis to Attack the
      Judgments. ..........................................................................................7

    D.    Section 19's Ongoing Viability Means the FTC Can Maintain
      Its Judgments Regardless of the Outcome of Wells Fargo's
      Motions..................................................................................................7

II.   WELLS FARGO LACKS STANDING TO INTERVENE..........................8

    A.    Wells Fargo Neither Alleges Nor Demonstrates Sufficient
      Injury. ..................................................................................................8

    B.    Wells Fargo's Alleged "Injury" Would Not Be Redressed by a
      Decision in Its Favor. ........................................................................10

III.  WELLS FARGO HAS NOT MET ITS BURDEN TO INTERVENE
      AS OF RIGHT........................................................................................11

    A.    The Motion Is Untimely.....................................................................12

        1.    The proceeding is closed and Wells Fargo knew, or
      should have known, its interests were at risk long ago............12

        2.    Wells Fargo's delay prejudices the parties. ............................17

        3.    Wells Fargo gives no valid reason for its delay.......................19

    B.    Wells Fargo Lacks a Significantly Protectable Interest.....................20

    C.    Wells Fargo's Ability to Protect Its Interest Is Not Impaired.............21

    D.    Wells Fargo's Interests Are Adequately Protected ............................22

IV.   WELLS FARGO HAS NOT MET ITS BURDEN TO INTERVENE
      BY PERMISSION. ................................................................................23

i

A.    The Motion Is Untimely Under the "More Strict[]" Standard. ............24

B.    The Parties Would Be Prejudiced By Intervention ............................24

C.    Other Factors Weigh Against Intervention .........................................25

CONCLUSION ........................................................................................................25

Case No. 2:18-cv-9573-JFW(JPR)
FTC's Mem. Opposing Non-Party Wells Fargo's Motion to Intervene

# TABLE OF AUTHORITIES

## Cases

*Alaniz v. Tillie Lewis Foods,* 572 F.2d 657 (9th Cir. 1978) ...................... 12, 13, 24

*Am. Int'l Specialty Lines Ins. Co. v. United States*, 2012 WL 12897865 (C.D. Cal. Jan. 30, 2012) ...................................................................16

*AMG Capital Mgmt. LLC v. FTC*, 910 F.3d 417 (9th Cir. 2018)...........................15

*AMG Capital Mgmt., LLC, v. FTC*, 141 S.Ct. 1341 (2021) ........................... passim

*Arakaki v. Cayetano,* 324 F.3d 1078, 1086 (9th Cir. 2003) ........................... 22, 23

*Cal. Dep't of Toxic Substances Control v. Com. Realty Projects, Inc*., 309 F.3d 1113 (9th Cir. 2002) ........................................................................18

*Cal. Dep't of Toxic Substances Control v. World Cleaners, Inc*., 2017 WL 4769439 (C.D. Cal. 2017) ...................................................................15

*Calvert v. Huckins,* 109 F.3d 636 (9th Cir. 1997) ................................ 12, 17, 18, 24

*CAMOFI Master LDC v. Assoc. Third Party Admins.,* 2018 WL 839134 (N.D. Cal. Feb. 13, 2018) ...................................................................11

*CFTC v. Co Petro Mktg. Group, Inc.*, 680 F.2d 573 (9th Cir. 1982).......................3

*Christonson v. United States,* 415 F. Supp. 2d 1186 (D. Ida. 2006) ......................10

*Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 409 (2013)..........................................8

*Cooper v. Newsom*, 13 F.4th 857 (9th Cir. 2021)........................................ 12, 22, 24

*Cotton v. Wells Fargo Bank N.A.*, 2011 WL 13227816 (C.D. Cal. Feb. 22, 2011)...............................................................................15

*Day v. Apoliona*, 505 F.3d 963 (9th Cir. 2007) .....................................................18

*Friends of the Earth v. Sanderson Farms, Inc*., 992 F.3d 939 (9th Cir. 2021)...............................................................................10

*FTC v. Cardiff*, 2020 WL 766336 (C.D. Cal. 2020), *aff'd*, 830 F. App'x 844 (9th Cir. 2020) ...................................................................16

*FTC v. Cardiff*, 2021 WL 3616071 (C.D. Cal. June 29, 2021) ..........................3, 23

FTC v. Credit Bureau Ctr., LLC, 2021 WL 4146884 (N.D. Ill. Sept. 13, 2021).................................................................... 3, 7, 8, 23

*FTC v. First Cap. Consumer Membership Servs., Inc.,* 206 F.R.D. 358 (W.D.N.Y. 2001)...............................................................................22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*FTC v. Ivy Cap., Inc.,* 2011 WL 2470584 (D. Nev. June 20, 2011)........................23

*FTC v. John Beck Amazing Profits, LLC,* 2021 WL 4313101 (C.D. Cal. Aug. 19, 2021)...............................................................................................7, 23

*FTC v. Johnson*, 800 F.3d 448 (8th Cir. 2015)..........................................22

*FTC v. Nat'l Urological Grp., Inc.,* et al., 2021 WL 5774177 (N.D. Ga. Sept. 30, 2021)...................................................................................7

*FTC v. Noland,* 2021 WL 1237206 (D. Ariz. Apr. 2, 2021) ...................................22

*FTC v. Noland*, 2021 WL 3290461 (D. Ariz. Aug. 2, 2021)...................................19

*FTC v. Noland*, No. CV-20-00047-PHX-DWL, 2021 U.S. Dist. LEXIS 182346 (D. Ariz. Sep. 23, 2021) .........................................................21

*FTC v. On Point Glob. LLC*, 2020 WL 5819809 (S.D. Fla. Sept. 30, 2020) ..........23

*FTC v. Vyera Pharms., LLC*, 2021 WL 4392481 (S.D.N.Y. Sept. 24, 2021)....................................................................................................23

*FTC v. Zurixx, LLC*, 2021 WL 3510804 (D. Utah Aug. 10, 2021) .................. 15, 19

*Hawaii v. U.S. Dep't of Educ.*, 2010 WL 346445 (D. Haw. Jan. 29, 2010)............18

*Hawaii-Pac. Venture Cap. Corp. v. Rothbard*, 564 F.2d 1343 (9th Cir. 1977)........................................................................................................22

*Herb Reed Enters., Inc. v. Bennett*, 2012 WL 5989632 (D. Nev. Nov. 29, 2012)................................................................................................ 13, 15

*In re BofI Holding, Inc. S'holder Litig.*, No. 3:15-CV-02722-GPC-KSC, 2018 WL 2731954 (S.D. Cal. June 7, 2018) .....................................................9, 10

*Jones v. Wells Fargo Bank, N.A.*, 666 F.3d 955 (5th Cir. 2012) ...........................15

*League of Latin Am. Citizens v. Wilson*, 131 F.3d 1297 (9th Cir. 1997).... 12, 19, 24

*Mineworkers' Pension Scheme v. First Solar Inc.*, 722 F. App'x 644 (9th Cir. 2018)..........................................................................................25

*Montgomery v. United States*, 2012 WL 124854 (S.D. Cal. Jan. 17, 2012)............13

*Oregon Prescr. Drug Monitoring Program v. DEA*, 860 F.3d 1228 (9th Cir. 2017)...........................................................................................8

*Perlman v. Bank of Am., N.A.*, 561 F. App'x 810 (11th Cir. 2014)........................15

*Perlman v. Wells Fargo Bank*, N.A., 559 F. App'x 988 (11th Cir. 2014) .............14

*Perry v. Schwarzenegger*, 630 F.3d 898 (9th Cir. 2011)................................. 24, 25

iv

*Roman Cath. Bishop of Monterrey v. Cota*, No. CV-15-8065-JFW-RAOx,
  2016 WL 320741 (C.D. Cal. Jan. 8, 2016)...........................................17

*San Diego Unified Port Dist. v. Monsanto Co.,* 309 F. Supp. 3d 854 (S.D.
  Cal. 2018) ................................................................. 9, 10, 21

*SEC v. First Choice Mgmt. Servs., Inc*., 767 F.3d 709 (7th Cir. 2014)..................19

