**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES -- GENERAL**

| | | |
|---|---|---|
| Case No. | **CV 18-9573(JFW)(JPRx)** | Date: March 10, 2022 |
| Title: | Federal Trade Commission v. Apex Capital Group, LLC, et al. | |

**PRESENT:**

**HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| **Shannon Reilly** | **None Present** |
| **Courtroom Deputy** | **Court Reporter** |

| | |
|---|---|
| **ATTORNEYS PRESENT FOR PLAINTIFFS:** | **ATTORNEYS PRESENT FOR DEFENDANTS:** |
| None | None |

**PROCEEDINGS (In Chambers): ORDER DENYING PROPOSED INTERVENORS' MOTION TO INTERVENE [filed 1/18/22; Docket No. 219]**

On January 18, 2022, Proposed Intervenors Wells Fargo & Company and Wells Fargo Bank N.A. ("Wells Fargo") filed a Motion to Intervene ("Motion"). On February 7, 2022, Plaintiff Federal Trade Commission ("FTC") filed its Opposition. On February 7, 2022 the Receiver, Thomas W. McNamara ("Receiver") filed his Opposition. On February 21, 2022, Wells Fargo filed its Reply. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument. The matter was, therefore, removed from the Court's March 7, 2022 hearing calendar and the parties were given advance notice. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

**A.    This Action**

On November 14, 2018, the FTC filed a Complaint against Apex Capital Group, LLC ("Apex"), together with its two United States based principals, Phillip Peikos ("Peikos") and David Barnett ("Barnett"), Omni Group Ltd. ("Omni"), and ten United Kingdom registered shell companies (collectively, the "Apex Defendants"). Docket No. 1. The FTC alleged that the Apex Defendants engaged in a massive scheme to offer phony "free trials" of personal care products and dietary supplements in order to obtain consumers' credit and debit card information and then placed recurring charges on the cards without the consumers' authorization. The Court granted the FTC's *Ex Parte* Application for a Temporary Restraining Order with Asset Freeze, Appointment of a Receiver and other Equitable Relief and the parties' Joint Application for Preliminary Injunction with Asset Freeze, Receiver and other Equitable Relief, and issued a Temporary Restraining Order and then Orders regarding Stipulated Preliminary Injunctions appointing a Receiver to oversee,

manage and preserve the assets of the corporate defendants. ("Receivership Entities"). Docket Nos. 2, 16, 40 & 41.

On May 30, 2019, the FTC filed a First Amended Complaint, which added the Transact Pro Defendants. Docket No. 73. In the First Amended Complaint, the FTC alleged two claims against the Transact Pro Defendants: (1) credit card laundering in violation of Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTC Act") (Count VI); and (2) chargeback manipulation in violation of Section 5 of the FTC Act (Count VII). The FTC also alleged that the Apex Defendants and Transact Pro Defendants worked together to perpetuate this scheme through credit card laundering and chargeback manipulation. The FTC sought, amongst other remedies, equitable monetary relief under Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57(b), Section 5 of the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8404, and Section 918(c) of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693 (o)(c). Docket No. 73.

On September 11, 2019, the Court entered a Stipulated Order for Permanent Injunction and Monetary Judgments ("Stipulated Judgments") against the Apex Defendants pursuant to a settlement between the FTC and the Apex Defendants. See Docket Nos. 120 and 121. In the Stipulated Judgments, the Apex Defendants agreed that they would, among other things, be liable for monetary damages. In addition, the Stipulated Judgments required the Receiver to take all steps to liquidate the assets of the Receivership Entities for the benefit of the victims, and granted the Receiver the power to file actions to collect and recover any assets under the Receivership Entities' control. Id.

On January 15, 2020, the Court entered a Stipulated Judgment pursuant to a settlement between the FTC and the Transact Pro Defendants. See Docket Nos. 141 and 142. In the Stipulated Judgment, the FTC and the Transact Pro Defendants agreed that the Transact Pro Defendants would, among other things, pay monetary damages.

### B.      The Receiver's Action Against Wells Fargo

On February 4, 2020, the Receiver sought and subsequently received the Court's permission to bring the Receivership Entities' claims against Wells Fargo. The Receiver presented evidence demonstrating that the Receiver had meritorious claims against Wells Fargo for its role in the phony "free trial" scheme. Specifically, the Receiver presented compelling evidence that the Apex Defendants used Wells Fargo to open up a large number of fraudulent, shell accounts which were used to process consumers' credit and debit card payments. (Docket No. 144-1). The Receiver filed a complaint against Wells Fargo on July 8, 2021, alleging Aiding and Abetting Fraud, Conspiracy to commit Fraud, Breach of Fiduciary Duty and other state law causes of action in an action entitled *McNamara v. Wells Fargo & Company et al.,* CV 21-1245 AJB (JLB) (S.D. CA July 8, 2021) (Docket No. 1). ("San Diego Action").[1] The complaint alleges that Wells Fargo used "atypical banking procedures" including ignoring red flags such as high charge back rates, discrepancies in account information and the nature of the high risk internet business, to aid the

---

[1] The San Diego Action also includes claims involving another "free trial" scheme against an entirely different group of defendants in which the Receiver alleges Wells Fargo played the same role.

