Logan D. Smith (SBN 212041)
lsmith@mcnamarallp.com
McNamara Smith LLP
655 West Broadway, Suite 900
San Diego, California 92101
Telephone: 619-269-0400
Facsimile: 619-269-0401

*Attorneys for Receiver,*
*Thomas W. McNamara*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

FEDERAL TRADE COMMISSION,

Plaintiff,

v.

APEX CAPITAL GROUP, LLC, et al.,

Defendants.

Case No. 2:18-cv-09573-JFW (JPRx)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RECEIVER'S MOTION TO APPROVE SETTLEMENT AGREEMENT WITH WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A.**

JUDGE: Hon. John F. Walter
CTRM: 7A
DATE: September 8, 2025
TIME: 1:30 p.m.

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1
II. SUMMARY OF LITIGATION AND PROCEDURAL HISTORY ........ 5
A. The Federal Trade Commission's Lawsuits Against Apex, Triangle, and Tarr ........ 5
B. The Receiver's Investigation of Wells Fargo And Request to Hire Contingency Counsel ........ 6
C. Pre-Litigation Settlement Efforts and Mediation ........ 7
D. The Receiver's Complaint and Defendants' Motions To Dismiss ........ 7
E. Motions for Summary Judgment and Consolidation ........ 8
F. The Parties' Successful Settlement Conference Following Summary Judgment Hearing ........ 9
III. ARGUMENT ........ 10
A. The Settlement Will Result In a Substantial Recovery for the Apex and Triangle Receivership Estates, which Will Then Be Distributed via FTC Redress to Apex and Triangle Consumers ........ 10
B. The Settlement Uses the FTC's Established Redress Mechanisms in the Apex and Triangle Cases; Tarr Class Consumers' Distributions will be made through a Claims Administrator ........ 12
1. The Settlement Structure and Plan of Allocation. ........ 12
2. Approval of Legal Fees and Expenses and Receivership Costs ........ 14
IV. CONCLUSION ........ 16

The Court-appointed receiver, Thomas W. McNamara (the "Receiver") respectfully moves the Court to approve a proposed settlement with Wells Fargo & Company and Wells Fargo Bank, N.A. (collectively "Wells Fargo"), which fully resolves *McNamara v. Wells Fargo & Company, et al.* (S.D. Cal.), Case No. 3:21-CV-01245-TWR-DDL (the "Receiver Action") for the reasons discussed below.

The Federal Trade Commission ("FTC") has been informed of the proposed settlement and does not oppose this motion.[1]

The proposed settlement will, if approved, substantially enlarge the Receivership Estate and, thereby, the funds available for additional FTC consumer redress. The Receiver believes it is an excellent result after years of hard-fought litigation and respectfully requests the Court approve the settlement.

## I. INTRODUCTION

On February 4, 2020, the Receiver filed a motion requesting permission to engage contingency counsel on behalf of the Apex Entities to pursue Wells Fargo. *See* Apex Receiver's Motion to Engage Contingency Counsel (ECF No. 144-1) at 1. On March 9, 2020, after holding a hearing, the Court granted the Receiver's request. *See* ECF No. 153 (Apex Order Authorizing Contingency Counsel).

The Receiver engaged in significant pre-suit settlement efforts, including two mediations. After those efforts failed, in July of 2021, the Receiver filed the Receiver Action against Wells Fargo on behalf of the Apex Entities and entities also in receivership in an FTC action filed in the Southern District of California related to Triangle Media ("Triangle Entities").[2] A proposed class of consumers brought a parallel lawsuit, covering a class of consumers for the Apex Entities, the Triangle Entities, and a third group of entities known as Tarr Inc. ("Tarr"), which

[1] The Receiver is aware of Local Rule 7-3, however, he is currently unaware of any "opposing party" to this motion. The FTC has indicated it does not oppose the motion.