*SEC v. Heritage Trust Co.*, 402 F. Supp. 744 (D. Ariz. 1975)...............................4

*SEC v. Homestead Properties, L.P.*, 2009 WL5173685 (C.D. Cal. Dec.
  18, 2009).......................................................................................4

*Silberg v. Anderson,* 50 Cal. 3d 205 (1990)..............................................10

*Smith v. Los Angeles Unified Sch. Dist*., 830 F.3d 843 (9th Cir. 2016) 12, 14, 17, 19

*Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir. 2001)................21

*Thompson v. Wolverine Servs., LLC*, 2021 WL 827605 (N.D. Cal. Mar. 4,
  2021).........................................................................................24

*Town of Chester v. Laroe Estates*, 137 S.Ct. 1645 (2017) .............................8

*TransUnion LLC v. Ramirez,* 141 S. Ct. 2190 (2021) ................................9

*Trunk v. City of San Diego*, 2012 WL 6213712 (S.D. Cal. Dec. 12, 2012) ..... 16, 22

*U.S. v. Alisal Water,* 370 F.3d 915 (9th Cir. 2004) ......................... passim

*United States v. Lande*, 2008 WL 11490112 (D. Mont. Jan. 17, 2008) .......... 13, 17

*United States v. Oregon*, 913 F.2d 576 (9th Cir. 1990).................................13

*United States v. Petters*, 2009 WL 1174668 (D. Minn. Apr. 29, 2009),
  *aff'd sub nom. United States v. Ritchie Special Credit Invs., Ltd*., 620
  F.3d 824 (8th Cir. 2010).............................................................16

*Wells Fargo Fraudulent Acct. Opening Litig.,* 282 F. Supp. 3d 1360 (U.S.
  Jud. Pan. Mult. Lit. 2017).............................................................14

*Wiand v. Wells Fargo Bank, N.A.,* 86 F. Supp. 3d 1316 (M.D. Fla. 2015),
  *aff'd* 677 F. App'x 573 (11th Cir. 2017).............................................15

**Statutes**

15 U.S.C. § 53(b) ............................................................ passim

15 U.S.C. § 57b............................................................... passim

15 U.S.C. § 8401 *et seq*.................................................... passim

15 U.S.C. § 8403 .................................................................................................2, 4

15 U.S.C. § 8404 ............................................................................................. 3, 5, 6

**Rules**

Fed. R. Civ. P. 24 ...............................................................................................2

Fed. R. Civ. P. 24(a) ................................................................................. 12, 21

Fed. R. Civ. P. 24(b) ................................................................................ 23, 24

Fed. R. Civ. P. 59(e) ..........................................................................................8

Fed. R. Civ. P. 60 ..............................................................................................7

**Treatises**

Clark on Receivers § 329 (3d ed. 1959) ...........................................................11

Clark on Receivers § 378 (3d ed. 1959) ...........................................................11

Clark on Receivers § 54 (3d ed. 1959) ...............................................................4

Clark on Receivers § 696 (3d ed. 1959) ...........................................................11

Case No. 2:18-cv-9573-JFW(JPR)
FTC's Mem. Opposing Non-Party Wells Fargo's Motion to Intervene

## MEMORANDUM OF POINTS AND AUTHORITIES

Five months ago, this Court flatly rejected certain Defendants' efforts to invalidate the stipulated permanent injunctions in this case based on an April 2021 Supreme Court decision.  Now, non-party Wells Fargo seeks to intervene in this closed case, more than two and a half years after judgment and more than nine months after the Supreme Court decision, to do the same thing.  Viewed through any lens, its motion is baseless and should be denied.

Specifically, Wells Fargo seeks to intervene to attack judgments and a motion the Court granted two years ago authorizing the Court's receiver, Thomas McNamara (the "Receiver"), to hire counsel to sue Wells Fargo & Company and Wells Fargo Bank N.A. (together, "Wells Fargo").  The Receiver brought claims against Wells Fargo for torts and state-law violations the bank committed against the Corporate Defendants in this case and in the related *Triangle* Matter, where he is also receiver.  The Receiver brought suit pursuant to the preliminary and final judgments, which direct him to liquidate the Corporate Defendants' assets – including their claims – and turn the proceeds over to the Federal Trade Commission ("FTC") for consumer redress.

With settlement negotiations unsuccessful and facing the prospect of a litigated judgment, Wells Fargo now seeks to extinguish the Receiver's lawsuit by attacking years-old judgments in two courts.  Its professed basis is *AMG Capital Mgmt., LLC, v. FTC*, 141 S.Ct. 1341 (2021), in which the Supreme Court in April 2021 found the FTC cannot recover monetary relief under Section 13(b) of the FTC Act.  Wells Fargo suggests the judgments here were based "in whole on Section 13(b)," Docket No. 219 at 9, and are thus invalid.  The bank seeks to obfuscate that the judgments, and appointment of the Receiver, in fact rested not only on Section 13(b), but also on **separate statutory sections** – **Section 19** of the FTC Act, 15 U.S.C. § 57b, and the Restore Online Shoppers' Confidence Act ("**ROSCA**"), 15 U.S.C. § 8401 *et seq*. – that the Supreme Court left untouched and

1

that provide independent authority for monetary relief.  Tellingly, as Wells Fargo carefully avoids discussing, this Court already rejected just such a challenge to these judgments. Wells Fargo also avoids discussing its pending motion to intervene in the *Triangle* Matter, filed two months before this motion and raising the same arguments Wells Fargo makes here.

Finally, even if it did advance viable legal arguments, which it does not, Wells Fargo neither has standing to intervene, nor satisfies Rule 24's requirements for intervention.  Wells Fargo's conduct to date consists of endless delay to gain strategic advantage, which it seeks to excuse with weak, post-hoc rationalizations. Wells Fargo's delay, gamesmanship, and lack of a sufficient interest in this case are thus fatal to its Rule 24 requests.

**LEGAL ARGUMENT**

## I.  WELLS FARGO'S LEGAL AND FACTUAL BASES TO ATTACK THE STIPULATED JUDGMENTS ARE WITHOUT MERIT.

Wells Fargo's motion is premised on the idea that *AMG*, in eliminating monetary relief under Section 13(b), eviscerated the stipulated monetary judgments in this matter and thus the Receiver's authority to carry out those judgments.  The motion fails to recognize that ROSCA and Section 19 of the FTC Act continue to support the monetary judgments here, even after *AMG*.  Wells Fargo obscures the importance in this case of ROSCA and Section 19 of the FTC Act in an effort to paint the judgments as based solely on Section 13(b).  The truthful background is necessary to understand why Wells Fargo fails to meet its Rule 24 burdens.

### A.  ROSCA and Section 19 Provide an Independent Basis for the Monetary Relief Granted Here, Regardless of *AMG*.

While *AMG* ended the FTC's ability to obtain monetary relief under Section 13(b) of the FTC Act, the FTC can still obtain monetary relief and ancillary remedies, including a receiver, under ROSCA or Section 19.  Under ROSCA, certain marketing practices, like those the Defendants used, are prohibited.  *See* 15 U.S.C. § 8403.  Those acts "shall be treated as a violation of a rule" under the FTC

2

Act, and anyone who violates ROSCA "shall be subject to the penalties" (and limits) in the FTC Act.  *Id.* § 8404.  Section 19 of the FTC Act provides for "the refund of money" for violating an FTC rule.  15 U.S.C. § 57b(b).