Apex Defendants in perpetuating their fraud. *Id.* at 14. On August 25, 2021, Wells Fargo filed a Motion to Dismiss the Complaint in the San Diego Action. In the Motion to Dismiss, Wells Fargo primarily argues that the Receiver has failed to state a claim upon which relief can be granted in that the Complaint fails to meet pleading requirements for fraud, conspiracy and aiding abetting. (*Id.;* Docket No. 14-1*).* Wells Fargo's Motion to Dismiss has not yet been decided.

      **C.**      **The Transact Pro Defendants' Motion to Set Aside the Monetary Portion of the Stipulated Permanent Injunction and Monetary Judgment**

On April 22, 2021, in an unrelated action, the Supreme Court unanimously held that Section 13(b) of the FTC Act does not authorize the FTC to seek, or a court to award, equitable monetary relief. *AMG v. Capital Management, LLC v. Federal Trade Commission*, 141 S. Ct. 1341, 1344 (2021). On July 9, 2021, in this action, the Transact Pro Defendants filed a Motion to Modify, Vacate or Set Aside the Monetary Portion of Stipulated Permanent Injunction and Monetary Judgment ("Motion to Modify Judgment") based on the Supreme Court's decision in *AMG*. Docket No. 182. In light of the Supreme Court's holding in *AMG*, the Transact Pro Defendants sought to set aside that portion of the Stipulated Judgment requiring the payment of $3.5 million in equitable monetary relief on the grounds that: (1) the Stipulated Judgment is void for lack of jurisdiction pursuant to Rule 60(b)(4); (2) prospective enforcement of the equitable monetary relief portion of the Stipulated Judgment would be inequitable pursuant to Rule 60(b)(5); and (3) the profound change in law announced by the Supreme Court in *AMG* creates "extraordinary circumstances" necessitating relief pursuant to Rule 60(b)(6). The FTC argued that the Transact Pro Defendants' Motion to Modify Judgment was meritless, and that the Transact Pro Defendants elected to settle knowing that the Supreme Court had granted *certiorari* and agreed to review the issue of whether Section 13(b) of the FTC Act authorized the FTC to seek equitable monetary relief.

The Court denied the Motion to Modify Judgment on September 3, 2021. Docket No. 207. The Court concluded that: (1) the Transact Pro Defendants were not entitled to relief under Rule 60(b)(4) because the established case law prior to the Supreme Court's decision provided an "arguable basis" for the Court's exercise of jurisdiction in issuing the Stipulated Judgment; (2) the Transact Pro Defendants were not entitled to relief under Rule 60(b)(5) because a monetary judgment does not qualify as "prospective" under Rule 60(b)(5), even if it is unpaid; and (3) the Transact Pro Defendants were not entitled to relief under Rule 60(b)(6) in light of the fact that at the time they made the decision to settle they were fully aware of the nature and extent of the challenges to the FTC's authority to recover equitable monetary relief pursuant to Section 13(b), and even used those challenges to negotiate a more favorable settlement.

Wells Fargo now seeks to permission to intervene in this case in order to launch a second attack on the Stipulated Judgments based on the Supreme Court's holding in the *AMG* case. Wells Fargo contends that because the "Court's Orders are no longer consistent with the law" the Receiver's state law claims alleged in the San Diego Action, which rely on the Stipulated Judgments, are somehow limited or precluded. Docket No. 219 at 9. As a result, Wells Fargo claims that intervention in this action is necessary to protect its interests in the San Diego Action.

## II.   DISCUSSION

### A.   Wells Fargo Does Not Have Article III Standing

Wells Fargo contends that it is entitled to intervene as a matter of right under Rule 24(a)(2). An intervenor as of right must have Article III standing to pursue relief that is different from that which is sought by a party with standing.  *Town of Chester, N.Y. v. Laroe Estates, Inc.,* 137 S. Ct. 1645, 1651 (2017).  In order to establish standing, the proposed intervenor's injury must be:  (1) concrete, particularized and actual or imminent;  (2) fairly traceable to the challenged action; and (3) redressable by a favorable ruling.  *Oregon Prescription Drug Monitoring Program v. DEA*, 860 F.3d 1228, 1234-35 (9th Cir. 2017).  Wells Fargo argues that its injury consists of the "Receiver's authority to pursue litigation against Wells Fargo pursuant to an invalidated legal principle," and the "resulting reputational harm and litigation costs," including potential damages, arising from the San Diego Action.  Docket No. 201 at 20.  This injury, however, fails to meet the requirements to establish standing.