[2] *See FTC v. Triangle Media Corporation, et al.*, 3:18-cv-01388 (LAB-LL) (S.D. Cal.) (the "Triangle Action").

were also sued by the FTC but had no receiver appointed. *See McCraner et al. v. Wells Fargo & Company et al*, Consolidated with Case No. 3:21-CV-1246-TWR-DDL (S.D. Cal.) ("McCraner Action" or "Class Action").

After years of vigorous litigation, including dozens of motions and extensive discovery proceeding through oral argument on summary judgment, the parties reached a settlement which, if approved, will resolve all Receiver and Class claims brought against Wells Fargo in exchange for a lump-sum payment of $33 million. The ultimate distributions to consumer victims in Apex and Triangle will occur within the existing FTC redress processes, while the Tarr consumers will receive settlement payments via the Class process.[3]

The Settlement was reached after many years of hotly-contested litigation, which included:

i. The Receiver and his counsel's comprehensive investigation into the actions of Wells Fargo employees before and then after the motions to retain contingency counsel, which included a review of voluminous business records of Apex and Triangle and the hiring of a pre-complaint expert consultant, a former bank regulator;

ii. The Receiver and his counsel's participation in pre-filing mediation, which included exchanging substantial mediation statements and two all-day mediation sessions with the Honorable Daniel Weinstein (Ret.) and Ambassador David L. Carden of JAMS, experienced and highly respected mediators of complex litigation, including class action lawsuits;

iii. Drafting a complaint based on the investigation of the Receiver and his counsel. Receiver Action, Dkt. No. 1;

iv. Briefing and defeating an initial motion to dismiss on the claims alleging aiding and abetting fraud, aiding and abetting breach of fiduciary duty, aiding and abetting fraudulent transfer, aiding and abetting conversion, and civil conspiracy. Receiver Action, Dkt. No. 20;

v. Successfully amending the Complaint to add a count alleging a violation of Section 496(c) under California State law, a count that had been initially dismissed. Receiver Action, Dkt. Nos. 220 & 221;

[3] Consumers victimized in the Apex or Triangle schemes but who did not participate in the original Apex and Triangle FTC redress programs will also be eligible for Class settlement payments.

vi. Successfully opposing Wells Fargo's motion to intervene in this case, and in the Triangle case, and then successfully defending those rulings on appeal to the Ninth Circuit;

vii. Conducting extensive fact and expert discovery over the course of nearly a year and a half, including:

a. Propounding five sets of requests for production of documents, four sets of written interrogatories, and one set of requests for admission, and responding to one set of document requests and two sets of written interrogatories propounded by Wells Fargo (and additional separate discovery in the Class Action lawsuit);

b. Reviewing and analyzing more than a million documents produced by Defendants and third parties and including documents that the Receiver took possession of after entry of the TRO;

c. Engaging in extensive expert discovery, including providing opening and rebuttal reports from experts in forensic accounting and bank regulations, as well as taking or defending the depositions of all proffered experts;

d. Addressing and resolving numerous discovery disputes, including through regular and extensive motion practice, on issues including the application of the SAR privilege, the applicability of the Apex doctrine to purportedly high-ranking Wells Fargo employees seeking not to be deposed, the scope and contours of Rule 30(b)(6) depositions requested by both sides, the failure to produce documents for certain custodians, and several other claimed discovery deficiencies, all of which resulted in regular hearings before Judge Leshner (in total, the Parties participated in approximately two dozen hearings and conferences before the Court); and

e. Participating in more than 25 fact depositions in the Receiver's case (including taking depositions of more than twenty percipient fact witnesses, and defending six depositions during discovery in the Receiver's case alone) – and participating in nearly 50 total depositions once discovery during the Class Action lawsuit is considered.

viii. Opposing Defendants' motions for summary judgment on two separate occasions, including identifying and submitting evidence raising fact disputes, providing expert testimony, and participating in summary judgment oral argument;

ix. Engaging in extensive arms-length settlement negotiations with Wells Fargo overseen by the assigned Magistrate Judges, which included participating in two day-long mediation sessions that ultimately resulted in a double-blind mediator's recommendation by the Magistrate Judge to settle the case for $33 million, which the parties accepted (independently and without knowing whether the other side accepted) in December 2024; and

x. Negotiating and executing global settlement agreements in the Receiver Action and Class Action (a process that itself took nearly six months).