To reach its desired result, Wells Fargo necessarily mischaracterizes post-*AMG* case law that the FTC can still obtain monetary relief under ROSCA and Section 19.  Wells Fargo baselessly suggests such recovery is limited to "cases in which a Section 19 allegation was alleged and proved – typically fully-litigated ROSCA violations."  Docket No. 219 at 17.  Tellingly, it cites no authority for its novel proposition that money available to a party that goes to trial is *impermissible* if that same party settles.  *Id.*  Even while claiming some purported uncertainty about Section 19 relief, Wells Fargo cites, but does not quote, *FTC v. Cardiff*, which expressly held: "Section 19 . . . plainly authorizes the FTC to seek equitable monetary relief to redress consumer injury resulting from ROSCA violations," and "**the change in law [*i.e., AMG*] had *no effect* on the availability of ROSCA Section 19 remedies.**"[1]  The post-*AMG* case law thus leaves __no question__ that the FTC may still obtain monetary relief pursuant to ROSCA and Section 19.  And where the FTC demonstrates it is likely to succeed on the merits of a ROSCA and Section 19 claim – as it did here, discussed below – courts may appoint a receiver to preserve assets for the FTC's eventual recovery.[2]  *See* Clark on Receivers § 54

---

[1] *Cardiff*, 2021 WL 3616071, at *2, *5 (C.D. Cal. June 29, 2021) (emphasis added); *see also FTC v. Simple Health*, 2021 WL 4050819 at *4 and n.8 (S.D. Fla. Sept. 5, 2021); *FTC v. Credit Bureau Ctr., LLC*, 2021 WL 4146884, at *2-3, *6 (N.D. Ill. Sept. 13, 2021).  Wells Fargo cites inapposite cases that, unlike here, *remained open*, had not reached judgment when *AMG* was decided, or did not involve ROSCA or Section 19 claims.  Docket No. 219 at 16.

[2] Indeed, multiple courts, including one assessing the impact of *AMG* on receiver appointments in FTC cases, have held receivers may be appointed even absent likely monetary recovery to prevent consumer harm.  *See FTC v. Noland*, 2021 WL 4318466, at *3 and n.2 (D. Ariz. Sept. 23, 2021); *see also CFTC v. Co Petro Mktg. Group, Inc.*, 680 F.2d 573, 583 (9th Cir. 1982); *SEC v. Heritage Trust*

(3d ed. 1959) (equity receivers are appointed to preserve property).

In a footnote, Wells Fargo falsely suggests Section 19 is too limited to provide a basis for the relief the FTC sought in this case. Docket No. 219 at 16 n.7 (claiming Section 19 "falls well short" of authority previously granted under Section 13(b)). However, Wells Fargo concedes Section 19 authorizes "such relief as the court finds necessary to redress injury to consumers … [including] the refund of money … [and] the payment of damages." *Id*. That is precisely the relief the parties stipulated to in this case. *See* Docket Nos. 120 and 121 at 22 (monetary judgment "as equitable monetary relief, which may include restitution").

**B.    The FTC Act, the Pleadings, and the Court's Prior Rulings Support the Receiver's Authority and the Final Judgments.**

At every stage of this case, the FTC sought, and the Court granted, a receivership and monetary relief *based on ROSCA and Section 19*. Wells Fargo only gestures in passing to this crucial fact. It states only that "this Court granted the TRO pursuant to Sections 13(b) and 19 of the FTC Act, Federal Rule of Civil Procedure 65 … and the All Writs Act," Docket No. 219 at 11, and omits the Court's express findings that there was good cause to believe the Defendants violated the FTC Act **and** ROSCA. Docket No. 16 at 4; Docket Nos. 40 and 41 at 3. Indeed, Wells Fargo references the FTC's ROSCA allegations and its reliance on that statute in seeking relief only once in 25 pages. Docket No. 219 at 10. Moreover, it glosses over the Court's repeated invocation of Section 19, Docket No. 219 at 11, and omits entirely that the Court granted final monetary relief based on violations of ROSCA and Section 19.

In fact, the FTC's Complaint detailed how Defendants' actions violated **Section 4 of ROSCA**, **15 U.S.C. § 8403**, along with several other statutes and regulations, when Defendants duped consumers into "free" or low-cost trial

---

*Co.*, 402 F. Supp. 744, 753 (D. Ariz. 1975); *SEC v. Homestead Properties, L.P.*, 2009 WL5173685, at *6 (C.D. Cal. Dec. 18, 2009).

products online, then charged them monthly without consent.[3]  Docket No. 1 at ¶¶ 1, 4-5, 35-64.  The FTC's Complaint sought a permanent injunction and monetary relief under several sections of three statutes, including **Section 19 of the FTC Act, 15 U.S.C. § 53(b)**, and **Section 5 of ROSCA, 15 U.S.C. § 8404**.  Docket No. 1 at ¶¶ 1, 4, 5, 87-113, 115-116, and pp. 35-36.[4]

The Court's TRO, which lasted 33 days, and ensuing stipulated Preliminary Injunctions against all Defendants were likewise based on findings that the FTC was likely to prove the Defendants violated **ROSCA**, along with the FTC Act and other statutes and regulations.  Docket No. 16 at 2, 3-5, Docket No. 40 at 1-4, Docket No. 41 at 1-4.  The Court expressly based these orders on its authority under Section 13(b) and **Section 19 of the FTC Act**, along with Federal Rule of Civil Procedure 65 and the All Writs Act.  *See* Docket No. 16 at 5, Docket No. 40 at 4, Docket No. 41 at 4.  Exercising its authority, the Court appointed a receiver over the Corporate Defendants and their affiliates (the "Receivership Entities") "with full powers of an equity receiver."  Docket No. 16 at 18-19 (to be "solely the agent of this Court"); Docket Nos. 40 and 41 at 18-19 (same).  The Court authorized the Receiver to "manage … all Assets of the Receivership Entities," "protect the interests of consumers who have transacted business with the

---

[3] Wells Fargo misleadingly says the Complaint alleged "a *single* violation of [ROSCA]."  Docket No. 219 at 10 (emphasis added).  In fact, the Complaint alleges what are *thousands* of ROSCA violations causing tens of millions of dollars in harm across two counts.  *See* Docket No. 1 at 32-33.

[4] Wells Fargo also has a pending motion to intervene in a related matter on the same grounds.  In 2018, the FTC also filed suit against other defendants alleging similar misconduct.  *See FTC v. Triangle Media Corp., et al*., No. 18-CV-1388 (S.D. Cal. Jun. 25, 2018) ("*Triangle* Matter").  That case reached judgment in 2019.  As in this action, the FTC sought monetary relief against the *Triangle* defendants under both Section 13(b) of the FTC Act and ROSCA, and obtained a receiver (McNamara).  Wells Fargo filed its motion to intervene in that matter on November 10, 2021.  *FTC v. Triangle Media Corp.*, Case No. 3:18-cv-01388-LAB-LL, Docket No. 153-1 (S.D. Cal. Nov. 11, 2021).

Receivership Entities," "employ attorneys . . . as the Receiver deems advisable or
necessary in the performance of duties and responsibilities under the authority
granted by this Order," "[i]nstitute, compromise, adjust, appear in, intervene in,
defend, dispose of, or otherwise become party to any legal action in state, federal,
or foreign courts or arbitration proceedings as the Receiver deems necessary and
advisable to preserve or recover the Assets of the Receivership Entities, or to carry
out the Receiver's mandate under this Order."  Docket Nos. 40 and 41 at 19-22.
The Receiver continues to exercise this authority, including by bringing the
Corporate Defendants' claims against Wells Fargo.  *See* Docket Nos. 186-1 and
198 (extending receivership to continue Receiver's suit against Wells Fargo).

　　　　Finally, the stipulated orders imposing permanent injunction and judgment
again rely not only on Section 13(b), but also **Section 19 of the FTC Act and
Section 5 of ROSCA**.  Docket Nos. 120 and 121 at 1-2.  On this basis, the Court
entered monetary judgments on September 11, 2019, that, among other things,
required the Receiver to "promptly take all steps necessary to liquidate the assets
of the Receivership Entities and, after such liquidation, [to] remit the net proceeds
to the Commission or its designated representative […]."  Docket No. 120 at 27.[5]
Monetizing the Corporate Defendants' claims against Wells Fargo is thus an
essential part of both the preliminary injunctions and final judgments.  On
February 4, 2020, the Receiver sought approval to hire counsel to bring the
Corporate Defendants' claims against Wells Fargo, Docket No. 144-1, which the
Court granted, Docket No. 153.