First, injuries stemming from the cost or potential damages of litigation are insufficient to confer standing.  *San Diego Unified Port District v. Monsanto Co.,* 309 F. Supp. 3d 854, 866-67 (S.D. Cal. 2018).  Moreover, Wells Fargo fails to make a particularized showing of any reputational harm as a result of the San Diego Action. *See In re Bofl Holding, Inc., Shareholder Litigation*, 2018 WL 2731954 at *11 (S.D. Cal. 2018) (No standing without specific link tying the otherwise nebulous loss reputation to an event showing actual or imminent harm).

Second, Wells Fargo fails to establish that its injury could be redressed through intervention in this case. Wells Fargo has already been sued in the San Diego Action–nothing can change that alleged reputational harm. Nor can Wells Fargo show that the relief it seeks in this case would affect its exposure to potential damages in the San Diego Action.  Wells Fargo contends that the *Amgen* ruling precludes the Receiver from seeking monetary damages against it in the San Diego Action.  Wells Fargo's argument, however, fails for several reasons.  In *Amgen*, the Supreme Court held that Section 13(b) of the FTC Act does not grant the FTC authority to obtain equitable monetary relief.  141 S. Ct. at 1352.  However, the Stipulated Judgments in this action were also based on the FTC's claims for equitable monetary relief under FTCA Section 19 and Section 5 of ROSCA.   Those claims were not affected by the *AMG* holding. *FTC v. Cardiff*, 2021 WL 3616071 at *2 (C.D. Cal. 2021) (Section 19 plainly authorizes the FTC to seek equitable monetary relief to redress consumer injury resulting from ROSCA violations).  Nor did *Amgen* affect the state law claims that are not based on the FTC regulatory scheme brought against Wells Fargo in the San Diego Action.  Thus, even if the Court modified the Stipulated Judgments in this case to preclude the Receiver from seeking to recover monetary damages under Section 13(b), the Receiver could still pursue damages under Section 19 and ROSCA and the state law claims.

Accordingly, because Wells Fargo has not suffered a concrete injury that could be addressed through intervention, the Court concludes that Wells Fargo lacks standing to intervene in this case.

### B. Wells Fargo Is Not Entitled to Intervention as a Matter of Right

Even if Wells Fargo could establish standing, Wells Fargo fails to meet the Ninth Circuit's four-part test to determine whether intervention should be granted as a matter of right: (1) the motion to intervene must be timely; (2) the proposed intervenor must have a "significant protectable interest" in the action; (3) the disposition of the action may, as a practical matter, impede that interest; and (4) the existing parties must not adequately represent that interest. *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998).

First, Wells Fargo's Motion is not timely. "A potential intervenor must act 'as soon as he [or she] knows *or has reason to know* that his [or her] interests might be adversely affected by the outcome of the litigation.'" *Chavez v. PVH Corp.*, 2014 WL 6617142, at *5 (N.D. Cal. Nov. 20, 2014) (emphasis and alterations in original) (*quoting Cal. Department of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1120 (9th Cir. 2002)). In the Ninth Circuit, courts generally consider "three factors to determine whether a motion to intervene is timely: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *League of United Latin American Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997) (internal quotation marks omitted).

The critical question here is when Wells Fargo should have been aware that its interests might be adversely affected by the proceedings in this case. Wells Fargo contends that its intervention was timely–it filed the Motion after the Receiver filed the San Diego Action in July 2021, and after it investigated a few matters supposedly relevant to its Motion. The record, however, demonstrates that Wells Fargo was on notice that its interests could be affected far earlier. The Receiver filed a Motion asking the Court for permission to sue Wells Fargo on February 4, 2020, and fully disclosed the results of the Receiver's investigation into the potential claims against Wells Fargo. In addition, the Receiver entered into negotiations with Wells Fargo to explore resolution of the Receiver's potential claims against it in April 2020. Docket No. 144-1 & 225-2. After the parties' negotiations failed to result in a resolution, the Receiver filed the San Diego Action against Wells Fargo on July 8, 2021. In addition, the Transact Pro Defendants moved to modify the Stipulated Judgments based on the *Amgen* decision–the same relief Wells Fargo intends to seek if permitted to intervene--on July 9, 2021.