The settlement came only after extensive litigation over four years and is the result of robust arm's-length negotiations conducted by experienced counsel, with the assistance of well-respected mediators. Ultimately, the $33 million settlement figure was proposed by an experienced Magistrate Judge who presided over the case for several years.

The Receiver agreed to accept the settlement only after evaluating the risks and uncertainties of continued litigation. This included factoring Wells Fargo's aggressive and well-funded defense over more than four years, an approach expected to continue through trial and appeal.

The Receiver is submitting a similar motion to approve the settlement in the Triangle case. The settlement is expressly contingent on Court approval here, in Triangle*,* as well as in the Class Action. Judge Robinson in the Southern District of California presides over (1) Triangle, (2) the Receiver Action, and (3) the Class Action.[4]

Only after approval is obtained from this Court and the Triangle Court will Class Action counsel submit a Motion for Preliminary Approval of the Class Action settlement. If that motion is approved, then notice to all prospective members of the Class will be distributed and a hearing will be scheduled to consider final approval of the settlement.

[4] The Receiver will report to this Court if Judge Robinson approves the settlement in the Triangle matter before this Court has issued an order in this case; alternatively, if this Court approves the settlement first, then the Receiver will report that fact to Judge Robinson.

## II. SUMMARY OF LITIGATION AND PROCEDURAL HISTORY

### A. The Federal Trade Commission's Lawsuits Against Apex, Triangle, and Tarr

Apex, Triangle, and Tarr ran online "risk free trial" schemes which deceptively marketed and sold consumer products online. Although strikingly similar in operation, they were separate schemes. Consumers were offered "free" trials of consumer products on social media sites for "just the cost of shipping and handling." But shortly after consumers signed up for the "trial," they were charged the full price of the product and enrolled in continuity plans which imposed monthly charges without consumer consent. Cancelling or obtaining a refund was difficult. All three were shut down by enforcement actions filed by the FTC. In two of these cases, Apex and Triangle, a receiver was appointed; in Tarr, no receiver was appointed.

In the Apex and Triangle (and Tarr) cases, the FTC sued to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten gains, and other equitable relief.

On November 14, 2018, the FTC brought an enforcement action against Defendants Apex Capital Group, LLC, its principal owners Phillip Peikos and David Barnett, and related entities (collectively "Apex"). ECF No. 1. This Court granted the FTC's *ex parte* Application for a Temporary Restraining Order with Asset Freeze, Appointment of a Receiver, and other Equitable Relief. The FTC alleged that Apex engaged in a large scheme to offer phony "free trials" of personal care products and dietary supplements in order to obtain consumers' credit and debit card information and then placed recurring charges on the cards without the consumers' authorization. ECF No. 238.[5] The Stipulated Judgments

[5] On September 11, 2019, the Court entered Stipulated Orders for Permanent Injunction and Monetary Judgments ("Stipulated Judgments") against Apex pursuant to a settlement between the FTC and Apex. ECF Nos. 120 & 121. The

required the Receiver to take all steps to liquidate the assets of the Receivership Entities for the benefit of the victims and granted the Receiver the power to file actions to collect and recover any assets. The Receiver was ordered by the Court to remit the net proceeds to the FTC or its designated representative. ECF No. 120 at 28. Triangle and Tarr involved similar schemes based in Southern California, which were also shut down after enforcement actions by the FTC.[6]