　　　　In sum, Section 19 and ROSCA remain proper bases for the FTC to seek and
the Court to grant monetary relief and appointment of a receiver, even after *AMG*.
Here, the FTC sought and the Court granted just that relief based on Section 19 and
ROSCA.  The entire premise of Wells Fargo's motion – that the Court's orders

---

[5] The Court later entered permanent injunctions as to other Defendants who
are not at issue in the Receiver's suit.  *See* Docket No. 142.

granting monetary relief and appointing and empowering the Receiver are "no longer consistent with the law" and "erroneously imposed," Docket No. 219 at 9, 19-21, 25, 27-28, 33 – is thus false.

### C. The Court Already Held *AMG* Provides No Basis to Attack the Judgments.

Wells Fargo barely alludes to the Court's ruling five months ago that *AMG* provides no basis to challenge the judgments in this case. Specifically, certain of the Defendants in this matter filed a motion under Federal Rule of Civil Procedure 60 seeking to modify the judgments based on *AMG*. Docket No. 182. That challenge is markedly similar to the one Wells Fargo seeks to bring, both resting on Rule 60(b)(5) and 60(b)(6). *Compare* Docket Nos. 182, 207 *with* Docket No. 219-1 at 20-26. This Court rejected that challenge. Docket No. 207 at 3-8. Wells Fargo relegates the Court's ruling to a tangential mention in a footnote.[6] Docket No. 219 at 16 n.8.

### D. Section 19's Ongoing Viability Means the FTC Can Maintain Its Judgments Regardless of the Outcome of Wells Fargo's Motions.

Because Section 19 remains a proper basis for monetary relief in this case, even if the Court found the existing monetary judgments infirm because they invoked Section 13(b), the FTC, alone or with the Corporate Defendants, could

---

[6] Notably, Wells Fargo also fails to inform the Court that several courts, including in this district, have denied *AMG*-based attacks on judgments under Rule 60. "[G]iven the similarity between Section 19(a)(1) and Section 13(b)," courts have rejected such motions even where the court, unlike this Court, "did not make an ***express*** finding under Section 19" in the original judgment. *See FTC v. John Beck Amazing Profits, LLC*, 2021 WL 4313101, at *5 (C.D. Cal. Aug. 19, 2021) (emphasis in original); *cf. Credit Bureau*, 2021 WL 4146884, at *8 (relief under Section 19 is for "the same remedy" as sought under Section 13(b)); *see also FTC v. AH Media Grp., LLC*, 2021 WL 5053092, at *1 (N.D. Cal. Nov. 1, 2021) (*AMG* is no basis to overturn a stipulated judgment under Rules 60(b)(4), -(5), or -(6)); *FTC v. Nat'l Urological Grp., Inc.*, 2021 WL 5774177 (N.D. Ga. Sept. 30, 2021) (*AMG* is no basis to overturn litigated contempt judgment under Rule 60(b)(5) and -(6)).

simply engage in senselessly duplicative efforts to reach the same result. For instance, the parties could resettle the case to expressly exclude Section 13(b) from the final stipulated orders as it relates to monetary relief. Or, the FTC could seek Rule 59(e) relief to state explicitly that the final monetary relief rests solely on Section 19 and ROSCA, similar to the outcome in *Credit Bureau Ctr., LLC*, 2021 WL 4146884, at *2-3, *12 (in ROSCA case, granting FTC's motion to reimpose monetary relief under Section 19 after orders invoking solely Section 13(b) were reversed). Regardless of the mechanism, such an outcome would waste immense amounts of the Court's and parties' time, only to reach the same result.

## II.   WELLS FARGO LACKS STANDING TO INTERVENE.

Proposed intervenors must have independent Article III standing "in order to pursue different relief from that sought by . . . the plaintiff." *Oregon Prescr. Drug Monitoring Program v. DEA*, 860 F.3d 1228, 1231, 1233 (9th Cir. 2017); *Town of Chester v. Laroe Estates*, 137 S.Ct. 1645, 1651 (2017). Their injury must not be speculative, but "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Oregon Prescr.*, 860 F.3d at 1234-35 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Wells Fargo lacks standing for two key reasons: the "injuries" it alleges are insufficient to confer standing, and it fails to establish its "injury" will be redressed by a favorable decision.

### A.   Wells Fargo Neither Alleges Nor Establishes Sufficient Injury.

Wells Fargo alleged "injury" is insufficient to confer standing. Specifically, its asserted "injury" is: (1) the possibility it may have to pay a monetary judgment if the Receiver's suit is successful; (2) purported, but speculative, "reputational harm" from the mere filing of that suit; and (3) the attendant "litigation costs" of defending the suit. Docket No. 219 at 19-20. In fact, courts in this Circuit have repeatedly found such "injury" insufficient to confer Article III standing.

Wells Fargo couches the first type of injury as "injury as a result of the

erroneous orders in this proceeding that . . . improperly imposed monetary judgments under Section 13(b) that are now being applied prospectively against it" by way of "the Receiver's authority to pursue litigation against Wells Fargo pursuant to an invalidated legal principle." Docket No. 219 at 19-20. As discussed above, this premise (that the judgments and orders empowering the Receiver are erroneous) is false. For standing, the injury Wells Fargo **may** face from "the Receiver's authority to pursue litigation against [it]" is **conditional**, *i.e.*, based on the Receiver's potential future success in securing a judgment. In *Monsanto,* the district court rejected possible future monetary judgments as a basis for standing. *San Diego Unified Port Dist. v. Monsanto Co*., 309 F. Supp. 3d 854, 866-867 (S.D. Cal. 2018) ("The threat that Monsanto may be found liable in this action . . . or future actions remains speculative" for standing to raise counterclaims).

Nor does "reputational harm … as the result of" filing a lawsuit, Docket No. 219 at 20, constitute a cognizable injury. Courts determining whether reputational harm is sufficient to convey standing do so by asking whether it meets the test for defamation, including whether one alleges *actual* harm from the claimed loss of reputation. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2207–08 (2021); *see also In re BofI Holding, Inc. S'holder Litig.,* No. 3:15-CV-02722-GPC-KSC, 2018 WL 2731954, at *11 (S.D. Cal. June 7, 2018) ("Without an allegation tying the otherwise nebulous loss of BofI's reputation [from litigation] to an event showing actual or imminent harm, that allegation of injury is insufficient to demonstrate standing."). Like the bank in *BofI Holding*, Wells Fargo has not alleged an iota of actual or imminent harm from the "loss" of their (already tarnished) reputation.[7]

---

[7] It is remarkably presumptuous of Wells Fargo to cry "reputational harm" from a suit alleging that it opened accounts without sufficient due diligence, when *Wells Fargo itself has already admitted* to that very behavior and paid *billions* in fines for it. *See* Dept. of Justice, *Wells Fargo Agrees to Pay $3 Billion to Resolve Criminal and Civil Investigations into Sales Practices Involving the Opening of*

Even if it had, California, like other states, applies an "absolute privilege" making all statements made in litigation non-defamatory. *E.g., Silberg v. Anderson*, 50 Cal. 3d 205, 212-215 (1990) (discussing purpose of privilege); *Christonson v. United States*, 415 F. Supp. 2d 1186, 1195 (D. Ida. 2006) (discussing privilege under California law). Accordingly, Wells Fargo's claimed "reputational harm" from allegations in a complaint cannot form the basis for defamation, is neither actual nor imminent, and is thus not sufficient injury to confer standing.

Further, litigation costs that arise from ongoing, contingent litigation – which is itself not a cognizable injury – do not confer standing. *See Monsanto*, 309 F. Supp. 3d at 866-67 ("Litigation costs are insufficient to establish standing for purposes of Article III."); *see also Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939, 942 (9th Cir. 2021) (litigation costs not a basis for standing); *BofI Holding*, 2018 WL 2731954, at *9, 11 (litigation costs incurred during ongoing litigation are not a basis for standing; standing only existed based on costs incurred in completed internal investigation unrelated to ongoing litigation).