Even if the key event here was the filing of the San Diego Action, Wells Fargo failed to act in a timely manner. Most telling is that Wells Fargo contemplated filing a Motion to Intervene in August 2021, before the Court issued its ruling denying the Transact Pro Defendants' Motion to Modify Judgment. Docket No. 226-5. Yet, despite clear evidence that it knew its interests would be affected, Wells Fargo did not bring its Motion to Intervene until January 2022, well after the Court had denied the Transact Pro's Motion to Modify Judgment. Morever, Wells Fargo has failed to offer an adequate explanation for this inordinate delay. *See United States v. State of Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996) (holding that the motion to intervene was not timely when it was brought late in the proceedings without any explanation for the delay). Wells Fargo's failure to timely intervene so that the Court could have considered its motion at the same time it heard the Transact Pro Defendants' Motion to Modify Judgment demonstrates the prejudice to the parties in this litigation. *Hawaii v. U.S. Department of Education*, 2010 WL 346445 at *3 (D. Haw. 2010) (finding prejudice in having to relitigate old issues where the case is already closed and the judgment had been entered a year earlier); *Calvert v. Huckins*, 109 F.3d 843, 854 (9th Cir.

2016) (intervention after final judgment is highly disfavored because it results in severe prejudice to the parties to the action).

Finally, the fact that this case has been closed since January 2020 weighs heavily against intervention. In considering motions to intervene, courts have long recognized the importance of protecting settlements. *See Orange County v. Air California*, 799 F.2d 535, 538 (9th Cir. 1986) ("Although Irvine did intervene before the Stipulated Judgment was officially approved by the district court, the fact that Irvine waited until after all the parties had come to an agreement after five years of litigation should nevertheless weigh heavily against Irvine"); *California Department of Toxic Substances*, 309 F.3d 1113, 1119 (9th Cir. 2002) ("[T]he district court, which presided over the complex litigation for more than six years, did not abuse its discretion in finding prejudice to the parties, since intervention by Cities would complicate the issues and upset the delicate balance achieved by the Oil Consent Decree"); *United States v. State of Washington*, 86 F.3d 1499, 1504 (9th Cir. 1996) ("The district court found that the other parties would be prejudiced by the requested intervention, because intervention would complicate the issues and prolong the litigation. This was not an abuse of discretion").

The second Rule 24(a) factor necessary for intervention as of right requires that Wells Fargo demonstrate a significant protectable interest in this case. For the same reason that Wells Fargo's litigation exposure fails to establish an injury sufficient to confer standing, the Court concludes that Wells Fargo lacks a significantly protectable interest in this case.

The third factor requires that the intervenor demonstrate that it would be unable to protect its interests if the action were to proceed without intervention. Here, even if Wells Fargo could demonstrate a protectable interest, the Court concludes that Wells Fargo can adequately protect that interest outside of this litigation. As previously discussed, notwithstanding *Amgen*, the Receiver continues to properly assert claims for monetary damages against Wells Fargo. Moreover, Wells Fargo will be able to assert any of the arguments it intended to make in this case in its defense in the San Diego Action.[2] Wells Fargo thus fails to establish the third requirement for intervention as of right.

Accordingly, the Court concludes that Wells Fargo is not entitled to intervene as of right pursuant to Rule 24(a).

### B.     Wells Fargo is Not Entitled to Permissive Intervention

Wells Fargo argues in the alternative that it is entitled to permissive intervention under Rule 24(b). Permissive intervention may be granted when "(1) [there are] independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 955 (9th Cir. 2009). In addition, even if these requirements are met, the district court still has discretion to deny intervention. *Id.* In exercising its discretion, the district court must consider whether the intervention will "unduly delay or prejudice adjudication of the

---

[2] The Court notes that Wells Fargo chose not to raise the *Amgen* issue in its Motion to Dismiss the Receiver's Complaint in the San Diego Action.

original parties' rights." *Id.* at 956 (holding the district court did not abuse its discretion in denying permissive intervention where intervention would unduly delay proceedings).  The same timeliness factors apply to requests for intervention as of right and permissive intervention. *Wilson*, 131 F.3d at 1308.  "In the context of permissive intervention, however, [courts] analyze the timeliness element more strictly than ... with intervention as of right." *Id.*  "[A]ny substantial lapse of time weighs heavily against intervention." *Id*. at 1302 (internal quotation marks omitted).

For the reasons discussed above with respect to intervention as a matter of right under Rule 24(a), the Court exercises its discretion and denies Wells Fargo's request for permissive intervention under Rule 24(b).

## IV. CONCLUSION

For all the foregoing reasons, Wells Fargo's Motion is **DENIED**.

IT IS SO ORDERED.