### B. The Receiver's Investigation of Wells Fargo And Request to Hire Contingency Counsel

In carrying out his court-ordered overlapping duties in Apex and Triangle to preserve and recover assets of the Receivership Estates, the Receiver investigated whether there were claims that should be brought against Wells Fargo. The investigation involved the review of thousands of pages of internal Apex and

---

Stipulated Judgment against defendant David Barnett included equitable monetary relief based on Section 5 of the FTC Act, 15 U.S.C. § 45, Section 4 of ROSCA, 15 U.S.C. § 8403, Section 907(a) of EFTA, 15 U.S.C. § 1693e(a), and Section 1005.10(b) of Regulation E, 12 C.F.R. § 1005.10(b), in the amount of $47,300,000. ECF No. 120 at 2, 22–24. The Stipulated Judgment against Philip Peikos and Apex included the equitable monetary relief under the same laws in the amount of $60,300,000, jointly and severally. ECF No. 121 at 2, 22–32.

[6] As to Triangle, in June 2018, the FTC brought a lawsuit in the Southern District of California against Triangle Media Corporation and related entities and individuals. The FTC's requests for a TRO and then Preliminary Injunction, asset freeze, and the appointment of a receiver were granted. Triangle ECF Nos. 11 & 75. The Court ultimately entered two Stipulated Judgments in Triangle (for $48,1110,267.14 as to Triangle Media and Brian Phillips (Triangle ECF No. 126) and for $123,095,43.18 as to Hardwire Interactive, Inc., Global Northern Trading Limited, and Devin Keer (Triangle ECF No. 127).

The Receiver was appointed receiver and tasked with preserving the value of the assets of the Receivership Estate and was authorized to institute actions to preserve or recover those assets. *See* Triangle ECF No. 75 at 18-19. Like in Apex, the Triangle TRO authorized the Receiver to institute legal actions as the Receiver deemed necessary to preserve or recover the Assets of the Receivership Entities or to carry out the Receiver's mandate. *Id.* at 21. The Receiver's case against Wells Fargo was undertaken pursuant to this authorization. The PI requires the Receiver to "tak[e] custody, control, and possession of all assets of [the Corporate Defendants]," "[c]omplete the liquidation of all [their] assets," and "[d]istribute to [the FTC] any remaining liquid assets." Triangle ECF No. 126 at 16-17; Triangle ECF No. 127 at 13-15. The Court ordered all liquidated assets to be provided to the FTC to be used for equitable relief, including consumer redress. Triangle ECF No. 126 at 14-15; Triangle ECF No. 127 at 13.

Triangle emails, bank records, and other corporate documents as well as additional documents produced by Wells Fargo in response to subpoenas.

In late October 2019, based on information discovered in a review of Wells Fargo's conduct, the Receiver sought permission from the Court in Triangle to retain contingency counsel to pursue claims against Wells Fargo on behalf of the Receivership Entities. Triangle ECF Nos. 136 & 136-1. On November 19, 2019, the Court granted the Receiver's Motion. As described above, the Receiver made a similar motion here in February of 2020 (ECF Nos. 144, 144-1 & 148), which the Court granted in March of 2020. ECF No. 153.

**C. Pre-Litigation Settlement Efforts and Mediation**

After obtaining both Courts' orders authorizing the Receiver to hire contingent-fee counsel to pursue Wells Fargo, in April of 2020, the Receiver's counsel notified Wells Fargo of the Receiver's intent to bring litigation against the bank alongside a class action to be brought in parallel on behalf of consumer victims, who had related claims arising out of the same underlying conduct. Tolling agreements were entered, while pre-litigation settlement discussions took place. Two separate private pre-litigation mediation sessions under the auspices of Hon. Daniel Weinstein (Ret.) of JAMS ADR Services were held on November 5, 2020 and April 29, 2021. The sessions were not successful.

**D. The Receiver's Complaint and Defendants' Motions To Dismiss**

On July 8, 2021, the Receiver's complaint was filed against Wells Fargo. Receiver Action, ECF 1. On the same day, several consumer plaintiffs filed a class action complaint. McCraner Action, ECF 1.