### B. Wells Fargo's Alleged "Injury" Would Not Be Redressed by a Decision in Its Favor.

Even if Wells Fargo had shown a cognizable injury, it fails to establish "a likelihood that an injury-in-fact will be redressed by a favorable decision." *Monsanto,* 309 F. Supp. 3d at 867. First, even assuming its supposed reputational harm "as the result of the Receiver's filing [suit]," Docket No. 219 at 20, is actionable, it cannot be redressed by their intervention or dissolution of the receivership because that proverbial horse left the barn in July 2021, when the

---

*Millions of Accounts without Customer Authorization*, Feb. 21, 2020, available at https://www.justice.gov/opa/pr/wells-fargo-agrees-pay-3-billion-resolve-criminal-and-civil-investigations-sales-practices, and Wells Fargo Statement of Facts, available at https://www.justice.gov/opa/press-release/file/1251346/download (accessed Feb. 3, 2022); *cf. Ward v. News Grp. Intern., Ltd.*, 734 F. Supp. 83, 85 (C.D. Cal. 1990) (truth is an absolute defense to defamation action).

10

Receiver filed suit.  Further, Wells Fargo itself cannot cogently explain how granting its motion would redress its claimed injury because it cannot decide what relief it actually seeks.  Docket No. 219 at 21.  Wells Fargo in some instances disclaims that it seeks to vacate the judgments, Docket No. 219 at 25-27, Docket No. 219-1 at 4 n.1; in others expressly seeks to "vacate" the "monetary judgments within the Stipulated Settlements," Docket No. 219-1 at 4, 20-22; and in yet others seeks to "modify the terms of the receivership to align with current law," without explaining what that means, Docket No. 219-1 at 19.  If Wells Fargo cannot even explain what remedy would suffice after *years* of its attorneys "assess[ing]" and conducting "research and analysis," Docket No. 219 at 18, 26, there is no way for the Court to grant an effective remedy.

Moreover, and dispositively, even if *the Receiver* could not sue Wells Fargo, *the Corporate Defendants* would still have the ability to bring their claims against the bank.  *See* Clark on Receivers § 329 (3d ed. 1959) (receiver takes only what the "corporation had previous to the appointment of the receiver and no more"); *id.* § 378 (receiver acts as custodian of assets akin to trustee); *id.* § 696 (remaining assets to original owner on receiver's discharge); *cf. CAMOFI Master LDC v. Assoc. Third Party Admins.,* 2018 WL 839134, at *6 (N.D. Cal. Feb. 13, 2018) (claims revert to original owner when trusteeship ends).  Critically, the *AMG* decision is not in any way relevant to the Corporate Defendants' claims against Wells Fargo.  *AMG* solely affected the FTC's ability to obtain monetary relief under Section 13(b) of the FTC Act. 141 S.Ct. at 1344.  Contrary to Wells Fargo's insinuations, Docket No. 219 at 14, the Corporate Defendants' claims are tort and state-law claims, not based at all on the FTC Act.  Docket No. 219-3 (Receiver's complaint) ¶¶ 236-312.  Wells Fargo's claimed injury from the Corporate Defendants' claims against it would thus remain even if the right to bring the claims passed from the Receiver to another.

## III.   WELLS FARGO HAS NOT MET ITS BURDEN TO INTERVENE AS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**OF RIGHT.**

Even if it had standing, which it does not, Wells Fargo cannot meet its burden to intervene as of right.  To do so, it must establish: (1) timeliness, (2) a "significantly protectable" interest relating to the property or transaction that is the subject of the action, (3) disposition of the action may impair or impede the movant's ability to protect the interest, and (4) its interest is not adequately represented by the parties.  *Cooper v. Newsom*, 13 F.4th 857, 864-65 (9th Cir. 2021).  Failure to satisfy any one of these elements is fatal.  *Id.* at 865.  The factors are broadly interpreted in favor of intervenors.  *Id.*  However, "post judgment intervention," like that Wells Fargo seeks, "is generally disfavored because it creates delay and prejudice to existing parties."  *Calvert v. Huckins*, 109 F.3d 636, 638 (9th Cir. 1997) (cleaned up); *see also Alaniz v. Tillie Lewis Foods,* 572 F.2d 657, 659 (9th Cir. 1978) (post-consent decree intervention "is reserved for exceptional cases.").  Wells Fargo cannot meet its burden on any element.

**A.      The Motion Is Untimely.**

"Timeliness is the threshold requirement for an intervention as of right." *League of Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997) (cleaned up); *see* Fed. R. Civ. P. 24(a).  Courts focus on three primary factors in assessing timeliness: (1) the stage of the proceeding at which a movant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay.  *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016).

**1.      The proceeding is closed and Wells Fargo knew, or should
have known, its interests were at risk long ago.**

Courts evaluate the stage of the proceeding both in general and in relation to how long an applicant has known or should have known their interests were at risk. *See, e.g., Smith,* 830 F.3d at 854-56.

**a)      The proceeding is closed.**

Nearly two and a half years ago, the Court entered stipulated final judgments

12

in this matter that include the relief Wells Fargo now seeks to undo, and then closed the case on January 15, 2020.  Docket Nos. 126, 127, 142.  In general, courts in closed cases hold intervention untimely when brought far sooner than here.  *See United States v. Lande*, 2008 WL 11490112, at *1 (D. Mont. Jan. 17, 2008) (moving just *four days* after a judgment "indicates the motion's untimeliness"); *Herb Reed Enters., Inc. v. Bennett*, 2012 WL 5989632, at *4 (D. Nev. Nov. 29, 2012) (denying intervention in closed case as untimely 16 months after movant knew of the order at issue); *cf. Montgomery v. United States*, 2012 WL 124854, at *1, 8 (S.D. Cal. Jan. 17, 2012) (moving 22 days after the parties noticed their settlement "weighs heavily against" timeliness).

Importantly, Wells Fargo's intervention would require the Court to relitigate the stipulated judgments, the preliminary injunctions appointing and empowering the Receiver, and the order authorizing the Receiver to hire counsel.  Where movants "desire to relitigate issues already determined," it is "especially true" that the timeliness factor "weighs heavily against" them.  *Alaniz*, 572 F.2d at 659 and n.2; *United States v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990) ("[W]aiting until after entry of a consent decree weighs heavily against intervention.").  Further, intervention is "disfavored" where – as here – a party seeks intervention "merely to thwart a remedy rather than participate in the future administration of the remedy." *U.S. v. Alisal Water,* 370 F.3d 915, 922 (9th Cir. 2004).  These considerations are even more potent where the parties could simply reach the same result through wasteful duplicative litigation, *see* Section I.D *supra*, and where Wells Fargo seeks to relitigate issues the Court has already determined – the vitality of the parties' settlements in light of *AMG* and the preliminary injunctions, *see* Section I.C *supra*.

**b)      Wells Fargo has long known its interests were at risk.**

Court have long held the date when an intervenor had notice that his or her rights might be in jeopardy is an essential inquiry in assessing the stage of the proceeding.  "A party must intervene when he knows *or has reason to know* that

his interests *might be* adversely affected by the outcome of litigation." *Alisal Water*, 370 F.3d at 923 (emphasis added).  This is the "crucial date for assessing the timeliness of a motion to intervene." *Smith*, 830 F.3d at 854.

Wells Fargo's role in this case began even before the FTC filed its Complaint.  It allegedly knew of Defendants' unlawful acts as they occurred.  *See* Docket No. 219-3 at 25-65 (Receiver's complaint).  In 2017, it responded to an FTC administrative subpoena and identified numerous accounts it opened for the Defendants.  *See* Docket No. 2-5 ¶¶ 32-33.  The FTC served the Court's TRO on Wells Fargo in November 2018, which it acknowledged by letter.  Decl. of Brian Lasky ("Lasky Decl.," Exh. A) at ¶¶ 4, 5.  The bank then froze the Defendants' accounts and participated in discovery.  *See* Lasky Decl. ¶ 5; Docket No. 219 at 12.  At that time, Wells Fargo was also subject to regulatory and criminal investigations as well as civil litigation over its improper account opening practices, the same category of wrongs underlying the Receiver's suit.  *See generally* Docket No. 219-3 (Receiver's complaint) at 15-16 ($185 million in fines in 2016; *one billion dollars* in 2018 fines); *In re Wells Fargo Fraudulent Acct. Opening Litig.,* 282 F. Supp. 3d 1360 (U.S. Jud. Pan. Mult. Lit. 2017) (10 open cases).