The Receiver brought claims on behalf of the Apex Entities and the Triangle Entities against Wells Fargo. In his initial complaint, and the operative complaint, the First Amended Complaint, the Receiver alleged that Wells Fargo: (1) aided and abetted fraud by Apex and Triangle; (2) aided and abetted breaches of fiduciary duties by Apex and Triangle principals; (3) aided and abetted fraudulent transfers

to or for the benefit of Apex and Triangle principals; (4) conspired with Apex and Triangle to commit fraud; and (5) violated California Penal Code § 496(c). *See* Receiver Action, ECF Nos. 1, 20, 220 & 221. The Receiver's Complaints set forth detailed allegations in support of those claims. Receiver Action, ECF Nos. 1 & 220.

The Court denied Wells Fargo's motion to dismiss (ECF No. 22). The case proceeded to extensive fact and expert discovery over many years. Wells Fargo vigorously contested the litigation at every turn.[7] The Parties also engaged in several rounds of mediations and Early Neutral Evaluations across the Receiver Action and the Class Action.

**E. Motions for Summary Judgment and Consolidation**

On November 13, 2023, Wells Fargo filed a lengthy motion for summary judgment in the Receiver Action, which included approximately 100 exhibits. Receiver Action, ECF Nos. 187-189. The Receiver filed an extensive opposition on December 22, 2023, attaching approximately 195 exhibits.

On January 4, 2024, the Court consolidated the Receiver Action and the Class Action for all pre-trial purposes and denied Wells Fargo's motions for summary judgment and to exclude expert testimony as moot. Receiver Action, ECF No. 220; Class Action, ECF No. 90.[8] Shortly after consolidation, on January 22, 2024, a settlement conference was held before Magistrate Judge David D.

[7] As this Court is aware, Wells Fargo even moved to intervene in this case (in January 2022) and in the Triangle Action (in November 2021), seeking to challenge the Courts' orders permitting the Receiver to pursue Wells Fargo. ECF Nos. 219 & 219-1. The FTC and the Receiver opposed. ECF Nos. 225, 225-1, 226 & 226-1. The Courts denied Wells Fargo's motions to intervene. ECF No. 238; Triangle ECF No. 176. Wells Fargo appealed to the Ninth Circuit. ECF No. 239. After briefing and oral argument, the Ninth Circuit affirmed the denial of Wells Fargo's Motions to Intervene. ECF No. 266.

[8] Given that consolidation occurred after expert and fact discovery had been completed in the Receiver Action, the Parties ultimately engaged in substantial discovery in both cases, although discovery material from the Receiver Action was used in the Class Action.

Leshner of the District Court for the Southern District of California. It was not successful.

Following consolidation, Wells Fargo filed another motion for summary judgment and a motion to exclude three experts on June 10, 2024, which included approximately 100 exhibits. Receiver Action, ECF Nos. 305-06. Plaintiffs filed their opposition to Wells Fargo's motion on July 8, 2024, which included approximately 200 exhibits. Receiver Action, ECF No. 309. On July 22, 2024, Wells Fargo filed its reply in further support of their motion for summary judgment. Receiver Action, ECF No. 319.[9]

On October 29, 2024, the Court held oral arguments on Wells Fargo's motion for summary judgment and Class Plaintiffs' motion for class certification. The Court took the motions under submission.

**F. The Parties' Successful Settlement Conference Following Summary Judgment Hearing**

The next day, on October 30, 2024, the Parties participated in a Settlement Conference with Judge Leshner. Though the session ended without agreement, over the course of the next several weeks, the Parties continued to work with Judge Leshner. That process culminated in a "mediator's proposal" made blindly to each side for a global settlement for $33,000,000, inclusive of the Receiver Action and the Class Action. Each side accepted on December 20, 2023.