Additionally, Wells Fargo knew as it was freezing Defendants' accounts that receivers in cases initiated by the FTC have sued banks, *including Wells Fargo*, pursuant to their duties under the court order appointing them.  *See, e.g., Perlman v. Wells Fargo Bank*, N.A., 559 F. App'x 988, 989 (11th Cir. 2014).  In such cases, the receivers do not allege FTC Act violations – which can only be prosecuted by the FTC and cannot be brought against banks, *see* 15 U.S.C. § 45(a)(2) – but instead assert a range of tort and state-law claims arising from the banks' conduct.  *See id.*  Receivers appointed in other civil enforcement actions bring similar cases.[8]

---

[8] *See Wiand v. Wells Fargo Bank, N.A.,* 86 F. Supp. 3d 1316, 1320 (M.D. Fla. 2015) (resolving at summary judgment SEC receiver's claims against Wells

Under all these circumstances, Wells Fargo was at least on notice to monitor this litigation for events that might adversely affect its interests.

The crystallizing event when Wells Fargo undoubtedly knew, *or had reason to know*, its interests *might be* adversely affected by this litigation came when the Receiver filed his motion to hire counsel **to sue Wells Fargo on February 4, 2020** (Docket No. 144-1). Wells Fargo did not move to intervene then; during extensive settlement talks, including when the Receiver gave the bank his draft complaint; when the Receiver filed suit; or when the Receiver moved to extend the case to continue suing Wells Fargo. *See* Docket No. 186; Decl. of Logan Smith (Exh. B) at ¶¶ 10-36. Nor did the decision in *AMG* give rise to a new interest. Instead it merely gave Wells Fargo an additional citation for the arguments it seeks to make about the scope of 13(b), and which it could have made even before *AMG* by challenging the circuit's precedent on the topic, as the *AMG* litigants themselves did. *See FTC v. Zurixx, LLC*, 2021 WL 3510804, at *4 (D. Utah Aug. 10, 2021) (*AMG* "[a]t best affects the strength" of proposed intervenors' position); *AMG Capital Mgmt. LLC v. FTC*, 910 F.3d 417, 429-437 (9th Cir. 2018) (O'Scannlain, J., concurring, addressing litigants' 13(b) argument).

Instead of moving to intervene, Wells Fargo sat on the sidelines, losing whatever ability to intervene it may have held. *See Cal. Dep't of Toxic Substances Control v. World Cleaners, Inc.*, 2017 WL 4769439, at *1 (C.D. Cal. 2017) ("A potential intervenor is not allowed to sit on its rights for the entire litigation to see how things turn out and then move at the late stages of the case for a 'do-over.'"); *Herb Reed*, 2012 WL 5989632, at *4 (denying intervention where applicant "made

Fargo), *aff'd*, 677 F. App'x 573 (11th Cir. 2017); *Perlman v. Bank of Am., N.A.*, 561 F. App'x 810, 811 (11th Cir. 2014); *Jones v. Wells Fargo Bank, N.A.*, 666 F.3d 955, 958-59 (5th Cir. 2012) (affirming disposition on merits of SEC receiver's claim for conversion against Wells Fargo); *Cotton v. Wells Fargo Bank N.A.*, 2011 WL 13227816, at *1 (C.D. Cal. Feb. 22, 2011) (SEC receiver's claims against Wells Fargo for multiple common law claims).

a strategic decision" to pursue other path for months before attempting to intervene); *Trunk v. City of San Diego*, 2012 WL 6213712, at \*1-2 (S.D. Cal. Dec. 12, 2012) ("neither the proposed intervenors nor the Court can adopt a wait-and-see attitude"). Tellingly, the bank waited until after certain Defendants gave their *AMG* theories a test run, which this Court rejected in September 2021, Docket No. 207. Indeed, the bank finally sought intervention on November 10, 2021 – but not in this case. Instead, it moved to intervene in the related *Triangle* Matter. *FTC v. Triangle Media Corp.*, Case No. 3:18-cv-01388-LAB-LL, Docket No. 153-1 (S.D. Cal. Nov. 11, 2021). It did not file its motion to intervene *in this case* until January 18, 2022, after it had the benefit of reviewing the FTC's and Receiver's oppositions to its motion in the *Triangle* Matter.[9]

Even under Wells Fargo's view of the triggering date, the bank's motion is long delayed. Specifically, it argues (incorrectly) that "an actionable dispute warranting intervention" only arose after the Receiver filed suit on July 8, 2021 (195 days before the Motion), Docket No. 219 at 24. First, this ignores the actual legal standard, as one must move to intervene "when he ***knows or has reason to know*** that his interests ***might*** be adversely affected by the outcome of litigation,"

---

[9] Wells Fargo's motion comes well after the period other courts found untimely in cases challenging receivership actions. *See FTC v. Cardiff*, 2020 WL 766336, at \*4 (C.D. Cal. 2020), *aff'd*, 830 F. App'x 844 (9th Cir. 2020) (delay of just *two months* after protected interest arose from order related to receivership was untimely and "[a]ny purported 'steps' taken during that time period are insufficient to justify" the delay); *United States v. Petters*, 2009 WL 1174668, at \*5 (D. Minn. Apr. 29, 2009), *aff'd sub nom.*, *United States v. Ritchie Special Credit Invs., Ltd.*, 620 F.3d 824 (8th Cir. 2010) (delay of "over five months" deemed untimely to challenge appointment of receiver). The delay is more profound given Wells Fargo's repeated assertion it has actively assisted in the case as a witness going back years. *See* Docket No. 219 at 12, 23; *Am. Int'l Specialty Lines Ins. Co. v. United States*, 2012 WL 12897865, at \*2 (C.D. Cal. Jan. 30, 2012) (intervention untimely where movant "actively assisted" in case for three years yet waited until three months before the damages phase to intervene).

16

*Alisal Water*, 370 F.3d at 923 (emphasis added), and cannot wait until it and other litigants test different theories in different venues.  Second, as discussed in Section III.A.3 below, Wells Fargo provides no valid reason for delaying *more than six months* after the date the bank itself claims as the proper time to intervene.

## 2.   Wells Fargo's delay prejudices the parties.

Wells Fargo's intervention would prejudice the parties.  *See Smith*, 830 F.3d at 854.  Delay and prejudice caused by post-judgment intervention is the very reason such action is "generally disfavored."  *Calvert*, 109 F.3d at 638.  At its core, as discussed above, Wells Fargo seeks to upset the judgments in this case.  If it is permitted to intervene, the FTC (and consumers) would be prejudiced in four ways.

First, as a general principle, it is "reasonable for the Court to conclude that the United States would suffer prejudice . . . because the case is concluded and the United States has attained a Judgment after the litigation had been pending" for many months.  *See Lande,* 2008 WL 11490112, at *1.

Second, Wells Fargo's motion directly threatens the existing final orders, which is significantly prejudicial to the parties.  *Roman Cath. Bishop of Monterrey v. Cota*, No. CV-15-8065-JFW-RAOx, 2016 WL 320741, at *4 (C.D. Cal. Jan. 8, 2016) (Walter, J.) ("Allowing intervention after final judgment is highly disfavored because it results in severe prejudice to the other parties to the action. … [Intervention] would also unfairly disturb the myriad of subsequent agreements negotiated and entered into in good faith"), *aff'd sub nom., Roman Cath. Bishop of Monterey v. Cota*, 711 F. App'x 428 (9th Cir. 2018).  Wells Fargo falsely claims, Docket No. 219 at 25, that it "carefully framed its pleadings precisely not to negatively impact the parties' settlements."  Essentially, the bank protests it is not attacking the judgments even as it does exactly that.  As discussed above, Wells Fargo's motion is founded on the faulty premise that the settlements are "erroneous," making no distinction between the monetary provisions that affect

17

Wells Fargo and those that do not.  *See* Docket No. 219 at 9, 19-21, 25, 27-28, 31. Further, liquidation of the Corporate Defendants' claims by the Receiver was an essential element of the settlement, and no party can be forced to settle on new terms (*e.g.*, the same provisions absent one essential provision).  The infirmity of Wells Fargo's position is underscored by the very case it cites, *Cal. Dep't of Toxic Substances Control v. Com. Realty Projects, Inc.*, 309 F.3d 1113, 1120 (9th Cir. 2002).  In *Commercial Realty*, the Ninth Circuit *upheld* a *denial* of intervention precisely *because of the prejudice* in "threaten[ing] the parties' settlement" and that it would "upset the delicate balance achieved by the [parties'] Consent Decree."[10]  *Id.* at 1119.  Wells Fargo simply cannot have it both ways – get rid of the Receiver because the monetary award against the defendants was impermissible, but leave the award in place so that the parties suffer no prejudice.