---

[9] On June 10, 2024, Plaintiffs also moved to exclude expert reports from two of Wells Fargo's experts. Receiver Action, ECF No. 302. Wells Fargo opposed the motion on July 8, 2024, and Plaintiffs filed their reply on July 22, 2024. Receiver Action, ECF Nos. 308, 315.

Relatedly, on September 5, 2024, Class Plaintiffs filed their motion for class certification, which Wells Fargo opposed on September 26, 2024. Receiver Action, ECF Nos. 334, 343. Class Plaintiffs filed their reply in further support of their class certification motion on October 23, 2024 as well as a motion to exclude certain opinions submitted by Wells Fargo's experts. Receiver Action, ECF Nos. 351, 352.

Over the course of the next several days, the Parties negotiated and ultimately filed a Notice of Settlement with the Court on January 3, 2025. ECF No. 369. The Parties agreed to a global settlement releasing all claims asserted against Wells Fargo in return for a cash payment of $33,000,000 to the Settlement Class and Receiver, subject to certain terms and conditions and the execution of a customary "long form" stipulation and agreement of settlement and related papers.

Over the next several months, counsel for the Receiver and the Class negotiated with Wells Fargo and agreed to enter into two separate settlement agreements. *See* **Exhibit 1** (Receiver Settlement)[10] and **Exhibit 2** (Class Action Settlement).[11] These Agreements reflect the final and binding agreement between the Parties. The Parties have agreed that the Court approval of both of these settlements is contingent upon the approval of the other settlement.

## III. ARGUMENT

### A. The Settlement Will Result In a Substantial Recovery for the Apex and Triangle Receivership Estates, which Will Then Be Distributed via FTC Redress to Apex and Triangle Consumers

The Receiver respectfully requests that the Court approve the settlement, which he believes is in the best interests of the Apex Receivership Estate. The Receiver's counsel has vigorously pursued the claims against Wells Fargo throughout the litigation, including by:

- Conducting an extensive investigation into the claims asserted against Wells Fargo, including review of voluminous business records from two of the underlying fraudulent enterprises;

---

[10] The Receiver's Settlement Agreement incorporates by reference the Class Action Settlement.

[11] The Class Action Settlement Agreement has several attached exhibits including: Exhibit A (Draft Order Preliminarily Approving Settlement and Providing for Notice); Exhibit A-1 (Notice); Exhibit A-2 (Claim Form); Exhibit A-3 (Publication Notice); Exhibit A-4 (Short Form Notice); and Exhibit B (Draft Final Judgment and Order Approving Class Action Settlement and Dismissal with Prejudice).

- Participating in two rounds of pre-litigation mediation, which included exchanging substantial mediation statements and participation in multiple mediation sessions;
- Drafting a complaint based on Counsel's investigation;
- Briefing the opposition papers to the motion to dismiss, and successfully defeating the motion;
- Engaging in extensive fact and expert discovery, including dozens of depositions;
- Briefing two motions for summary judgment;
- Engaging in arms-length settlement negotiations, which resulted in the acceptance of a mediator's settlement recommendation; and
- Negotiating and executing the terms of the settlement agreement.

As detailed above, the Parties participated in two separate mediation sessions before bringing a lawsuit and then several rounds of Settlement Conferences and subsequent discussions with Judge Leshner. All settlement efforts prior to oral argument on the summary judgment and class certification motions were fruitless.

After oral argument, with the constant and committed assistance of Judge Leshner – who presented a mediator's proposal of $33,000,000 – the Parties were ultimately able to settle. This settlement agreement was reached only after complete factual and expert discovery.

The settlement will result in a substantial recovery for the Apex and Triangle Receivership Estates. The Receiver agreed to the Magistrate Judge's proposal, after fully evaluating the relative strengths and weaknesses of the case. As with all cases, there is litigation risk. And that is particularly true where, as here, the opposing party has substantial resources to continue to vigorously contest the matter through trial and appeal. Wells Fargo had aggressively litigated the case for more than four years, and there is no reason to believe Wells Fargo would be any less aggressive going forward. Indeed, Wells Fargo has repeatedly demonstrated throughout this case that it will rely on its resources to pursue all available

litigation avenues. Finally, if the Receiver prevailed on liability and was awarded damages after trial, Wells Fargo could be expected to appeal the verdict and award, which could span several years.