Third, the FTC would have to litigate the intervenors' claims.  *See Calvert*, 109 F. 3d at 638.  Such litigation would involve issues Wells Fargo did not raise, but could have, before the settlements were final (*e.g.,* about the scope of Sections 13(b) and 19) – and which the Court already decided in entering the final orders and denying the Defendants' Rule 60 motion.  *See* Section III.A.1, *supra; Hawaii v. U.S. Dep't of Educ.*, 2010 WL 346445, at *3 (D. Haw. Jan. 29, 2010) (finding prejudice in having to "relitigate old issues" and new ones where "case was already closed and judgment entered" a year earlier); *see also Alisal Water*, 370 F.3d at 922 (finding prejudice where a movant seeks to "inject new issues into the litigation at this late date").[11]

---

[10] The other case Wells Fargo cites for no prejudice is inapposite because it involved an *ongoing* case with no existing settlements to upset.  *See* Docket No. 219 at 25; *Day v. Apoliona*, 505 F.3d 963, 965-66 (9th Cir. 2007).

[11] Wells Fargo's delay has already meant added costs for the Receivership to negotiate and litigate the claims against the bank and for a court to adjudicate the motion to dismiss the Receiver's suit.  *Cf. SEC v. First Choice Mgmt. Servs., Inc.*,

1    Fourth, if the intervenors' proposed action succeeded, it would cause the

2 FTC to engage in senseless duplicative litigation to obtain the same results. *See*

3 Section I.D *supra*. Forcing the parties to re-litigate the case would delay and

4 threaten the redress for defrauded consumers. Indeed, redress has already begun in

5 the related *Triangle* Matter, in which Wells Fargo first sought to intervene under

6 the same theory as in this case. *See* FTC, *FTC Returns Money to People Who*

7 *Were Charged for "Risk-Free" Trial Products*, available at

8 https://www.ftc.gov/enforcement/cases-proceedings/refunds/triangle-media-

9 refunds (accessed February 3, 2022); *FTC v. Triangle Media Corp.*, Case No. 3:18-

10 cv-01388-LAB-LL, Docket No. 153-1 (S.D. Cal. Nov. 11, 2021).

11                    **3.    Wells Fargo gives no valid reason for its delay.**

12    Wells Fargo seeks to intervene well beyond any reasonable time to have

13 done so, and it cannot meet its burden to show an adequate reason for its delay.

14 *See Smith*, 830 F.3d at 854. Wells Fargo's two-year delay is critical because "any

15 substantial lapse of time weighs heavily against intervention." *Wilson*, 131 F.3d at

16 1302 (internal quotation marks omitted).

17    As discussed above, *AMG* is not a change in circumstances that could excuse

18 Wells Fargo's delay, because it did not affect the monetary relief granted in this

19 case. Thus, the decision does not undermine either the Receiver's appointment or

20 the Corporate Defendant's common law claims against Wells Fargo. Courts have

21 denied recent similar requests to intervene based on the argument that *AMG*

22 excused the intervenor's delay when brought far earlier than here. *See FTC v.*

23 *Noland*, 2021 WL 3290461, at *1, *4 (D. Ariz. Aug. 2, 2021) (denying as untimely

24 *AMG*-based intervention filed just 41 days after *AMG* and "nearly five months

25 after their interests arose"); *FTC v. Zurixx, LLC*, 2021 WL 3510804, at *4 (D. Utah

26 Aug. 10, 2021) (same, where interest arose 18 months earlier). At most, *AMG* is

27
28 767 F.3d 709, 711 (7th Cir. 2014) (prejudice where movant's "dawdling"
"imposed costs on the receiver and . . . made added work for the district court").

another argument for Wells Fargo to make (albeit a losing one), but does not change the date it knew or should have known its interests may be affected.

Even Wells Fargo's own admitted six-month lapse since the Receiver's complaint is unjustified. The bank offers only post-hoc rationalizations for its delay after that point, claiming it could not intervene until the Court unsealed the TRO and the Receiver's declarations describing the bank's relationship with the Defendants. Docket No. 219 at 18-19, 24. Wells Fargo repeatedly calls these documents "necessary" to its intervention (Docket No. 219 at 18) even though it *already had this information.* The FTC served the TRO on the bank (which acknowledged receipt) in November 2018, and provided it another copy on November 10, 2021.[12] Lasky Decl. at ¶¶ 4-6. The bank also already knew, better than anyone, what actions it took and did not take on behalf of the Corporate Defendants, without need to reference the Receiver's declarations. Wells Fargo incredibly claims in its proposed motion it needed those declarations because they "explain[ed] the Receiver's intent to sue," Docket No. 219-1 at 24, even though the Receiver *had already sued* it. Nor does Wells Fargo even attempt to explain *why* these documents – either the 33-day TRO, or the Receiver's declarations, whose substance it never mentions – were "necessary" to inform it that its "interests might be adversely affected by the outcome of litigation," *Alisal Water*, 370 F.3d at 923.

## B.   Wells Fargo Lacks a Significantly Protectable Interest.

Wells Fargo cites not one case supporting its theory that its interest in not paying the costs and suffering the embarrassment of being sued, Docket No. 219 at

---

[12] The FTC told Wells Fargo that as a courtesy it would not hold against the bank the time it took for the Court to unseal the TRO. That period consisted of 31 days, from the FTC's November 10, 2021 offer until the December 10, 2021 unsealing. The FTC therefore does not rely upon that 31-day delay, but notes that period is irrelevant because, as discussed above: (a) Wells Fargo already had the TRO for three years, and (b) the sealed documents did not affect when the bank knew or should have known its interests might be affected.

27-28, is a *significantly protectable* interest.  Nor can it cite any such case, because it lacks such an interest for the same reasons it lacks standing.  *See* Section II; *Monsanto*, 309 F. Supp. 3d at 866-867.  Moreover, Well Fargo fatally (but erroneously) concedes it had no "actionable" basis to intervene prior to July 8, 2021, Docket No. 219 at 24, and its post-July rationalizations (*i.e.,* that it could not intervene until the Court unsealed irrelevant documents) in no way explain why its *interests* changed at that point, when Wells Fargo had known for over a year that the Receiver intended to sue it.  Even Wells Fargo's reliance on *AMG* as creating a protectable interest is baseless, given, as discussed above, that *AMG* neither undermined the settlements in this case nor affected the Corporate Defendants' state and common-law claims against the bank.[13]  *See* Sections I, II.B *supra*.

### C.     Wells Fargo's Ability to Protect Its Interest Is Not Impaired.

Rule 24 requires a movant to be "so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a)(2).  This factor is present if "an absentee would be substantially affected in a practical sense by the determination made in an action." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001).