**B. The Settlement Uses the FTC's Established Redress Mechanisms in the Apex and Triangle Cases; Tarr Class Consumers' Distributions will be made through a Claims Administrator**

1. <u>The Settlement Structure and Plan of Allocation.</u>

As noted above, the Receiver's settlement agreement is intertwined with a Class Action settlement. Thus, if approval is given in the Apex and Triangle matters, then Class Counsel will seek the preliminary approval in the Class Action case, which is also pending before Judge Robinson. When doing so, the Court will evaluate the factors under Rule 23(e)(2) to determine whether the settlement is fair, reasonable, and adequate. Among other things, the Court will consider the proposed Plan of Allocation (attached as **Exhibit 3),** which will involve substantial distributions through the Apex and Triangle Receiverships.

Under the proposed plan, Triangle, Apex, and Tarr have each been allocated certain percentages of the Net Settlement Fund based on the net losses, adjusted by Plaintiffs' assessment of the available causes of action and evidence associated with each enterprise as a means of equitably distributing settlement funds among Apex, Triangle, and Tarr consumers; under the plan, if approved:

- 45.17% of the settlement fund would be allocated to Triangle Entities;
- 32.26% would be allocated to Apex Entities; and
- 22.57% would be allocated to Tarr Entities.

*See* **Exhibit 3** (Plan of Allocation).

While it is not known precisely how much each particular Apex consumer will receive, we anticipate that distributions will be more than double the amount distributed to date to Apex consumers. Based on publicly-available information, the FTC has sent checks to 153,940 Apex consumers totaling $2.82 million, with a

median refund of $18.00.[12] We anticipate that more than $6 million will be available to the FTC for further redress to Apex consumers because of this settlement. That figure could be higher depending on the amount of unclaimed funds allocated to Tarr consumers.

In the Triangle case, 151,691 consumers have previously cashed checks sent through the FTC, totaling $8.46 million. We anticipate that more than $8 million will be available to the FTC for further redress to Triangle consumers because of this settlement. In the Tarr case, 150,744 consumers have received FTC redress totaling $5.88 million. We anticipate that more than $4 million will be available to be distributed to Tarr class consumers.

The distribution process is described more fully in the Settlement Agreements and Plan of Allocation. The Settlement Agreements provide that anyone who received a prior FTC redress distribution in Apex and Triangle will be automatically eligible to receive another distribution. All other consumers must use the Class claims process, which requires filling out a claim form under oath that identifies the amount of their losses and confirms they have not previously received distributions from the FTC in Apex or Triangle.[13]

Thus, under orders from this Court and Judge Robinson, the Receiver will transfer the amounts he receives from the settlement (net of Receivership

---

[12] *See* https://public.tableau.com/app/profile/federal.trade.commission/viz/Refunds_15797958402020/RefundsbyCase ("FTC Refunds to Consumers," providing links to specific cases, including Apex, Triangle and Tarr).

[13] As described more fully in the Settlement Agreement with the Class, processing claims and distributing relief to eligible Class claimants will be managed by Epiq Class Action & Claims Solutions, Inc. ("Epiq") as the Settlement Administrator (subject to Court approval). Epiq will process claims and send settlement payments to consumers, after Court approval. Such claims processing, like the method proposed here, is standard in consumer class action settlements. Under the Plan of Allocation, each Authorized Claimant will receive either: (i) a *pro rata* share of the Net Settlement Fund based on his/her out of pocket losses (minus any refunds received), or (ii) a qualifying payment, subject to a *pro rata* reduction based on the number of Claimants for those who do not have adequate supporting documentation.

expenses) to the FTC, which will then distribute those funds to consumers, pursuant to and consistent with, the parameters of the FTC's prior distributions to Apex and Triangle consumers in the FTC's established refund programs. This is the typical process used in cases such as this with federal equity receivers (*see* https://www.ftc.gov/enforcement/ftc-refund-programs/how-ftc-provides-refunds), and the Receiver has been in contact with the FTC to coordinate this process.