Disposition of this case cannot, by definition, substantially impair Wells Fargo's ability to protect its interest—assuming for argument's sake it has one— for three reasons.  First, the Rule envisions intervention in an ongoing case in which the future disposition could affect the non-party's rights.  This case is closed.  There is no future disposition that can affect Wells Fargo because there is

---

[13] Wells Fargo cites a case for its "protectable interest" that it misleadingly describes as holding, "post-*AMG*, the scope of a receiver's duties is to prevent . . . future harm, not to pursue monetary relief."  Docket No. 219 at 28 (citing *FTC v. Noland*, No. CV-20-00047-PHX-DWL, 2021 U.S. Dist. LEXIS 182346, at *11-14 (D. Ariz. Sep. 23, 2021)).  In fact, the *Noland* court held Section 19 monetary relief *remains* "an additional basis on which to justify the receivership."  *Noland*, 2021 U.S. Dist. LEXIS 182346, at *15.

nothing left for the Court to decide in the dispute between the FTC and the Defendants.  Second, as discussed in Section II.B *supra*, even if *the Receiver* could not sue Wells Fargo, *the Corporate Defendants* still could.  In other words, Wells Fargo's supposed interest (avoiding a suit for its offenses against the Corporate Defendants) cannot be impaired by the Receiver because those claims survive, even if not brought by the Receiver.  Third, the underlying case did not (and does not) impair any defense Wells Fargo could raise in its current litigation with the corporations.  In fact, that seems to be the point – because Wells Fargo feels it cannot succeed on the merits in that case, it is trying to effectively fire the Receiver *post hoc*.  A movant does not establish impairment of their rights as a practical matter where they can still make the same arguments apart from the case in which they seek to intervene.  *See Hawaii-Pac. Venture Cap. Corp. v. Rothbard*, 564 F.2d 1343, 1346 (9th Cir. 1977).

### D.   Wells Fargo's Interests Are Adequately Protected.

Wells Fargo also cannot meet its burden to show its interests have not been adequately protected by the parties.  *See Cooper*, 13 F.4th at 864-65.  It fails to refute the "legal presumption that the government's representation in a matter of shared interest will be adequate." *Trunk*, 2012 WL 5269307, at *2 (quoting *United States v. Carpenter*, 298 F.3d 1122, 1125 (9th Cir. 2002)); *see also FTC v. Johnson*, 800 F.3d 448, 452 (8th Cir. 2015); *FTC v. First Cap. Consumer Membership Servs., Inc.*, 206 F.R.D. 358, 364 (W.D.N.Y. 2001).  As a result, "[c]ourts have tended to deny requests by nonparties to intervene in FTC enforcement actions." *FTC v. Noland*, 2021 WL 1237206, at *7 (D. Ariz. Apr. 2, 2021) (citing *Johnson*, 800 F.3d at 450-51).  Wells Fargo does not make a "very compelling showing to the contrary." *See Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (quoting 7C Wright, Miller & Kane § 1909, at 332).

Here, the FTC and Wells Fargo share the "same ultimate objective," which is "[t]he most important factor in determining the adequacy of representation"—

that receivers appointed in FTC cases follow the law, including *AMG*. *See id.* 324 F.3d at 1086. In those cases where *AMG* eliminated all monetary relief, the FTC has not stood still. *See SuperTherm*, 2021 WL 3419035, at *3 ("[T]he FTC withdrew its request for equitable monetary relief in light of [*AMG*]."); *Cardiff,* 2021 WL 3616071, at *1 (same); *FTC v. Vyera Pharms., LLC*, 2021 WL 4392481, at *2 (S.D.N.Y. Sept. 24, 2021) (same). Where necessary, the FTC has explained Section 19 is an appropriate substitute basis for monetary relief, and courts should not waste their "significant time and resources" (and the parties') to relitigate issues merely to "arriv[e] at the same or a substantially similar end result." *See John Beck,* 2021 WL 4313101, at *5-6; *see also Credit Bureau*, 2021 WL 4146884, at *11-12 (granting FTC motion to amend judgment in light of *AMG* to impose "the same consumer redress" under Section 19 instead of Section 13). Further, where the FTC is at odds with a receiver, including on Section 13(b), it pushes back. *E.g., FTC v. On Point Glob. LLC,* 2020 WL 5819809, at *5 (S.D. Fla. Sept. 30, 2020) (denying FTC's request for a "special receiver or independent counsel" where FTC disagreed with receiver's interpretation of Section 13(b) and the order appointing the receiver); *FTC v. Ivy Cap., Inc*., 2011 WL 2470584, at *4 (D. Nev. June 20, 2011) (agreeing with FTC opposition to receiver proposal).

The Receiver's suit is consistent with what other receivers appointed in FTC cases have done to pursue claims against third parties where warranted. *See* Sec. II.A.1.b, *supra.* Were there some *ultra vires* act, the FTC would say so.

## IV.   WELLS FARGO HAS NOT MET ITS BURDEN TO INTERVENE BY PERMISSION.

The Motion fares no better under the standard for permissive intervention. Such a motion must again be "timely." Fed. R. Civ. P. 24(b). The proposed intervenor must "[have] a claim or defense that shares with the main action a common question of law or fact," and "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties'

23

rights." Fed. R. Civ. P. 24(b)(1)(B), 24(b)(3).  Movants bear the burden to establish these threshold elements, and the court may deny intervention even if they do.  *Cooper,* 13 F.4th at 868.  Courts consider other factors, including:

> the nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case[,] whether the intervenors' interests are adequately represented by other parties[,]and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

*Thompson v. Wolverine Servs., LLC*, 2021 WL 827605, at *1 (N.D. Cal. Mar. 4, 2021) (quoting *Perry v. Schwarzenegger*, 630 F.3d 898, 905 (9th Cir. 2011)). These *Perry* factors here weigh strongly against intervention, as detailed below, even though common issues of law or fact may be present.

### A.  The Motion Is Untimely Under the "More Strict[]" Standard.

For permissive intervention, courts "analyze the timeliness element more strictly than . . . intervention as of right."  *Wilson*, 131 F.3d at 1302.  The Motion is untimely for the reasons explained above, which is dispositive for permissive intervention as well.  *See id.*; Section III.A, *supra.*  Oddly, the lone case Wells Fargo cites on this factor, Docket No. 219 at 32, makes clear that "[i]ntervention after entry of a consent decree is reserved for exceptional cases."  *Alaniz*, 572 F.2d at 659; *see also Calvert*, 109 F.3d at 638 (post-judgment intervention "generally disfavored").  Wells Fargo does not establish what makes its cause "exceptional." *See Alaniz*, 572 F.2d at 659.

### B.  The Parties Would Be Prejudiced by Intervention.

Tellingly, Wells Fargo includes only a conclusory assertion that the parties would not be prejudiced by its intervention.  *See* Docket No. 219 at 24-25; Fed. R. Civ. P. 24(b)(3).  Permitting Wells Fargo to re-litigate these matters prejudices the FTC, Receiver, and Defendants.  *See* Section III.A.2, *supra*; *see also Mineworkers'*

*Pension Scheme v. First Solar Inc.*, 722 F. App'x 644, 646 (9th Cir. 2018) (upholding denial of permissive intervention to relitigate issue already decided). On the other hand, Wells Fargo maintains all its defenses and discovery rights in its separate litigation with the Corporate Defendants and thus would not be prejudiced if intervention is denied.

### C.  Other Factors Weigh Against Intervention.

Many other *Perry* factors weigh against intervention.  *See Perry*, 630 F.3d at 905.  First, Wells Fargo lacks standing.  *See* Section II, *supra*.  Second, Wells Fargo's interests have been adequately represented.  *See* Section III.D, *supra*. Third, the legal position Wells Fargo seeks to make is unfounded and has been rejected by this Court and other district courts that considered similar arguments. *See* Section I, *supra*.  Fourth, the nature and extent of Wells Fargo's interest is in parading myriad claims that are not extant in this case to try and immunize itself from a multi-million dollar suit.  Based on such a tenuous, tangential connection to the matters the original action resolved, it is not appropriate to re-open years-old judgments and orders to compel the FTC and Defendants to re-stipulate to judgments or litigate a case they settled.  Fifth, Wells Fargo's participation will not significantly contribute to the full development of the factual issues in this case precisely because it is closed.  Finally, Wells Fargo will not significantly contribute to the just and equitable adjudication of the legal issues *in this case*.

### CONCLUSION

The FTC respectfully requests the Court deny Wells Fargo's motion.

Dated:  February 7, 2022                    _____/s/_____

JONATHAN W. WARE
DELILAH VINZON (local counsel)

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2022, the foregoing document and attachments were filed electronically in the Court's Electronic Case Filing system ("ECF"); thereby upon completion the ECF system automatically generated a Notice of Electronic Filing ("NEF") as service through CM/ECF to registered e-mail addresses of parties of record in the case.

_/s/_ _____

Delilah Vinzon