2. Approval of Legal Fees and Expenses and Receivership Costs.

As discussed above, the Receiver sought and obtained the Courts' permission to hire counsel on a contingent-fee basis to pursue the Receiver's case against Wells Fargo. *See* ECF No. 144-1 at 5-7 (motion to approve contingent-fee counsel in this case) and ECF No. 153 (order approving); Triangle ECF No. 136-1 at 5-7 (motion) and Triangle ECF No. 142 (order approving). When making these motions, the Receiver informed the Courts that bringing a case like this – against a party with deep pockets like Wells Fargo – required the Receiver to hire contingent-fee counsel willing to advance litigation costs and expenses. *See* ECF Nos. 144, 144-1 at 4 ("[T]he only way to pursue such litigation against Wells Fargo without harming the Receivership Estate would be on a contingent-fee basis."). *See also* ECF No. 148 (Declaration of T. McNamara) ¶¶ 9-16. "Because the litigation will likely be hard fought, expensive, and long, the Receiver has determined that the cost and risk of pursuing litigation on an hourly fee basis would be prohibitive. This caused the Receiver to evaluate alternative fee arrangements, which would shift the risk away from the Receivership Estate." ECF No. 141-1 at 2.

The Receiver's evaluation of the situation was correct. For more than four years, the deep-pocketed Wells Fargo employed a vigorous, hard-fought defense of the claims. The Receivership Estates could not have pursued the case in any manner other than on a contingency basis, as the fees and costs of the litigation in fact exceeded the funds in the Receivership estates.

Thus, the Receiver also required contingent-fee counsel to cover all costs in the course of the litigation (*e.g.*, court fees, discovery and expert costs). This was essential, because the Receivership Estates did not have the resources to fund the litigation costs, and it would also not have made sense for the Receivership Estates to do so if they had the resources, given the uncertainty and risks of litigation against Wells Fargo. Counsel estimates that the expenses advanced to date, inclusive of the Receiver and Class Action matters, are almost $3 million.

The agreement negotiated with contingent-fee counsel also provided for a contingent fee equal to 28.5% of the gross recovery up until a ruling on summary judgment for representing the Receiver. In addition to representing the Receiver, Class Counsel have separately represented the class. Class Counsel have indicated that when they present a fee motion in the Class Action in connection with their motion for final class action settlement approval, they will likely request an additional amount, not to exceed 4.833% of the gross recovery, which, if approved, would fix total attorney compensation at one-third of the settlement fund.[14] Their request will be based on the additional amount of work necessary for the Class Action over the last four-plus years; the Receiver has been informed this is substantially less than counsel's fees as calculated on an hourly basis. The Receiver takes no position on this request, which will be addressed to and decided by Judge Robinson in the Class Action.

Once distributions have been made, the Receiver will submit his final report and application for discharge of Receiver and approval of the final fee application, winding down the Apex Receivership in its entirety.

[14] The notice to be distributed after preliminary approval will inform the class that the total fee to be sought to cover work in both the Receiver and Class Actions will not exceed one-third of the total settlement fund. *See* Exhibit A-1 to Exhibit 2 at 10 (Long Form Class Notice).

## IV. CONCLUSION

For the foregoing reasons, the Receiver respectfully requests that the Court approve the Receiver's settlement agreement with Wells Fargo.

Dated: August 11, 2025 MCNAMARA SMITH LLP

By: /s/ Logan D. Smith
Logan D. Smith
*Attorneys for Receiver,*
*Thomas W. McNamara*